UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEVIN JOHNSON,

      Plaintiffs,

-vs-

The CITY of ROCHSTER and ROCHESTER
POLICE OFFICER JONATHAN LAUREANO

      Defendants.

**Plaintiffs Rule 56 Statement in Response to Motion for Summary Judgement**

Civil Action No.: 21-cv-6683 (DGL/MWP)

The Plaintiff, Devin Johnson, by and through his undersigned counsel, and as and for their Rule 56 Statement in opposition to the Defendants motion for summary judgment, submits that there are genuine issues of material fact to be tried with regard to the following material facts:

1. The Plaintiff does not dispute that the incident in this action occurred at approximately 9:45 p.m. on Saturday, August 24, 2019.

2. The Miller/ Clifford Blue Light Camera (hereinafter "BLC") footage shows Mr. Johnson driving a black Q7 SUV and turning right onto Miller Street in the Audi at approximately 9:45:22 p.m.   *Defendants' Exhibit B, Clifford and Miller BLC.*  A couple of seconds later, Mr. Johnson is shown to be followed by a police vehicle driven by Rochester Police Officer Jonathan Laureano.

3. Mr. Johnson's vehicle proceeded down Miller Street followed by the vehicle driven by Officer Laureano.  *Defendants' Exhibit B, Clifford and Miller BLC.* The fact that Mr. Johnson activated his brake lights is of no consequence to whether Officer Laureano had Probable Cause to stop Mr. Johnson.

4. As observed in the BLC footage, vehicles were parked on the right side of the road. *Defendants' Exhibit B, Clifford and Miller BLC.* Defendant's submit that Defendant's

1

Exhibit C is Google Street photos from 2007 to September 2022 to demonstrate that motorists regularly parked along the right/west curb and the left side was the travel lane. *Defendants' Exhibit C, Photographs.* Mr. Johnson submits that Defendants' Exhibit C is irrelevant to these proceedings as Defendant's Exhibit B depicts a view of Miller Street at the time and date at issue in this matter.

5. At the Mapp Hearing, Officer Laureano testified that it was his intention to stop Mr. Johnson's vehicle if he had probable cause to do so. *Plaintiff's Exhibit A, Mapp Hearing testimony at p. 12.*

6. The BLC shows that Officer Laureano activated his emergency lights prior to the time that Plaintiff's vehicle pulled over to the curb. *Defendant's Exhibit B; Plaintiff's Exhibit C, Screenshot from Clifford and Miller, BLC.*

7. Following the stop of his vehicle, the Plaintiff was ultimately arrested for Criminal Possession of a Weapon in the Second Degree and a Violation of Probation based upon the same conduct. After the matter was indicted, Mr. Johnson moved for a *Mapp* hearing, arguing that the stop of his vehicle was not based on probable cause to arrest. *Plaintiff's Exhibit A, Mapp Hearing Transcript.*

8. During the *Mapp* Hearing, Officer Laureano testified under oath:

"I proceeded to get behind the vehicle. We traveled a short distance before turning southbound onto Miller Street. **And then the vehicle pulled over to the side of the curb, and it didn't activate its signal before pulling to the side of the curb.** At that time I did activate my emergency equipment and perform a traffic stop." *Plaintiff's Exhibit A, Mapp Hearing at 6.* (Emphasis added).

Officer Laureano further responded to the following question by the prosecutor:

" Q. [Prosecutor] And you said **there came a time when you saw the vehicle park at the curb without signaling**; is that correct?

> A. [Officer Laureano] **Yes**.
>
> Q. And then what happened **after you observed the vehicle go to the curb without signaling?**
>
> A. I activate my emergency equipment to perform a traffic stop." *Plaintiff's Exhibit A, Mapp Hearing at 7.* (Emphasis added).

On cross-examination, Officer Laureano testified as follows:

> "[Defense counsel] Q. In your own words, what did Mr. Johnson do to have you write that ticket.?
>
> [Officer Laureano] A. The violation that **I had stopped him for was for when he pulled to the side of the curb, he was in a lane of traffic, did not signal to the curb.** So for that violation, he was stopped. It's no different than if somebody is parked and fails to signal from the curb." *Plaintiff's Exhibit A, Mapp Hearing at 26* (Emphasis added).

