UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEVIN JOHNSON,

                              Plaintiff,

            v.

CITY OF ROCHESTER, et al.,

                              Defendants.
_____

DECISION AND ORDER

21-CV-6683DGL

        Plaintiff Devin Johnson commenced this action in New York State Supreme Court,

Monroe County, on October 11, 2021.  The original complaint asserted various claims against the

City of Rochester ("City") and Rochester Police Department ("RPD") Officer Jonathan

Laureano, arising out of Laureano's arrest of plaintiff in Rochester on August 24, 2019.

Defendants removed the action to this Court on November 8, 2021, on the ground that plaintiff's

claims arise under the United States Constitution and 42 U.S.C. § 1983, and that they therefore

fall within the Court's federal-question jurisdiction.

        Plaintiff filed a first amended complaint ("FAC") on July 28, 2022, asserting claims

against the City and Laureano under both New York and federal law.  Pursuant to the Court's

scheduling order (Dkt. #20), fact discovery closed on December 2, 2022.  Defendants have now

moved for summary judgment.

## BACKGROUND

On the night of the incident, Officer Laureano was on patrol in northeast Rochester, driving a marked RPD vehicle.  At around 9:00 p.m., he received a radio call from a fellow officer, Philip Perelli, asking any available officer in the Clinton Section for assistance in locating a black Audi SUV, bearing a certain New York license plate.

Perelli states in a sworn declaration that prior to putting out that call, he and his partner, who were also on patrol, had noticed the vehicle stopping in front of a known drug house.  Their suspicions increased when they saw the driver (Johnson) get out of the vehicle with the engine running and the stereo blaring.  In Perelli's words, he and his partner noticed that the driver "seemed exquisitely uncomfortable" upon spotting their marked vehicle, and continued to watch them as they drove away.  (Dkt. #29-17 ¶ 3.)  Some minutes later, they again saw the vehicle, this time at a gas station a few blocks away from where they had first seen it.  Perelli states that as soon as the driver–who was getting gas–saw Perelli's RPD vehicle, he "disassociated himself" from his vehicle, and again watched Perelli's vehicle as it went by.  *Id.* ¶ 5.  It was at that point that Perelli put out the radio call for assistance in locating the vehicle.

Apparently none of that background was known to Laureano when he got the call to be on the lookout for the vehicle.  He testified at a *Mapp* (suppression) hearing that he was simply told that the vehicle was suspicious.  (Dkt. #36-2 at 10.)

Laureano drove past the gas station, and saw the vehicle still there.  He then was told by an officer watching live video from a nearby "blue light camera" ("BLC") mounted on a lamppost that the vehicle had left the gas station and was headed east on Clifford Avenue.  Laureano headed in that direction and began following plaintiff's vehicle.  He testified at the

*Mapp* hearing that he was waiting for the driver of the vehicle to commit any violation of the Vehicle and Traffic Law, so that Laureano could pull him over.  (Dkt. #36-2 at 12.)

At around 9:45, plaintiff turned right (southbound) off Clifford Avenue onto Miller Street, which was a one-way street.  Laureano followed him.  About halfway down the block, Laureano turned on his emergency lights.  Plaintiff's vehicle then stopped, and plaintiff got out and began running.  Laureano put his car in park and got out and began chasing plaintiff, radioing his progress to other officers as he ran.

Laureano caught up with plaintiff on a sidewalk on a nearby street, and brought him to the ground.  As Laureano was handcuffing plaintiff, Officer Perelli arrived on foot.  Within the next several minutes, additional officers arrived by vehicle.

Laureano transferred custody of plaintiff to another officer, Brandon Glodowski.  Plaintiff was placed in the back of a police vehicle and driven to the RPD Clinton Section station.  At around the same time, another RPD officer searched plaintiff's vehicle, and discovered a loaded handgun under the seat.  The gun was later determined to have been reported stolen in 2015.  *See* Def. Ex. O at 35-36, Ex. P.

During the drive to the police station, plaintiff told Glodowski that he ran from his car after he saw Laureano's emergency lights come on because he was on parole and was out past curfew.  Defendants have submitted video from Glodowski's body camera in which plaintiff can be heard stating that he ran because "I'm not supposed to be outside" at that hour.  Def. Ex. G.

In the aftermath of these events, plaintiff was charged with various offenses, including criminal possession of a weapon, criminal possession of stolen property, obstructing governmental administration, and resisting arrest.  Def. Ex. P.  A parole hold was also placed on

plaintiff by the Department of Corrections and Community Supervision, and he remained in custody. *Id.*

Plaintiff was eventually indicted by a grand jury on charges of criminal possession of a weapon in the second and third degrees, in violation of N.Y. Penal L. §§ 265.03(3) and 265.02(3) respectively.[1]  Through his attorney, he moved to suppress the handgun, on the ground that there was no probable cause for the traffic stop and his seizure by the police.

The state court held a *Mapp* hearing, *see Mapp v. Ohio*, 367 U.S. 643 (1961), to determine whether probable cause existed for plaintiff's seizure by the police and whether tangible evidence (the handgun) seized as a result of that seizure should be suppressed.  Officer Laureano testified at the hearing, and stated that he turned on his emergency lights to effect a traffic stop when he saw plaintiff pull over to the curb without activating his turn signal, in violation of New York's Vehicle and Traffic Law § 1163.

After viewing a video recording of the stop from a nearby BLC, Supreme Court Justice Charles A. Schiano, Jr. issued a decision and order on October 13, 2020 (Def. Ex. Q) in which he stated that the BLC video did not support Laureano's testimony.  Justice Schiano found that the BLC footage showed that "Officer Laureano activated his emergency lights before defendant's vehicle pulled over to the curb." *Id.* at 4.  He concluded that "the People have failed to meet their burden to establish probable cause to stop defendant's vehicle," and he therefore ordered evidence of the handgun suppressed, as fruits of the unlawful stop and seizure. *Id.*

Shortly after that decision was issued, the charges against plaintiff were dismissed.  Because of the parole warrant that had been lodged against him following his arrest, plaintiff

---

[1] Apparently plaintiff was not prosecuted on the other charges that had been brought against him.

continued to be held in jail until on or about November 6, 2020, when an administrative law judge ordered the warrant to be lifted and plaintiff released.  Plaintiff thus spent about fourteen and a half months in custody following his arrest.[2]

The first amended complaint sets forth ten claims.[3]  The first seven are brought under state law:  (1) false arrest/imprisonment; (2) malicious prosecution; (3) assault/battery; (4) injurious falsehood; (5) negligent screening, hiring, and retention; (6) negligent training, retraining, and supervision; and (7) a due process claim against the City under Article I, § 6 of the New York State Constitution.  Plaintiff also asserts three claims against Laureano pursuant to 42 U.S.C. § 1983:  (8) malicious prosecution and deprivation of liberty under the Fourth, Fifth and Fourteenth Amendments; (9) denial of fair hearing by fabricating and suppressing evidence, under the Fourth, Fifth and Fourteenth Amendments; and (10) failure to intercede.