9. New York's Vehicle and Traffic Law Section 1163(d) provides:

    > "(d) the signals provided for in section eleven hundred sixty-four shall be used to indicate an intention to turn, change lanes, or start from a parked position and not to be flashed on one side only on a parked or disabled vehicle, or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear."

10. The Defendants set forth facts regarding the manner in which Mr. Johnson's vehicle came to the attention of officers and the route Mr. Johnson's vehicle took. Mr. Johnson submits that the manner in which he came to the attention of the police and/or the route he took prior to the time his vehicle entered Miller Street have no bearing as to whether Officer Laureano had probable cause to stop his vehicle for an alleged traffic infraction on Miller Street. Moreover, Mr. Johnson vehemently denies that he acted suspiciously when observed on Lincoln Street.

11. Mr. Johnson does not dispute that he was placed in a police vehicle with Officer Glodowski that night. He does dispute that the statements he made at that time are

3

evidence that he pulled his vehicle out of the travel lane without signaling prior to the time that Officer Laureano activated his emergency lights. *Plaintiff's Exhibit A, Johnson Affidavit.*

12. Mr. Johnson points to the BLC as evidence that Officer Laureano activated his emergency lights prior the time that his vehicle left the lane of travel and allegedly "parked at the curb" as testified to by Officer Laureano. *Exhibit B, Clifford and Miller BLC.*

13. Officer Laureano's declaration contains a statement as to why Officer Phillip Perelli had asked him to stop the Audi and identify the driver, *i.e*, that Officer Perelli had observed the vehicle several minutes earlier at 5 Lincoln Street, which was known as a gang and drug house. *Laureano Declaration at 1, para 2.* However, during his testimony at the Mapp Hearing, Officer Laureano testified that he had been notified that the vehicle was suspicious, but that he had not asked Officer Perelli why the vehicle was suspicious. *Plaintiff's Exhibit A, Mapp Hearing at 9-10, 12.*

14. In his declaration, Officer Laureano declared that he stopped the Audi because Mr. Johnson failed to signal out of the travel lane which is a violation of Vehicle and Traffic Law 1163(d). *Laureano Declaration at p. 3, para. 8.* However, during his testimony at the Mapp Hearing, Officer Laureano testified that he "saw [Mr. Johnson's] vehicle park at the curb without signaling." *Plaintiff's Exhibit A, Mapp Hearing at p. 7, 14.* Officer Laureano testified that he did not activate his emergency lights until after the vehicle went to the curb without signaling. *Plaintiff's Exhibit A, Mapp Hearing at p. 7.*

15. Defendants point to the statements made by Mr. Johnson while riding in Officer Glodowski's vehicle to explain why he did what he did, where he was going, and what he was doing in the moments before he was pulled over to support Officer Laureano's perspective of what occurred. Mr. Johnson again maintains that the BLC footage of Clifford and Miller clearly depicts that he had not moved out of the travel lane and had not parked his vehicle prior to the time that Officer Laureano activated his emergency lights. *Defendants' Exhibit B, Clifford and Miller BLC.* Mr. Johnson further maintains that his un-sworn statements, taken out of context, made to Officer Glodowski are not dispositive of this motion and are insufficient to grant summary judgment in favor of the Defendants. In addition, as referenced above, there are a number of inconsistent statements between Officer Laureano's sworn testimony at the Mapp hearing and his declarations. Compare *Plaintiff's Exhibit A, Mapp Hearing; Laureano Declaration.*

16. Based on the foregoing statement of facts, as well as arguments set forth in the accompanying Memorandum of Law, Mr. Johnson maintains that there exists material disputed issues of genuine fact which preclude the grant of summary judgment in favor of the Defendants. As more fully set forth in the accompanying Memorandum of Law, Mr. Johnson maintains that Officer Laureano is not entitled to qualified immunity and dismissal of this suit.

WHEREFORE, for the reasons set forth above, as well as those set forth in the accompanying Memorandum of Law, Plaintiffs request that this Court deny the Defendants' motion for summary judgement and for such other relief as the Court may deem just and proper.

Dated: September 29, 2023

Yours, etc.

*Mark A. Young*
Mark A. Young, Esq.
Law Office of Mark A. Young
45 Exchange Blvd.
Suite 802
Rochester, NY 14614
585-232-4240
mark@markyounglaw.com