In his response to defendants' summary judgment motion, plaintiff states that he is withdrawing his claim for assault and battery, and that in light of defendants' admission that Laureano was acting at all times in the scope of his employment as an RPD officer, the fifth and sixth claims (for negligent hiring, training, etc.) are "unnecessary."  Pl. Mem. (Dkt. #36-1) at 4.

---

[2] It appears that had he been convicted of criminal possession of a weapon in the third degree, which is a Class C felony, plaintiff would have been facing a maximum prison term of 15 years.  See N.Y. Penal Law § 70.00(2)(c).

[3] Since the first amended complaint is now the operative pleading, all further references to the "complaint" will be understood to mean the first amended complaint.

## DISCUSSION

### I.  Summary Judgment

Summary judgment is appropriate if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  *See Fed. R. Civ. Proc.* 56(c).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact.  A dispute is genuine where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Central Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992).  In considering a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant.  The Court must not make credibility determinations, weigh the evidence, or draw inferences from the facts.  *Id.*

### II.  Probable Cause

Whether couched in terms of false arrest, due process or otherwise, most of plaintiff's claims rest on his assertion that Laureano had no probable cause to pull over plaintiff's vehicle at the moment Laureano activated his emergency lights.  At the heart of this case is a dispute between the parties about that issue.

The purported basis for Laureano's stop of plaintiff was Laureano's belief that plaintiff had violated N.Y. Vehicle and Traffic Law § 1163, which provides that turn signals "shall be used to indicate an intention to turn [or] change lanes ... ."  Section 1163 is contained in Title VII of the Vehicle and Traffic Law, § 1101 of which provides that "[i]t is unlawful and, unless otherwise declared in this title with respect to particular offenses, it is a traffic infraction for any person to do any act forbidden or fail to perform any act required in this title."

-6-

In addition, § 140.10 of the Criminal Procedure Law states that subject to certain limitations not relevant here, "a police officer may arrest a person for ... [a]ny offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence ... ."  Section 155 of the Vehicle and Traffic Law states that "[f]or purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense."

Laureano's stop of plaintiff's vehicle and arrest of plaintiff were permissible, then, if the stop was supported by probable cause to believe that plaintiff had violated § 1163.[4]  *See United States v. Graham*, No. 08-CR-6259, 2009 WL 4110370, at *8 (W.D.N.Y. Nov. 23, 2009) ("Each of the traffic infractions itself provides an adequate basis for Graham's arrest") (citing *Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001)).  "In the context of a traffic stop, to have probable cause, officers must observe 'objective circumstances' that indicate a traffic law violation has occurred."  *United States v. Peters*, No. 18-cr-188, 2019 WL 351261, at *8 (D.Conn. Jan. 29, 2019) (quoting *United States v. Dhinsa*, 171 F.3d 721, 725 (2d Cir. 1999)) (additional internal quote omitted).  *See also Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004) ("Probable cause to arrest exists where the facts and circumstances are sufficient to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested") (internal quote omitted).

In the instant case, the issue is straightforward.  Laureano states that plaintiff's vehicle began drifting to the right, leaving its lane and heading toward the curb, without signaling.

---

[4] Although C.P.L. § 140.10 uses the term "reasonable cause," "[r]easonable cause means probable cause." *People v. Maldonado*, 86 N.Y.2d 631, 635 (1995).

Plaintiff contends that he stayed within his lane and did not pull toward the curb until after he saw Laureano's emergency lights come on. If Laureano's version of events is correct, then his stop of plaintiff was justified; if plaintiff's version is correct, the stop was unlawful. *See People v. Mickens*, 214 A.D.3d 1073, 1074-75 (3d Dep't 2023) (police officer's stop of vehicle in which defendant was a passenger was justified by probable cause, based on officer's objectively reasonable belief that driver of vehicle had violated § 1163(b) by failing to use turn signal before turning left at an intersection); *United States v. Tillard*, No.18-CR-6091, 2019 WL 8105894, at *4 (W.D.N.Y. 2019) (holding that officers had probable cause to initiate a traffic stop where they witnessed conduct that "violated section 1163(b) of New York's Vehicle and Traffic Law") (internal quotation omitted), *R&R adopted*, 2020 WL 57198 (W.D.N.Y. Jan. 6, 2020).

Laureano states in a sworn declaration (Dkt. #29-16) that as he was following plaintiff's vehicle on Miller Street, "I observed the Audi beginning to drift to the right, out of the travel lane, without signaling and I activated my emergency lights to pull it over." *Id.* ¶ 7. Laureano further states that he "was stopping the Audi because Mr. Johnson failed to signal out of the travel lane, which is a violation of Vehicle & Traffic Law § 1163(d)." *Id.* ¶ 8. Those statements are consistent with Laureano's testimony at the *Mapp* hearing, at which he stated that plaintiff's "vehicle pulled over to the side of the curb, and it didn't activate its signal before pulling to the side of the curb. At that time I did activate my emergency equipment and perform a traffic stop." (Dkt. #36-2 at 7.)

Plaintiff denies that he was pulling over to the curb at any time prior to the moment Laureano activated his lights. Plaintiff states in an affidavit, "At the time the emergency lights were activated, I was traveling straight in the lane of traffic," and that he "did not pull to the side

off the road until after the police vehicle had initiated its emergency lights ... ."  (Dkt. #36-3 ¶¶ 5, 6.)

In support of their motion, defendants have submitted a video recording, which the Court has reviewed, taken from a BLC mounted on a pole at the corner of Clifford Avenue and Miller Street at the time of the incident.  It shows plaintiff's Audi turning right off Clifford onto Miller a little after 9:45 p.m., with Laureano's vehicle following a few seconds later.  The two vehicles proceed slowly down the block.

At the 9:45:33 mark, the Audi's brake lights come on, although the vehicle is still moving forward.  Laureano's brake lights come on at 9:45:36, and his vehicle continues to follow the Audi, about two car lengths behind.

At the 9:45:38 mark, the view of plaintiff's Audi is blocked by an intervening utility pole.  The Audi emerges from behind the pole a second later, and its brake lights again come on.  Less than a second later, Laureano's emergency lights come on.  From that point forward, it is difficult to make out anything happening near the vehicles because of the glare from Laureano's lights.

At the point at which Laureano's emergency lights come on, both vehicles have progressed far down the block.  Given their distance from the camera, the angle of the shot, and the momentary obstruction from the utility pole, it is difficult to tell precisely how either vehicle is moving in relation to the curb.  What *is* certain is that the video does not conclusively show that plaintiff's car was pulling over or drifting toward the curb at the moment Laureano's lights came on.

That is not to say that the video shows that plaintiff's car was heading straight within his traffic lane, as plaintiff contends.  Again, it is difficult to tell from the video.

Defendants have also submitted video from the body cameras of several officers who arrived at the scene shortly after plaintiff's arrest.[5]  In support of their motion, defendants rely on statements that plaintiff made after he was taken into custody, particularly to Officer Glodowski during the ride to the police station.  Those statements can be heard on the video from Glodowski's body camera.

During the ride, plaintiff, without any questioning or prompting from Glodowski, spoke about a number of things concerning the events of that evening.  Plaintiff told Glodowski that while he was driving down Miller Street, he was unaware that the car behind him was a police vehicle until its emergency lights came on.  He stated that he had been on his way home, and that he had gotten a text from a neighbor who said that he was walking on Miller Street and would like a ride home.  At the 3:25 mark of the video, plaintiff is heard to say, "I was pullin' to the side," explaining that he was looking for his neighbor.  Defendants contend that this statement supports Laureano's assertion that plaintiff's vehicle had started pulling toward the curb.

Plaintiff argues that any statements plaintiff made after his arrest are irrelevant to whether Laureano had probable cause to pull over plaintiff's vehicle.  While plaintiff's statement about pulling to the side of the street may not be conclusive, it nonetheless corroborates Laureano's account of what happened, and the Court will consider it.

There is also evidence in the video recordings that tends to contradict defendants' version of the events, however.  Officer Perelli was the first to arrive after Laureano had apprehended plaintiff.  At the 1:25 mark of Perelli's body camera recording, plaintiff is heard to question why

---

[5] Laureano's is not among them.  He states in his declaration that "in the haste to get out of my car and pursue Mr. Johnson, [he] apparently did not hit the button hard enough to activate" his body camera, which apparently fell off at some point as he was chasing plaintiff and was located afterwards.  (Dkt. #29-16 ¶ 16.)

he had been stopped in the first place, saying, "I didn't even do shit."  Laureano responds, "Yeah, you ran through a traffic [inaudible].  Yup, it was a traffic stop."  (The inaudible word cannot be heard clearly because of a radio transmission that comes in at the same moment.)

Regardless of what the inaudible word is, clearly Laureano told plaintiff that the reason he turned on his lights was that plaintiff "ran through" something; he did *not* say that plaintiff had failed to use his turn signal.  It is curious that Laureano gave that answer, since there do not appear to have been any stop signs or other traffic control devices in the immediate vicinity of where plaintiff was stopped, but Laureano's statement tends to undercut his later assertion that plaintiff was pulled over for changing lanes without signaling.

I also note that on the BLC video, it can be seen that at the moment Laureano's emergency lights come on, there is a vehicle parked on the right side of the street, adjacent to where plaintiff's vehicle was at that point.  Another vehicle is parked a short distance ahead of the first.  Given the presence of those vehicles, it seems that it would have been at least difficult for plaintiff to have pulled over all the way to the curb at that precise location.

Based on the BLC video, Justice Schiano found in his suppression decision that "Officer Laureano activated his emergency lights before [Johnson's] vehicle pulled over to the curb," and that there was no probable cause for the stop.  Defendants are correct that the state court's findings and conclusions have no preclusive effect in this action, *see Jenkins v. City of New York*, 478 F.3d 76, 85-86 (2d Cir. 2007), but they do demonstrate that a factfinder could reasonably conclude that plaintiff was not pulling over toward the curb prior to Laureano's activation of his lights.  Based on the record before me, I do not find as a matter of law that probable cause was lacking, but the Court cannot determine that there *was* probable cause, either.

Where there is no dispute about the relevant facts, "the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007). "Questions of historical fact regarding the officers' knowledge at the time of arrest are to be resolved by the jury," however. *Dufort v. City of New York*, 874 F.3d 338, 347 (2d Cir. 2017). *See, e.g.*, *Walsh v. City of New York*, 742 F.App'x 557, 561 (2d Cir. 2018) (affirming district court's denial of defendant's Rule 50(b) motion following jury verdict for plaintiff on his false-arrest claim, where "a reasonable juror could find that [arresting officers] lacked probable cause for an arrest").

As stated, the BLC video evidence is not clear-cut, and statements made after plaintiff's arrest by both plaintiff and Laureano actually tend to undercut their own respective accounts of what happened immediately prior to Laureano's activation of his emergency lights. Given their diametrically opposed versions of the facts, the Court cannot rule on the issue of probable cause as a matter of law, and the disputed facts will have to be determined by a jury. *See Ashley v. City of New York*, 992 F.3d 128, 137 (2d Cir. 2021) (stating in context of probable-cause determination that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment") (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)).

## III. False Arrest and Malicious Prosecution Claims

### A. False Arrest

Plaintiff's first cause of action asserts a claim under state law for false arrest and false imprisonment, which are essentially the same thing, *see Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996). His second cause of action asserts a malicious prosecution claim under state law, and

the eighth cause of action asserts a claim under § 1983 for malicious prosecution and

"deprivation of liberty."[6]

     Although the complaint does not expressly assert a federal false arrest claim, the state

law claim for false arrest effectively asserts a claim arising under federal law as well.  Plaintiff's

original state-court complaint did not cite federal law, but defendants removed the action to this

Court on the ground that plaintiff's claims, including the false arrest claim, appeared to assert

claims under federal law.  *See* Notice of Removal (Dkt. #1) at 2.

In addition, the eighth cause of action, which is brought under § 1983, alleges that

plaintiff was deprived of his liberty based on Laureano's false testimony.  That allegation can be

construed as asserting a claim not only for malicious prosecution but also for false arrest, since a

§ 1983 claim based on "a warrantless deprivation of liberty from the moment of arrest to the time

of arraignment will find its analog in the tort of false arrest."  *Singer v. Fulton Cty. Sheriff*, 63

F.3d 110, 117 (2d Cir. 1995)).  *See also Walker v. Sankhi*, 494 F.App'x 140, 142 (2d Cir. 2012)

("To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must

plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy

the state law elements of the underlying claims").

---

[6] The first and second causes of action do not expressly state whether they are brought against both Laureano and the City, or Laureano only.  Under New York law (unlike § 1983), a municipality can be sued for the torts of its employees acting in the scope of their employment, *see Rivera v. State of New York*, 34 N.Y.3d 383, 389 (2019), including false arrest, *see Triolo v. Nassau County*, 24 F.4th 98, 110-11 (2d Cir. 2022), and malicious prosecution, *see Rodick v. City of Schenectady*, 1 F.3d 1341, 1348 (2d Cir. 1993).  Plaintiff's statement that his fifth and sixth claims (for negligent hiring, training, etc.) are "unnecessary" in light of defendants' admission that Laureano was acting at all times in the scope of his employment as an RPD officer implies that the first and second causes of action are brought against both Laureano and the City, and the Court will consider them to be asserted against both defendants.

A § 1983 claim for false arrest is "substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). To state a claim for false arrest under § 1983 or New York law, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer*, 63 F.3d at 118 (alterations and quotations omitted); *accord Tueme v. Lezana*, 217 A.D.3d 715, 716-17 (2d Dep't 2023). "The existence of probable cause to arrest ... is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (quotations omitted); *accord Jenkins*, 478 F.3d at 84.

There is no dispute that the first three elements exist in this case. The only question is whether plaintiff's confinement was privileged, *i.e.*, whether it was supported by probable cause. *See Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) ("For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause") (quoting *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (2016)).

In the context of this case, the focus is not on whether there was probable cause to arrest plaintiff for unlawfully possessing a weapon, the crime for which he was eventually indicted. At the time he initiated a traffic stop, Laureano had no idea that there was a weapon inside plaintiff's vehicle. The handgun was discovered as a result of the initial traffic stop, after plaintiff had been arrested. The question, therefore, is whether the stop itself was justified. *See Savage v. Acquino*, No. 13-CV-6376, 2018 WL 1478254, at n.6 (W.D.N.Y. Mar. 13, 2018)

-14-

(stating that gun that was found in bushes following plaintiff's arrest "cannot provide retroactive probable cause for plaintiff's arrest").

As explained above, on the evidence before me the existence of probable cause to stop plaintiff's vehicle cannot be determined on a motion for summary judgment. The evidence is not so one-sided that the Court can rule on that issue as a matter of law. Accordingly, defendants' motion for summary judgment on the false arrest claims must be denied.[7]

### B. Malicious Prosecution

As with false arrest claims, "[t]he elements of ... malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law." *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992)). "To establish a malicious prosecution claim ... a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Coleman v. City of New York*, 688 F.App'x 56, 57 (2d Cir. 2017) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)). "[I]f there was probable cause for the prosecution, then no malicious prosecution claim can stand." *Boyd*, 336 F.3d at 75.

---

[7] While defendants base their motion as to the false arrest claim solely on the ground that Laureano had probable cause for the traffic stop, I also note that probable cause could not be established solely on plaintiff's flight. A police officer may not use a person's attempt to avoid an unlawful arrest as a basis to charge the person with resisting arrest. *See Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003) ("It is well established in New York that probable cause to arrest is a prerequisite for making an authorized arrest, and if there is no probable cause to arrest a person, that person cannot be guilty of resisting arrest") (internal quote omitted); *Savage*, 2018 WL 1478254, at *5 (stating that "probable cause for resisting arrest will not be a defense if there was no *independent* probable cause to justify the arrest for which the plaintiff is charged with resisting or obstructing").

In addition, "[a] plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must ... show some deprivation of liberty consistent with the concept of 'seizure.'" *Singer*, 63 F.3d at 116.  That is because "[t]he Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the *person–i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Id.  See also Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) ("there must be a post-arraignment seizure for a § 1983 malicious prosecution claim").

The plaintiff must also establish the existence of malice, which in a malicious prosecution claim "is defined as a 'wrong or improper motive, something other than a desire to see the ends of justice served.'" *Murphy v. City of Elmira*, No. 18-CV-6572, 2023 WL 5938777, at *9 (W.D.N.Y. Sept. 12, 2023) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)).  Generally, "the lack of probable cause–while not dispositive–tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Moroughan v. County of Suffolk*, 514 F.Supp.3d 479, 524 (E.D.N.Y. 2021)) (internal quotation marks omitted).

Defendants' motion for summary judgment on the malicious prosecution claims is based on their assertion that Laureano had probable cause to stop plaintiff, and then to arrest him when plaintiff fled.  The Second Circuit has cautioned, however, that "probable cause to prosecute should not be conflated with probable cause to arrest." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021) (citing *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).  "Probable cause, in the context of malicious prosecution, has ... been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."

-16-

*Boyd*, 336 F.3d at 76.  The Court of Appeals has also "clarified that probable cause for a malicious prosecution claim means probable cause to believe that [the prosecution] could succeed[.]"  *Delanuez v. City of Yonkers*, No. 20-CV-4476, 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) (quoting *Boyd*, 336 F.3d at 76).

It is also important to bear in mind that there were several charges brought against plaintiff.  The Court of Appeals has "highlight[ed] the need to separately analyze the charges claimed to have been maliciously prosecuted."  *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (holding that district court erred by "instruct[ing] that if the jury found probable cause supporting any of the three charges ... lodged against [plaintiff], no liability for malicious prosecution could be found as to any of the charges filed").  *See also Thompson v. Clark*, __ F.Supp.3d __, 2023 WL 3570658, at *7 (E.D.N.Y. 2023) ("The existence of probable cause to charge a plaintiff with a lesser offense does not 'foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior'") (quoting *Posr*, 944 F.2d at 100).

Following plaintiff's arrest, Laureano filled out and signed under oath a document titled "Information/Complaint" dated August 24, 2019, asserting a misdemeanor charge of resisting arrest based on plaintiff's flight from his vehicle and his refusal to comply with Laureano's orders to stop running.[8]  (Dkt. #29-13 at 4.)  The document bears a caption indicating that it relates to Case No. CR 19-202259 in Rochester City Court.  It states that there was a scheduled

---

[8] Although the document is captioned "Information/Complaint," an information and a complaint are not the same thing.  The "fundamental difference" between them is that "a misdemeanor complaint may rest on hearsay allegations while an information may not."  *People v. Weinberg*, 34 N.Y.2d 429, 431 (1974) (citing C.P.L. § 100.40).  A criminal defendant has a waivable right to be prosecuted by information.  *Id.*

Since the document signed by Laureano does not rest on hearsay and is accompanied by a supporting deposition, it appears to be an information, and will be referred to as such, but ultimately the distinction is immaterial with respect to plaintiff's malicious prosecution claim.

appearance date of August 26, 2019.  In connection with the information, Laureano also signed a supporting deposition stating that plaintiff "failed to activate his signal prior to pulling over" on Miller Street, and that he then fled on foot from Laureano.  *Id.* at 5.[9]

Officer Perelli signed a felony complaint charging plaintiff with criminal possession of a weapon and possession of stolen property, as well as an information/complaint on a misdemeanor charge of obstructing governmental administration.  *Id.* at 2, 3.  Those documents are also dated August 24, 2019, and bear the same case number as those signed by Laureano.  As stated, plaintiff was subsequently indicted on the weapons charges only; there is no indication that any of the other charges were prosecuted beyond plaintiff's initial appearance.  The felony prosecution on the weapons charges terminated in plaintiff's favor when the charges against him were dismissed in the wake of Justice Schiano's decision suppressing the handgun as fruits of an unlawful search.[10]

There is evidence in the record, then, that Laureano initiated a prosecution of plaintiff for resisting arrest, by filing the information charging him with that offense.  *See Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments," meaning either "a 'felony complaint' for a felony charge, or a 'misdemeanor complaint' or an 'information' for a

---

[9] There are also two other documents in the record, which are attached to Laureano's affidavit and described by him simply as "paperwork," that are essentially post-arrest reports describing the events leading up to plaintiff's arrest.  (Dkt. #29-16.)  Those documents do not appear to have played any role in plaintiff's prosecution.

[10] Until recently the law in the Second Circuit was that the favorable-termination element required "affirmative indications of innocence," *see Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018), but that rule was abrogated by the United States Supreme Court in *Thompson v. Clark*, 596 U.S. 36 (2022), in which the Court held that a plaintiff asserting a claim of malicious prosecution need only show that his prosecution ended without a conviction, and need not demonstrate that the prosecution ended in a manner indicative of his innocence.

misdemeanor charge") (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997), and *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997)).  Although the record before me does not indicate what happened at or following plaintiff's scheduled August 26 appearance on the charge, there is no suggestion that he was convicted of resisting arrest or any other offense in connection with that charge.

Although Laureano did not file the felony complaint charging plaintiff with weapons offenses, that does not mean that he had no involvement in the ensuing prosecution on those charges.  Laureano's attempted stop of plaintiff's vehicle set in motion a chain of events that led to the discovery of the firearm, and the circumstances leading up to the traffic stop played an important role in the prosecution.

A plaintiff can satisfy the "initiation" element of a malicious prosecution claim against a police officer not only by showing that "the officer brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits or swore to and signed a felony complaint," but also that the officer "creat[ed] material, false information and forward[ed] that information to a prosecutor or ... withh[eld] material information from a prosecutor."  *Israel v. City of New York*, No. 16-cv-6809, 2018 WL 11219076, at *6 (S.D.N.Y. Sept. 29, 2018); *see also Torres v. Jones*, 26 N.Y.3d 742, 760-61 (2016) (explaining that under New York law, "a defendant other than a public prosecutor may be liable [for malicious prosecution] for supplying false information to the prosecutor in substantial furtherance of a criminal action against the plaintiff").

Plaintiff alleges that from the time that he filed an information against plaintiff, and continuing during the prosecution on plaintiff's indictment, Laureano made perjurious statements

to the effect that the basis for his initial stop and seizure of plaintiff was plaintiff's failure to signal before pulling to the curb.  Plaintiff further alleges that Laureano "intentionally concealed and misrepresented to prosecutors, grand jurors, and the Court the probable cause basis for stopping and arresting Mr. Johnson."  (FAC ¶ 50.)

Assuming the truth of plaintiff's allegations that Laureano knowingly attempted to effect a traffic stop without probable cause, and that he thereafter lied to the prosecutor and the grand jury about doing so, Laureano could have had enough involvement in the felony prosecution to satisfy the first element of a malicious prosecution claim on the firearms charges.  Though it was ultimately the prosecutor's decision to pursue the weapons charges against plaintiff, whether there was probable cause for the initial traffic stop was a critical factor in that equation.

"In general, courts presume the prosecutor exercises independent judgment in deciding whether to initiate or continue a criminal proceeding."  *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *11 (S.D.N.Y. Dec. 18, 2020).  The Second Circuit has stated, however, that "it would not appear that [the independent-judgment principle] has any application where a police officer is alleged to have maliciously misled a prosecutor," particularly "where the 'independent judgment' consisted of no more than verifying some of the allegedly false information provided by the officers."  *Cameron*, 598 F.3d at 64.

It would have been of obvious importance for the prosecutor in plaintiff's case to know whether evidence of the firearm that was discovered in his vehicle was likely to be admissible at trial.  Without such evidence, it would have been impossible to get a conviction; indeed, the charges were dismissed shortly after the trial court suppressed the handgun.  *See Boyd*, 336 F.3d

at 77 (stating that if a prosecution rests on evidence that "would clearly not be admissible[,] ... there would be no probable cause to believe the prosecution could succeed").

Without Laureano's account of what led to the traffic stop, the only evidence that the prosecutor had relating to the stop was the BLC video.  But as explained above, that video was hardly conclusive proof that Laureano had probable cause for the stop; in fact, the state court judge concluded after watching the video that there was *no* probable cause.  The prosecutor therefore had to rely on–and apparently credited–Laureano's account.  If that account were false, then the prosecutor could not be said to have exercised independent judgment in deciding to pursue the felony charges.  *See Cameron*, 598 F.3d at 64 ("The evidence about which [the prosecutor] testified [at bench trial on plaintiff's malicious-prosecution claim]–the security camera footage, the 911 calls, and the booking photos–could not on its own justify a prosecution, absent the information provided" by the arresting officers).  *See also Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir.2007) ("[T]he chain of causation need not be considered broken if [a defendant government agent] deceived the subsequent decision maker or could reasonably foresee that his misconduct [would] contribute to an independent decision that results in a deprivation of liberty") (alteration in original) (citation and internal quotation marks omitted).

That Laureano was not the officer who discovered the firearm or signed the felony complaint does not preclude a finding he played an active role in the prosecution.  For one thing, he testified at the *Mapp* hearing, the purpose of which was to determine the admissibility of the handgun.  If a factfinder were to credit plaintiff's version of the events of August 24, it could reasonably be inferred that Laureano knowingly gave false testimony in an attempt to mislead the trial court and defeat the motion to suppress.  *See Delanuez v. City of Yonkers*, No. 20 Civ. 4476,

2022 WL 16540682, at *7 (S.D.N.Y. Oct. 28, 2022) (allegation that police detective testified falsely at suppression hearing was sufficient to meet first element of a malicious prosecution claim).

Additionally, once Laureano had arrested plaintiff, it was little more than happenstance which officer discovered the gun; had no other officers been present, Laureano might very well have searched the vehicle and found the gun himself, once he had apprehended plaintiff and secured him in his police car.  With respect to the malicious prosecution claim, then, it matters little whether the pistol was found by Laureano or some other officer; either way, the weapon was found as a consequence of Laureano's allegedly unlawful arrest.[11]  *Cf. Walker v. Carrozzo*, __ F.Supp.3d __, 2023 WL 2664610, at *14 (S.D.N.Y. Mar. 28, 2023) (denying police officers' motion for summary judgment on malicious prosecution claim where there were issues of fact about whether officers had probable cause to arrest plaintiff, and therefore whether there was probable cause to believe plaintiff could successfully be prosecuted for possession of heroin that was found in his pocket during search incident to arrest).

As to the element of malice, plaintiff has alleged that Laureano "maliciously commenced a criminal proceeding against" him and that Laureano "falsely, maliciously and without probable cause charged Plaintiff with violation of the criminal laws of the State of New York, which ultimately were alleged by Indictment Number 2020/0070, filed on February 21, 2020."  (FAC ¶ 47.)  "A lack of probable cause generally creates an inference of malice."  *Boyd*, 336 F.3d at 78.

---

[11] The officer who discovered the handgun, Thomas Lisle, testified at the *Mapp* hearing that he performed an "inventory search" of plaintiff's vehicle "[f]or safekeeping."  Asked to explain, he stated, "Well, at that point the driver was being arrested, the vehicle had a window down and *was in the roadway*."  (Dkt. #36-2 at 30) (emphasis added).

Therefore, "[o]nce [the court] find[s] an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well." *Id. See also Gagliano v. County of Suffolk*, No. CV 18-1895, 2022 WL 4370194, at *7 (E.D.N.Y. Aug. 29, 2022) (same factual issues surrounding whether there was probable cause for plaintiff's arrest that precluded summary judgment on his false arrest claim applied to his malicious prosecution claim as well), *R&R adopted*, 2022 WL 4368329 (S.D.N.Y. Sept. 20, 2022).

I conclude, then, that Laureano is not entitled to summary judgment on the malicious prosecution claim. Although probable cause to arrest and probable cause to prosecute are not identical, they are intertwined in this case because they both stem from Laureano's initial stop of plaintiff's vehicle, and his purported basis for the stop. Those matters involve Laureano's and plaintiff's respective credibility, which cannot be determined on a motion for summary judgment, "for these are 'jury functions, not those of a judge.'" *Kee*, 12 F.4th at 166 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See id.* at 167 (concluding that there were disputed factual issues in the record that precluded summary judgment on the issue of whether there was probable cause to prosecute plaintiff for drug offenses, where police detective asserted that he saw plaintiff smoking marijuana inside a vehicle, but other evidence contradicted his statements).

## IV. Qualified Immunity

Defendants contend that even if the Court does not find that probable cause has been established, the Court should still find that Laureano is entitled to qualified immunity on all the claims against him, based on arguable probable cause.

-23-

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The qualified immunity defense, thus, is a broad shield that protects all but the plainly incompetent or those who knowingly violate the law." *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (internal quotation marks omitted).

In the context of a false arrest claim, the court asks whether the officer had "arguable probable cause," which "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).  *See also District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018) ("Even assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they 'reasonably but mistakenly concluded that probable cause was present'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987))).  "A police officer is entitled to qualified immunity from a false arrest claim if arguable probable cause existed at the time the officer arrested the plaintiff, and from a malicious prosecution claim if there was arguable probable cause at the time the criminal proceeding commenced and continued." *Harig v. City of Buffalo*, No. 22-30-cv, 2023 WL 3579367, at *4 (2d Cir. 2023) (citations omitted).  *See also Simons v. Fitzgerald*, 285 F.App'x 924, 926 (2d Cir. 2008) ("The officers in this case benefit from qualified immunity on the false arrest and malicious prosecution

claims if it was objectively reasonable for them to believe they did have probable cause to arrest Simons and, subsequently, to prosecute him") (cleaned up).

In the case at bar, given the factual disputes described above, the Court cannot determine at this point that Laureano is entitled to qualified immunity.  Again, on the record presented, a jury could credit plaintiff's testimony that he was driving straight down the street, within his lane, at the time Laureano turned on his emergency lights, and Laureano's later statements that plaintiff was veering or pulling toward the curb were fabricated.  If so, then Laureano could not reasonably have believed that probable cause existed; in fact, if he did concoct that story, as plaintiff alleges, he *knew* that there was no probable cause to stop plaintiff, and no reasonably competent officer could think otherwise.   Nor could Laureano reasonably have believed that it was permissible for him to testify falsely before the grand jury or during the *Mapp* hearing.  *See Spencer v. Ellsworth*, No. 09 Civ. 3773, 2011 WL 1775963, at *6 n.4 (S.D.N.Y. May 10, 2011) ("If there were evidence of perjury in the record, [defendant police officer] would not be entitled to qualified immunity because officers of reasonable competence could not disagree that providing perjured testimony to cause an indictment was a constitutional violation").  Laureano's motion for summary judgment on the ground of qualified immunity is therefore denied as well.


**V.  Injurious Falsehood**

Plaintiff's fourth cause of action, which appears to be brought only against Laureano, asserts a claim under New York law for injurious falsehood, alleging that Laureano intentionally made false sworn statements in the simplified information charging plaintiff with a violation of

-25-

V.T.L. 1163(c), and that he "made the same false sworn allegation in sworn testimony before Justice Schiano during the Mapp Hearing ... ."  FAC ¶ 64.

Defendants argue that the fourth cause of action should be dismissed because the undisputed facts show that Laureano did not make any false statements.  As explained above, there is a genuine issue of fact in that regard.  The Court nevertheless concludes that the fourth cause of action should be dismissed because the facts do not support a claim of injurious falsehood under New York law.

"The elements of injurious falsehood are 'essentially identical to slander of title.'"  *Casa de Meadows Inc. (Cayman Islands) v. Zaman*, 76 A.D.3d 917, 922 (1st Dep't 2010) (quoting *Rosenbaum v. City of New York*, 5 A.D.3d 154, 155 (1st Dep't 2004)).  "The action for injurious falsehood lies when one publishes false and disparaging statements about another's property under circumstances which would lead a reasonable person to anticipate that damage might flow therefrom."  *Cunningham v. Hagedorn*, 72 A.D.2d 702, 704 (1st Dep't 1979).  "The gravamen of an injurious falsehood action is a false and disparaging statement about another's property or directly damaging to one's pecuniary interests."  *Egiazaryan v. Zalmayev*, No. 11 Civ. 2670, 2011 WL 6097136, at *10 (S.D.N.Y. Dec. 7, 2011).  Special damages are "a necessary element of an action for injurious falsehood that must be pleaded with particularity ... ."  *BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282, 283 (1st Dep't 2009).  "As Courts in this District have explained, injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services ... ."  *In Touch Concepts, Inc. v. Cellco Partnership*, 949 F.Supp.2d 447, 483 (S.D.N.Y. 2013) (cleaned up).

No such allegations have been made here.  Plaintiff has alleged that Laureano made false statements, to plaintiff's detriment, but he does not allege that those statements related to plaintiff's property or business, nor has he alleged special damages.  The fourth cause of action must therefore be dismissed.  *See Fabry v. Meridian Vat Reclaim, Inc.*, No. 99 Civ. 5149, 2000 WL 1515182, at *3 (S.D.N.Y. Oct. 11, 2000) (concluding that an action for injurious falsehood did not lie on facts alleged, because the allegedly false statements did not concern the plaintiff's property) (citing *Cunningham*, 72 A.D.2d at 704).

I also note that the fourth cause of action alleges that Laureano "conspired to falsely swear that Plaintiff failed to signal his intention to pull to the curb."  FAC ¶ 65.  To the extent that the fourth cause of action is based on an alleged conspiracy, it fails to state a claim.  "[An independent cause of action for civil conspiracy is not recognized" in New York, absent an underlying actionable tort.  *Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 215 A.D.3d 699, 703 (2d Dep't 2023) (internal quote omitted).  As explained, plaintiff has not adequately pleaded a claim for injurious falsehood, and even if he had, the conclusory allegation that Laureano "conspired" with others is insufficient to state a conspiracy claim.  *See id.* (stating that "to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement").

## VI.  Deprivation of Right to a Fair Trial

In the ninth cause of action, which is brought under § 1983, plaintiff alleges that Laureano "deprived Devin Johnson of his right to a fair hearing" by giving false testimony about

his reason for stopping plaintiff's vehicle.  FAC ¶ 97.  Although the ninth cause of action alleges

that "[t]he Defendants performed the above-described acts under color of state law" and that "the

Individual Defendants are liable under 42 U.S.C. § 1983," FAC ¶¶ 99, 100, there are no other

individual defendants in this action, and the claim appears to be brought only against Laureano.

Defendants state that "there is no apparent difference between this and the Fourth Cause

of Action," except that the ninth cause of action alleges that Laureano acted under color of state

law.  As the preceding discussion makes clear, however, the fourth cause of action alleges a

particular tort under New York law, injurious falsehood, which is not analogous to the § 1983

claim asserted in the ninth cause of action.

Although the complaint uses the term "fair hearing," the right in question is more

generally referred to as the right to a fair trial.  Despite that terminology, a plaintiff asserting a

due process claim based on denial of the right to a fair trial need not have been convicted at trial,

or even to have gone all the way to trial.  The Second Circuit has "held that there may be a

violation of due process based on fabricated evidence even without the use of fabricated evidence

at trial because the 'fair trial right protects against deprivation of liberty that results when a police

officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's

decision, *were that evidence presented to the jury.*'"  *Barnes v. City of New York*, 68 F.4th 123,

130 (2d Cir. 2023) (quoting *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 250 (2d Cir. 2020), *cert.

denied sub nom. City of New York v. Frost*, __ U.S. __, 142 S. Ct. 1666 (2022).  *See also Kee v.

City of New York*, 12 F.4th 150, 168 (2d Cir. 2021) ("a Section 1983 fair trial claim is available

to a defendant even if the underlying criminal charges are dismissed and the fabricated evidence

is never presented at trial") (citing *Frost*, 980 F.3d at 249).

To prove a violation of the right to a fair trial, a plaintiff must show that "an (1) investigating official (2) fabricate[d] information (3) that [wa]s likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). *See also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial").

In the case at bar, plaintiff alleges that Laureano falsely stated, both in the charging document and at the *Mapp* hearing, that plaintiff had committed a traffic infraction by leaving his traffic lane and steering toward the curb, without signaling.  As explained previously, whether Laureano's statements were false and whether he knew them to be so is in dispute.  Defendants' motion for summary judgment on the ninth cause of action is therefore denied.

## VII.  Due Process Claim under New York State Constitution

The seventh cause of action alleges that Laureano's conduct "violated Mr. Johnson's rights under the New York State Constitution, Article I § 6 to due process of law," and that as a result, "Mr. Johnson spent more than fourteen (14) months wrongfully imprisoned ... ."  FAC ¶¶ 83, 85.  The complaint states that this claim is brought against the City, under *respondent superior* for the actions of its employees acting within the scope of their employment."  FAC ¶ 86.

"District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where ... remedies are available under § 1983." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quotation marks omitted) (collecting cases).  *See, e.g.*, *Buari v. City of New York*, 530 F.Supp.3d 356, 409 (S.D.N.Y. 2021) ("Buari cannot maintain his state constitutional due process claim ... against the NYPD Defendants because Section 1983 provides an adequate remedy").

Because there is no *respondeat superior* liability under § 1983, however, "courts in this Circuit have concluded that '§ 1983 is not an adequate alternative remedy for state-constitutional claims that rely on a theory of *respondeat superior*.'"  *Id.* (quoting *Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018)).  "Indeed, the New York Court of Appeals has recognized that '[a] plaintiff seeking to recover on the basis of *respondeat superior* simply does not come within the terms of section 1983.'"  *Id.* (quoting *Brown v. State*, 89 N.Y.2d 172, 194 (1996)).

In their memorandum of law, defendants concede that "the City could be vicariously liable for the intentional tort of an employee acting within the scope of his employment," Dkt. #29-15 at 21, but they argue that the City cannot be held liable in this case because there is no underlying liability on the part of the individual defendant, Laureano.  The basis for that assertion is again defendants' contention that the evidence does not show that Laureano misstated the facts about the traffic stop that led to plaintiff's arrest.  Because those facts are in dispute, defendants' motion for summary judgment on this claim is denied.  *See Buari v. City of New York*, 530 F.Supp.3d 356, 409-10 (S.D.N.Y. 2021) (plaintiff's "state law malicious prosecution and state

-30-

constitutional due process claims against the City survive to the extent they are based on a

*respondeat superior* theory").

In denying the motion, however, the Court expresses no view as to the merits of this

cause of action.  Neither party has addressed the substance of the claim, and so the Court has not

been presented with the question whether plaintiff's allegations and the evidence in the record

would support a due process claim under the New York Constitution, or whether such a claim is

duplicative of his other claims.


**VIII.  "Failure to Intercede" Claim**

In the tenth cause of action, which is brought under § 1983, plaintiff alleges that

> [b]y their conduct and under color of state law, Defendant Laureano had opportunities to
> intercede on behalf of Mr. Johnson to prevent his false arrest, malicious prosecution, false
> imprisonment, deprivation of liberty without due process of law, but, due to their
> intentional conduct and/or reckless deliberate indifference, declined or refused to do so[,]

and that

> Defendant Laureano's failure to intercede violated Mr. Johnson's clearly established
> constitutional right to be free from unreasonable search and seizure and not to be
> deprived of liberty without due process of law as guarantee by the Fourth and Fourteenth
> Amendments.  No reasonable police officer would have believed that failing to intercede
> to prevent these Defendants from fabricating inculpatory evidence, withholding material,
> exculpatory and/or impeachment evidence, deliberately failing to conduct a
> constitutionally adequate investigation, and causing Mr. Johnson to be arrested and
> prosecuted without probable cause, was lawful.

FAC ¶¶ 103, 104.

Defendants move for summary judgment on this claim on the ground that Laureano is the

only individual alleged to have done anything unlawful, and that he could not logically have

intervened in his own conduct.  The Court agrees.

-31-

Plaintiff responds to defendants' argument by asserting that Laureano "could have intervened to stop the criminal action in this case," by "inform[ing] the District Attorney's Office that he did not observe the Plaintiffs vehicle violate V & T 1163(d) ... ." (Dkt. #36-1 at 4.)  That would not amount to "intervening," however, but would simply mean that Laureano ceased to engage in his allegedly wrongful activity.

"Police officers 'have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by *other* law enforcement officers in their presence.'" *Martinez v. City of N.Y.*, 564 F.Supp.3d 88, 106 (E.D.N.Y. 2021) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)) (emphasis added).  "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Smith v. Sawyer*, 435 F.Supp.3d 417, 438 (N.D.N.Y. 2020) (citing *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016)).

It is self-evident that an officer cannot "collaborate" in his own illegal actions.  Therefore, "a defendant cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop [himself] from committing that violation." *Case v. City of New York*, 233 F.Supp.3d 372, 402 (S.D.N.Y. 2017) (internal quotation marks and citation omitted)).  *See, e.g., Da Mata v. City of New York*, No. 21 Civ. 155, 2023 WL 112449, at *15 (S.D.N.Y. Jan. 5, 2023) (granting summary judgment for defendants on failure-to-intervene claim where plaintiff named only one individual defendant).

Although plaintiff alleges that he was indicted and prosecuted without probable cause, he does not allege that the prosecutor, or anyone other than Laureano, knowingly and intentionally used or relied on falsehoods or manufactured evidence.  There is thus no basis for a claim that

Laureano should have intervened to prevent or stop anyone else from violating plaintiff's rights. Defendants' motion for summary judgment on the tenth cause of action is therefore granted.[12]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #29) is granted in part and denied in part. Defendants' motion is granted as to the fourth and tenth causes of action in the First Amended Complaint, and those causes of action (for injurious falsehood and failure to intercede, respectively) are dismissed.

Plaintiff has withdrawn the third, fifth and sixth causes of action, and those causes of action are dismissed as well.

In all other respects, defendants' motion is denied. What remains, then, are plaintiff's: first cause of action (false arrest) and second cause of action (malicious prosecution) against both defendants under New York law; seventh cause of action (asserting a due process violation under the New York State Constitution) against defendant City of Rochester; and eighth and ninth causes of action (malicious prosecution and deprivation of liberty, and denial of a fair hearing, respectively) against defendant Jonathan Laureano under 42 U.S.C. § 1983.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        November 28, 2023.

---

[12] The wording of this cause of action suggests that it was originally framed with more than one individual defendant in mind; the complaint refers, for example, to "*their* conduct," and to "failing to intercede to prevent *these* Defendants from fabricating inculpatory evidence ... ." FAC ¶ 104.