**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

DEVIN JOHNSON,

                                        Plaintiff,          **21-cv-6683 (EAW)(MWP)**

              -against-

CITY OF ROCHESTER, et al.,

                                        Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE**

ROTH & ROTH, LLP
Elliot D. Shields
*Attorneys for Plaintiff*
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020
eshields@rothandrothlaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ................................................................................................................ 1

I.    PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE (POINT I) (Regarding Defendants' Argument that the Seventh Cause of Action under the New York Constitution is "Redundant" of the Federal Due Process Claim) ................................................ 1

II.   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE (POINT II) (Regarding Defendants' Argument to Preclude Cross-Examination or Any Mention of the May 25, 2018 Incident Involving Officer Perelli) ................................................ 4

III.  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE (POINTS III & V) ................................................................................................ 7

   A.   The April 1, 2017, Nishean Napier Stop Demonstrates Laureano's Pattern of Racially Motivated Pretextual Stops ................................................ 8

   B.   The March 15, 2018, Nishean Napier Stop Confirms That the 2017 Stop Was Not an Isolated Incident ................................................ 9

   C.   The Darius Howard Case Further Establishes Laureano's Pattern of Dishonesty ........ 10

   D.   The Brookins Case Establishes Laureano's Pattern of Providing False Justifications for Stops ................................................ 13

   E.   These four other instances are admissible and directly relevant under Rules 404(b) and 608(b) ................................................ 16

      1.   All Four Incidents Show a Repeated Pattern of Racially Motivated Pretextual Stops and Searches ................................................ 16

      2.   All Four Incidents Demonstrate Laureano's Willingness to Fabricate Evidence and Lie Under Oath ................................................ 17

      3.   Evidence of Repeated Misconduct Is Admissible to Show Modus Operandi Under Rule 404(b) ................................................ 17

      4.   Excluding These Four Incidents Would Unfairly Prejudice Plaintiff ................ 18

IV.   ADMISSIBILITY OF JUSTICE SCHIANO'S SUPPRESSION RULING ................ 19

   A.   Justice Schiano's Suppression Ruling Is Highly Relevant to Probable Cause and Officer Laureano's Credibility (FRE 401, 402) ................................................ 20

      1.   Findings from the Underlying Criminal Case ................................................ 20

      2.   Relevance to Civil Claims ................................................ 21

   B.   The Probative Value of the Suppression Ruling Far Outweighs Any Unfair Prejudice or Confusion (FRE 403) ................................................ 22

      1.   High Probative Value ................................................ 22

      2.   No "Unfair" Prejudice ................................................ 22

3.    Mitigation of Any Potential Confusion...................................................................... 23

C.    Justice Schiano's Prior Judicial Finding Is Admissible Despite Defendants' "Extrinsic Evidence" Objection, Because It Relates to the Same Incident and Credibility at Issue ..... 23

D.    Conclusion on Motion in Limine Point IV ................................................................. 25

CONCLUSION.......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Bermudez v. City of New York*, No. 15-CV-3240, 2019 WL 136633, at *6 (E.D.N.Y. Jan. 8, 2019) ............................................................................................................................................... 6

*Egghead.com, Inc. v. Brookhaven Cap. Mgmt. Co.*, 194 F. Supp. 2d 232, 237 (S.D.N.Y. 2002) ... 1

*Ismail v. Cohen*, 706 F. Supp. 243, 253 (S.D.N.Y. 1989) ...................................................... 9, 18

*Karoon v. N.Y.C. Transit Auth.*, 241 A.D.2d 323, 324 (1 Dept 1997)............................................ 2

*Sarnicola v. County of Westchester,* 229 F. Supp. 2d 259, 270 (S.D.N.Y. 2002) ........................... 2

*Triolo v. Nassau County*, 20 F.4th 776, 785 (2d Cir. 2022) ........................................................ 3

*Young v. Kadien,* No. 09-CV-6639-FPG, 2013 WL 4495010, at *1 (W.D.N.Y. Aug. 20, 2013) .... 1

**Statutes**

Federal Rule of Civil Procedure 8(d)........................................................................................... 3

Federal Rule of Evidence 401 .................................................................................................... 20

Federal Rule of Evidence 402 .................................................................................................... 20

Federal Rule of Evidence 403 ................................................................................................. 6, 22

Federal Rule of Evidence 404(b) .......................................................................................... passim

Federal Rule of Evidence 608(b) .......................................................................................... passim

Federal Rule of Evidence 611(a) ................................................................................................. 6

Federal Rule of Evidence 803(8) ............................................................................................... 25

New York General Municipal Law § 50-j................................................................................... 1

## ARGUMENT

I.   **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE (POINT I) (Regarding Defendants' Argument that the Seventh Cause of Action under the New York Constitution is "Redundant" of the Federal Due Process Claim)**

Defendants seek to dismiss Plaintiff's Seventh Cause of Action, arguing that it is duplicative of Plaintiff's Ninth Cause of Action and unnecessary because the City would be liable under New York General Municipal Law § 50-j and the Rochester City Charter. However, this argument is both procedurally improper and substantively flawed.

First, Defendants' request is an improper attempt to seek dispositive relief through a motion in limine. Courts routinely reject such efforts, holding that motions in limine are not a substitute for summary judgment motions and should not be used to dismiss claims. See *Young v. Kadien,* No. 09-CV-6639-FPG, 2013 WL 4495010, at *1 (W.D.N.Y. Aug. 20, 2013) ("A motion in limine is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense."). The time for dispositive motions has long passed, and Defendants cannot use an in limine motion to circumvent procedural deadlines.

Moreover, Defendants are re-litigating an issue already decided at summary judgment. The law of the case doctrine prevents parties from attempting to revive arguments that have already been rejected unless there is an intervening change in law, new evidence, or a need to correct clear error—none of which Defendants assert. See *Egghead.com, Inc. v. Brookhaven Cap. Mgmt. Co.*, 194 F. Supp. 2d 232, 237 (S.D.N.Y. 2002). While Defendants cite Judge Larimer's observation that he had not been presented with the issue of whether the Seventh Cause of Action was duplicative, that does not mean Defendants can now seek its dismissal through an in limine motion. Their delayed attempt to dismiss the claim on the eve of trial should be rejected.

Even if the Court were to reach the merits, Defendants' redundancy argument fails. They conflate indemnification obligations with municipal liability under respondeat superior. A municipality's duty to indemnify an officer for actions taken within the scope of employment is not a substitute for respondeat superior liability, nor does it eliminate a plaintiff's right to bring a state-law constitutional claim. See *Karoon v. N.Y.C. Transit Auth*., 241 A.D.2d 323, 324 (1 Dept 1997) (holding that indemnification is "a shield" for officers, not "a sword" for plaintiffs, and does not displace respondeat superior liability).

Additionally, Defendants' motion ignores a critical distinction: qualified immunity is not a defense under New York law for state constitutional violations and does not apply to municipalities. Under federal law, qualified immunity can shield an individual officer from liability under § 1983. If Officer Laureano were to be found qualifiedly immune on Plaintiff's federal claims, then Plaintiff could not recover against him under § 1983, because qualified immunity is a complete defense to individual liability in federal constitutional cases. However, New York law does not recognize qualified immunity for constitutional torts. See *Sarnicola v. County of Westchester,* 229 F. Supp. 2d 259, 270 (S.D.N.Y. 2002) ("New York State does not recognize the doctrine of qualified immunity in connection with constitutional torts committed by State officers."). That means even if Officer Laureano escapes liability under the federal claims, Plaintiff can still recover against the City under respondeat superior for a violation of the New York Constitution.

Moreover, under New York law, a municipal employer has no entitlement to qualified immunity from vicarious liability claims. The Second Circuit has confirmed that "municipal immunity does not extend to vicarious liability claims under state law when an officer acted within

the scope of their employment, even if that officer is immune from personal liability." *Triolo v. Nassau County*, 20 F.4th 776, 785 (2d Cir. 2022).

Thus, the Seventh Cause of Action is not redundant—it provides an alternative avenue for recovery in the event that Officer Laureano is found immune under federal law. If the Court were to dismiss this claim now, and the jury were to determine that Laureano is immune under § 1983, Plaintiff could be left without any remedy despite having suffered a constitutional violation. The unavailability of qualified immunity under state law makes the New York constitutional claim particularly significant in ensuring that Plaintiff has a viable avenue for relief.

Plaintiff is also entitled to plead alternative claims under Federal Rule of Civil Procedure 8(d)(2)-(3), which explicitly allows parties to assert multiple causes of action, even if they rely on overlapping facts. Courts routinely permit both federal and state constitutional claims to proceed in tandem, particularly where they involve different defenses, remedies, or legal standards. Striking the Seventh Cause of Action now would prematurely foreclose an important theory of liability, especially given the procedural posture of this case.

Finally, Defendants fail to articulate any actual prejudice that would result from allowing both claims to proceed. If the jury finds for Plaintiff on both claims, the Court can prevent any double recovery through appropriate jury instructions or post-trial adjustments. However, striking the Seventh Cause of Action now would risk unfairly narrowing Plaintiff's legal theories and remedies.

For these reasons, Defendants' motion should be denied in its entirety. It is procedurally improper, seeks relief that should have been raised at summary judgment, and mischaracterizes the relationship between indemnification and respondeat superior liability. The Seventh Cause of Action is distinct from Plaintiff's federal due process claim, particularly because qualified

immunity does not apply to municipalities or state constitutional claims, and Plaintiff is entitled to pursue both theories at trial. Accordingly, the Court should allow this claim to proceed.

## II. PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE (POINT II) (Regarding Defendants' Argument to Preclude Cross-Examination or Any Mention of the May 25, 2018 Incident Involving Officer Perelli)

Defendants seek to preclude cross-examination of Officer Phillip Perelli regarding his involvement in a May 25, 2018 incident with then-sixteen-year-old Yamiek Maddox, arguing that the prior event is irrelevant and would improperly suggest a propensity for excessive force. However, Defendants' characterization of the incident ignores two independent bases that make it directly relevant to Perelli's truthfulness—an issue that is always fair game for cross-examination under Federal Rule of Evidence 608(b).

First, Perelli's claim that he had probable cause to stop, arrest, and charge Maddox is demonstrably false. The civil complaint filed in *Maddox v. City of Rochester, et al.* documents in Paragraph 15 that all of the charges Perelli lodged against Maddox—including harassment, resisting arrest, and an open container violation—were dismissed by the Monroe County District Attorney's Office. **Exhibit 1**, Maddox Civil Complaint. The DA's decision to withdraw the charges entirely suggests that Perelli's sworn statements regarding probable cause were untruthful. His Subject Resistance Report (SRR) describes a lawful basis for the arrest and use of force, yet that account is irreconcilable with the DA's determination that Maddox should not have been prosecuted. **Exhibit 2**, Perelli SRR. This calls into question whether Perelli fabricated or exaggerated his justification for detaining Maddox—precisely the type of credibility issue that Rule 608(b) is designed to expose.

Second, Perelli's explanation for why he used force against Maddox is contradicted by video evidence—both surveillance footage and his own Body Worn Camera (BWC) footage.

4

**Exhibit 3**, Surveillance Video (available here: https://www.dropbox.com/scl/fi/g6hgxt019d4v6dc0whbua/Exhibit-18-Surveillance-Video-re-Maddox-Incident.mp4?rlkey=welcpifzw7iw48wur5rf3nadf&dl=0); **Exhibit 4**, Perelli BWC recording (available here: https://www.dropbox.com/scl/fi/w52ca2kksvr0aly0ngsa2/Exhibit-17-Perelli-BWC-from-Maddox-Incident-00358_PP213820180525162350_0004.MP4?rlkey=m37q6hlaq5idtgmf1zmod7jt5&dl=0).

In his PSS testimony on pages 15-16, Perelli asserted that Maddox had taken an "aggressive step" toward him, that Maddox had made verbal threats, and that Perelli used force in response to what he perceived as an imminent threat. **Exhibit 5**, PSS Testimony. But the video evidence does not support this narrative. Instead, the footage contradicts the justification Perelli gave for striking Maddox and escalating the encounter.

Perelli eventually pled guilty to falsely arresting Maddox and discourtesy. **Exhibit 6**, Stipulation of Settlement. He was disciplined with a four-day unpaid suspension. *Id.* In other words, Perelli did not simply use force—he admitted to falsely arresting Maddox, and he provided an untruthful justification for the arrest and use of force, a justification that was exposed as false when video evidence revealed what actually transpired. Additionally, the City of Rochester and Perelli settled the civil suit brought by Maddox for $75,000. **Exhibit 7**, Settlement Documents.

These reasons make cross-examination into this incident highly probative of Perelli's character for truthfulness. Defendants' attempt to exclude this impeachment evidence by citing Federal Rule of Evidence 404(b) mischaracterizes its purpose. Plaintiff is not introducing the Maddox incident to show that Perelli has a propensity for excessive force or that he acted in accordance with such a character on another occasion. Rather, the evidence is offered **to** challenge whether Perelli tells the truth in official reports and sworn testimony—which is explicitly

5

permitted under Rule 608(b). The Second Circuit has held that while prior complaints against law enforcement officers are generally not admissible to show a lack of credibility, they are admissible if the underlying conduct involves dishonesty. See *Bermudez v. City of New York*, No. 15-CV-3240, 2019 WL 136633, at *6 (E.D.N.Y. Jan. 8, 2019). Here, Perelli's dishonesty is well-documented: not only was he disciplined by his own department, but he admitted to falsely arresting Maddox, and the City's settlement of Maddox's case for $75,000 and the DA's dismissal of Maddox's charges undermines Perelli's claim that he had a lawful basis to initiate the arrest.

Defendants also invoke Federal Rule of Evidence 403, claiming that the introduction of this prior incident would be unfairly prejudicial. But there is no unfair prejudice in questioning a law enforcement witness about documented instances of untruthfulness—particularly when those instances were serious enough to warrant departmental discipline and a civil settlement of $75,000. The jury has a right to assess whether Perelli can be trusted as a witness. Any potential prejudice is far outweighed by the high probative value of this evidence in assessing Perelli's credibility. Courts routinely permit cross-examination into prior falsehoods when a witness's credibility is in question, and Perelli's actions in the Maddox case fall squarely within that category.

Finally, Defendants invoke Federal Rule of Evidence 611(a), arguing that this line of questioning would be unduly harassing or time-consuming. But cross-examining Perelli about whether he told the truth in official reports and disciplinary proceedings is neither harassment nor an improper distraction. It goes to the core of his reliability as a witness. Moreover, Plaintiff does not seek to introduce extrinsic evidence or conduct a mini-trial on the Maddox incident. The proposed cross-examination will be narrowly focused on whether Perelli's official reports and sworn statements about probable cause and his use of force were contradicted by the video evidence, the City's settlement of Maddox's civil claims for $75,000, and the DA's ultimate

decision to dismiss the prosecution. This limited inquiry is entirely appropriate and necessary to ensure the jury can fairly evaluate Perelli's credibility.

For these reasons, Defendants' motion to preclude cross-examination regarding the May 25, 2018, incident should be denied.

## III.    PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE (POINTS III & V)

Defendants seek to exclude evidence of Laureano's April 1, 2017 stop of Nishean Napier (Point III of their MIL) and all evidence relating to the wrongful conviction of Darius Howard, which arose from Laureano's unlawful stop, false arrest, and fabrication of evidence against Mr. Howard—including judicial findings that Laureano testified falsely, the admission by the DA's office that Laureano testified falsely and its consent to the reversal of Howard's conviction.

Defendants argue this evidence of Officer Laureano's history of pretextual stops and false justifications for arrests is irrelevant and constitutes improper character evidence. However, this evidence is highly probative under Federal Rule of Evidence 404(b) because it establishes Laureano's modus operandi—a repeated pattern of stopping young Black men without cause and fabricating justifications for those stops and searches.

This pattern further documented by (1) a March 15, 2018 incident where Laureano *again* unlawfully stopped and detained Nishean Napier (**Exhibit 8**, Laureano BWC), and (2) the suppression ruling in *United States v. Brookins***,** No. 17-CR-6019 (W.D.N.Y. 2018) (**Exhibit 9**) where Judge Charles Siragusa found that Laureano's testimony regarding the justification for a vehicle search was incredible and unsupported by the evidence.

These *four* other incidents are admissible to show that Laureano's conduct in stopping Devin Johnson was not an isolated event but part of a repeated and deliberate pattern of unlawful traffic stops, and false testimony to justify the unlawful stop. In addition to being admissible under

Rule 404(b), these cases are particularly relevant to Laureano's credibility and admissible under Rule 608(b). Defendants seek to shield Laureano from cross-examination about these documented prior incidents of dishonesty, but the jury is entitled to evaluate whether he is a credible witness.

### A. The April 1, 2017, Nishean Napier Stop Demonstrates Laureano's Pattern of Racially Motivated Pretextual Stops

The April 1, 2017, stop of Nishean Napier is a clear example of Laureano's pattern of targeting Black men for pretextual stops with no legal justification. Laureano stopped Napier in front of his own home and demanded identification without any articulable suspicion of wrongdoing. **Exhibit 10**, News Article; **Exhibit 11**, video of the incident. When later asked to justify the stop, Laureano admitted that his sole reason for stopping Napier was that Napier "looked back" at him while he drove by—a completely arbitrary and legally insufficient basis for detaining someone.

This incident, which was captured on video (**Exhibit 11**) shows Napier repeatedly questioning why he was being stopped, while Laureano failed to provide any coherent legal justification. When Napier asked, "Because I've got dreads? Because I'm a Black man with dreads?" Laureano fumbled with his notepad, avoiding a direct response. This aligns with Laureano's modus operandi, which follows a consistent pattern: (1) targeting Black men for pretextual stops, (2) fabricating or exaggerating justifications for the stop, and (3) becoming evasive when questioned about the legitimacy of the encounter.

This stop is strikingly similar to Laureano's stop of Devin Johnson, where his justification for the stop is likewise in dispute and unsupported by clear evidence. Under Rule 404(b), evidence of a repeated and intentional pattern of unconstitutional stops is admissible to demonstrate modus operandi, particularly when the officer's actions consistently target a specific group—in this case, young Black men. Courts have recognized that prior false arrests and racial profiling incidents are

admissible to establish a pattern of unconstitutional conduct. See *Ismail v. Cohen*, 706 F. Supp. 243, 253 (S.D.N.Y. 1989) (admitting evidence of prior false arrests to show a pattern of racial profiling).

Defendants attempt to exclude only the 2017 Napier stop, but that effort must fail, because Laureano stopped Napier again the following year—a fact that strengthens the pattern and makes it even more probative.

## B. The March 15, 2018, Nishean Napier Stop Confirms That the 2017 Stop Was Not an Isolated Incident

Approximately one year later, on March 15, 2018, Laureano **a**gain stopped Nishean Napier without cause. **Exhibit 8**. This second stop occurred in the vicinity of Culver Road and Hazelwood Terrace, and Napier was again detained without any lawful justification. Napier was not arrested, was not issued a traffic ticket, was not charged with any crime, and was ultimately free to go after being unlawfully stopped.

This stop was captured on Body Worn Camera (BWC) footage, which was only produced after prolonged litigation under the New York Freedom of Information Law (FOIL). The footage, available here, and annexed hereto as **Exhibit 8**, confirms that Laureano had no legitimate reason to stop Napier, demanded identification without cause, and ultimately let him go without taking any enforcement action. The fact that Laureano stopped Napier again, after previously targeting him in 2017, further proves that these stops were not isolated but part of a deliberate and recurring pattern.

This second stop is particularly damning because it removes any doubt that the 2017 stop was an outlier or a misunderstanding. If the first Napier stop had been a simple mistake, Laureano would not have repeated the exact same conduct with the exact same person the following year. Instead, the March 15, 2018, stop confirms the existence of a modus operandi, in which Laureano

9

routinely stops Black men without cause and demands identification based on nothing more than their race and presence in a certain neighborhood.

Under Rule 404(b), this evidence is highly probative in demonstrating that Laureano's justification for stopping Devin Johnson was pretextual, just as it was pretextual in his multiple stops of Napier.

## C. The Darius Howard Case Further Establishes Laureano's Pattern of Dishonesty

In *People v. Howard*, Monroe County prosecutors charged Darius Howard with narcotics offenses and aggravated unlicensed operation of a motor vehicle, relying almost exclusively on sworn statements and testimony by Officer Laureano. According to Laureano, he observed Howard driving a vehicle with heavily tinted windows, conducted a search of the car, and discovered narcotics and a razor blade inside. Laureano further claimed that he recovered Howard's cell phone from inside the vehicle, near the drugs, and later returned the phone to Howard, asserting that it had "no evidentiary value." Exhibit 12, Huntley Hearing at 12:2-12. However, every element of Laureano's version of events was false, and the misconduct in Howard's prosecution would eventually lead to the conviction being overturned.

From the outset, Laureano fabricated critical evidence in his arrest paperwork and grand jury testimony. He falsely stated that he personally saw Howard operating or sitting inside the vehicle. In truth, Howard had never been inside the car that night. He was outside a residence where a barbecue was taking place and had been recording his encounter with Laureano on his phone as the officer approached him. The existence of this video, had it been preserved, would have demonstrated conclusively that Laureano's account was false. Nevertheless, Laureano persisted in his false claims, which directly underpinned the criminal charges filed against Howard.

At a pretrial suppression hearing, Laureano was the sole witness for the prosecution. **Exhibit 12**. He testified that his search of the vehicle was conducted as an "inventory search" and that all valuable property inside the car was properly documented. Id. at 10:3-9. Yet, Howard's phone—despite being central to the case—was never recorded in any property report or tow log, further undermining Laureano's credibility. Id. at 10:10-15:2. Laureano also testified, both at the suppression hearing and later at trial, that he had returned the phone to Howard at the time of the arrest, implying that there was no need to formally document it. This assertion later proved to be a blatant falsehood.

During jury deliberations, the prosecution suddenly disclosed, for the first time, that the phone had never been returned to Howard. See **Exhibit 13**, Affirmation of Scott Miles, ¶ 9. Instead, it had been vouchered into evidence by Laureano himself the morning after the arrest. **Exhibit 14**, Chain of Custody Report. This revelation forced the trial judge, Hon. Alex R. Renzi, to immediately suppress the drug evidence and dismiss the related narcotics charges. **Exhibit 13**, ¶ 10. However, despite this damning admission, the jury was still permitted to continue deliberations on the charge of aggravated unlicensed operation of a motor vehicle. *Id.*

Following Howard's conviction on that remaining charge, additional misconduct came to light during his direct appeal. In preparing its appellate response, the Monroe County District Attorney's Office uncovered previously undisclosed chain-of-custody documents, revealing that the prosecutor had been in possession of Howard's phone the day before Laureano testified at the reopened suppression hearing. *Id.* ¶ 11. In other words, the prosecution knew at the time that Laureano was falsely testifying about the phone's disposition but failed to correct the record. This discovery was so egregious that Assistant District Attorney Scott Myles, in an Answering Affirmation dated August 20, 2020, formally admitted that Howard's due process rights had been

violated. *Id.* ¶ 13. The prosecution explicitly conceded that "without the ability to confront Officer Laureano with proof that he had testified to something that had not happened, the defendant was deprived of the opportunity for a full and fair cross-examination." *Id.* Further, the People conceded that Howard was deprived of that opportunity due to the failure of the prosecutor to inform the defendant or the Court that the cell phone was in the prosecution's possession. Given these admissions, the District Attorney's Office did not oppose vacating Howard's conviction. *Id.* ¶ 14.

Judge Renzi, in a Decision and Order dated September 14, 2020, granted Howard's CPL § 440.10 motion to vacate his conviction, finding that the misconduct of both Laureano and the prosecutor rendered the conviction constitutionally infirm. **Exhibit 15**. The court's ruling was unambiguous, concluding that "the defendant's conviction may have been obtained in violation of his federal and New York State constitutional rights." The judge specifically found that Laureano's repeated statements under oath about returning the phone were contradicted by official property records, which documented that the phone had been booked into evidence instead. Judge Renzi emphasized that had this information been disclosed earlier, it would have provided critical impeachment material against Laureano at both the suppression hearing and trial—material that "cannot be said … would not have [a]ffected the jury's ultimate verdict." The conviction was vacated, and the remaining charge was dismissed in the interest of justice. In essence, the entire case against Howard unraveled once the court was presented with the truth: Laureano had fabricated the justification for the stop, falsely attributed evidence to Howard, and then perjured himself in sworn testimony to sustain a prosecution built on lies.

The Howard case is directly probative of Laureano's truthfulness and is highly admissible under Rule 608(b) for impeachment purposes. The case is especially significant because it is not merely an allegation of dishonesty, but a judicially confirmed instance of Laureano lying under

oath. A neutral court found that his sworn testimony was false, and even the Monroe County District Attorney's Office formally conceded that his false statements required the conviction to be overturned. This is precisely the kind of prior dishonest conduct that Rule 608(b) permits for impeachment, as it goes directly to Laureano's character for truthfulness.

Beyond impeachment, the Howard case is also admissible under Rule 404(b) to establish Laureano's modus operandi of fabricating justifications for stops and arrests. In *Howard*, Laureano falsely claimed to have seen Howard operating a vehicle when he had not. He then concocted a false claim that he had discovered Howard's phone inside the vehicle, despite having seized it from Howard outside the car. Later, he lied under oath about returning the phone, in an effort to cover up his misconduct. This pattern of fabricating a legal justification for a stop, falsely attributing evidence to a suspect, and then lying under oath to conceal those fabrications is strikingly similar to the allegations in the instant case. The *Howard* case is thus directly relevant in showing that Laureano has a demonstrated history of engaging in precisely the same type of unconstitutional behavior at issue here.

Finally, the *Howard* case highlights the immense prejudice Plaintiff will suffer if this evidence is excluded. The credibility of Officer Laureano is central to this case. The jury will be asked to determine whether to believe his version of events or Plaintiff's. Given that Laureano has previously been found to have lied under oath in a criminal proceeding, fabricated evidence, and attempted to conceal his misconduct, depriving the jury of that knowledge would be profoundly unjust. Courts routinely admit evidence of prior false testimony when the witness's credibility is a key issue, particularly when the same officer is accused of similar misconduct in a civil rights trial.

For these reasons, Defendants' motion to exclude the Howard case must be denied.

**D. The Brookins Case Establishes Laureano's Pattern of Providing False Justifications for Stops**

In *United States v. Brookins*, No. 17-CR-6019 (W.D.N.Y. 2018), Officer Laureano's credibility was directly called into question when his justification for a warrantless vehicle search was found to be not credible and unsupported by the evidence. See **Exhibit 9**. This case, which was heard before Judge Charles J. Siragusa, involved Laureano's claim that he had probable cause to search the defendant's vehicle because he detected the smell of marijuana emanating from inside. However, as the suppression hearing unfolded, it became clear that Laureano's account was contradicted by multiple other officers present at the scene, and the government itself ultimately abandoned this justification. Judge Siragusa ruled that the search was unconstitutional and ordered that the drugs and firearm recovered from the vehicle be suppressed. This ruling, which stemmed from Judge Siragusa's determination that Laureano's testimony lacked credibility, is directly relevant to this case under Rule 608(b) for impeachment purposes and under Rule 404(b) as evidence of Laureano's modus operandi of fabricating pretextual justifications for unconstitutional searches.

The facts of the *Brookins* case expose yet another instance in which Laureano fabricated a basis for a search a vehicle and then attempted to justify it with false testimony. On May 27, 2016, Laureano and other Rochester Police Department officers conducted a traffic stop of Brian D. Brookins, who was driving a rented Dodge Durango. The government initially argued that Laureano had probable cause to search the vehicle based on the smell of marijuana allegedly coming from inside the car. However, the suppression hearing revealed significant inconsistencies and outright contradictions that cast serious doubt on the legitimacy of Laureano's claim.

Testimony from other officers who were present at the scene directly contradicted Laureano's assertion that he had smelled marijuana. Officer Audrey DiPoala, who assisted in the stop, provided a sworn stipulation stating that she never smelled marijuana at any point during the

14

encounter. **Exhibit 9** at 7:25-8:5. Similarly, Officer Salvatore Amato, who conducted a 20-minute search of the Durango, testified that he never smelled marijuana at any time while he was inside the vehicle. *Id* at 8:6-11. This completely undermined Laureano's claim that he had detected an overwhelming odor of marijuana, which he had relied upon as the justification for the search. Even Laureano himself was uncertain during his testimony, admitting that he "wasn't 100 percent certain" that the smell was actually coming from the Durango. *Id*. at 8:12-16.

Further damaging to Laureano's credibility was the fact that the government ultimately abandoned its argument that the smell of marijuana justified the search. On July 23, 2018, the day that Laureano was scheduled to testify for a second time, the government abruptly informed the court that it was no longer pursuing the argument that the search was justified by the odor of marijuana. *Id*. at 7:20-24. This significant shift in the prosecution's position strongly suggests that the government itself recognized that Laureano's testimony was not credible and could not withstand scrutiny.

In addition to finding that Laureano's justification for the search was false, Judge Siragusa also rejected the government's alternative argument that the search was a valid 'inventory search'. The judge found that the inventory search was merely a pretext, as the police department's own documentation indicated that the vehicle was towed as a result of a "felony drug arrest", meaning that the officers had searched the vehicle first and only then decided to impound it. *Id*. at 16-22. This sequencing contradicted the government's claim that the car was lawfully impounded before it was searched. The court held that the search was unconstitutional because the purported justification for impounding the vehicle did not comply with legal requirements for an inventory search. *Id*. at 27-30.

Judge Siragusa's findings were unequivocal. He ruled that Laureano's claim that he smelled marijuana was unsubstantiated and contradicted by other officers, that the supposed inventory search was merely a pretext, and that the warrantless search of the Durango violated the Fourth Amendment. Consequently, he granted Brookins' motion to suppress the drugs and firearm found inside the vehicle. This ruling, from a federal court, after full litigation and testimony, is highly probative of Laureano's dishonesty and repeated use of pretextual stops.

### E. These four other instances are admissible and directly relevant under Rules 404(b) and 608(b)

Defendants seek to bar evidence of the April 1, 2017, Napier incident and the Darius Howard case, but they ignore that these two matters, viewed in conjunction with the second Napier stop in 2018 and the Brookins suppression ruling, powerfully establish Officer Laureano's ongoing pattern of unconstitutional stops and dishonest testimony. The four incidents are not random or isolated; rather, they collectively show that Laureano routinely stops young Black men without cause and then falsifies or exaggerates justifications to conceal his misconduct. As such, they are admissible to demonstrate Laureano's modus operandi under Rule 404(b) and to impeach his credibility under Rule 608(b).

#### 1. All Four Incidents Show a Repeated Pattern of Racially Motivated Pretextual Stops and Searches

In *both* of the Napier stops, Laureano stopped the same young Black man on two separate occasions, without any legitimate basis, demanding identification and failing to provide any coherent justification. In *Howard*, Laureano claimed he observed a Black man driving with heavily tinted windows—yet that was demonstrably false, as the evidence proved Howard had *never* been inside the car. And in *Brookins*, Laureano relied on the fictitious "odor of marijuana" to justify a search that a federal judge ultimately found was unconstitutional and unsupported by the record.

16

These incidents present a consistent pattern: Laureano routinely initiates stops and searches without cause, later inventing or embellishing justifications. This pattern goes directly to the heart of Plaintiff's claim that he, too, was subjected to a baseless stop and arrest by Laureano.

### 2. All Four Incidents Demonstrate Laureano's Willingness to Fabricate Evidence and Lie Under Oath

Under Rule 608(b), specific instances of dishonesty are admissible to impeach a witness's credibility when credibility is central to the case. Here, Laureano's credibility could hardly be more central—he is a key witness whose version of events stands in direct contrast to Plaintiff's. Each of the four incidents shows Laureano lying or being found non-credible:

- o *Napier 2017 & 2018*: Both stops reveal Laureano fabricating or failing to articulate a legitimate basis for detaining Napier, suggesting a willingness to lie about the existence of probable cause.

- o *Howard*: A state court vacated the criminal conviction after finding that Laureano had lied about returning Howard's phone. Even the District Attorney's Office conceded that Laureano's false statements undermined the integrity of the prosecution.

- o *Brookins*: A federal judge deemed Laureano's testimony "not credible" and found that his supposed justification for the search—smelling marijuana—was thoroughly contradicted by other officers and by the government's own abandoned arguments.

These judicial determinations are not mere accusations; they are formal findings that Laureano lied or was otherwise unworthy of belief under oath. Plaintiff is entitled to use such powerful impeachment evidence to allow the jury to fairly assess Laureano's truthfulness at trial.

### 3. Evidence of Repeated Misconduct Is Admissible to Show Modus Operandi Under Rule 404(b)

Defendants contend that these episodes amount to improper "character evidence," but Rule 404(b) expressly allows evidence of other wrongs or acts to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"—colloquially described as "modus operandi." Where an officer engages in a repeated pattern of pretextual stops and offers similarly false justifications, that pattern is relevant to show that the stop at issue was not an isolated mistake but part of a deliberate, well-established modus operandi.

Here, the four incidents collectively illustrate:

- o   A consistent targeting of young Black men for baseless stops;

- o   Fabrication of justifications (e.g., "he looked back," "he was operating the vehicle," "I smelled marijuana"); and

- o   False statements under oath when those justifications are challenged.

Courts routinely admit evidence of an officer's similar misconduct when it is probative of the same pattern of unconstitutional behavior. See *Ismail v. Cohen*, 706 F. Supp. 243, 253 (S.D.N.Y. 1989).

### 4. *Excluding These Four Incidents Would Unfairly Prejudice Plaintiff*

The credibility contest here is stark: Plaintiff says he was stopped without cause and subjected to an unlawful arrest, while Laureano claims he acted lawfully. If the jury is denied knowledge of these prior findings—where multiple courts have explicitly concluded that Laureano fabricated evidence and lied under oath—it will be deprived of critical information bearing directly on his veracity. Indeed, these are not vague or unrelated accusations; each of the four incidents involves nearly identical misconduct. Plaintiff must be permitted to test Laureano's credibility with these prior acts, otherwise the jury will be left with the mistaken impression that Laureano has never been caught lying or engaging in pretextual policing.

18

In sum, these four prior incidents should not be viewed in a vacuum. Taken together, they provide a compelling picture of Laureano's repeated pattern of unconstitutional stops, dishonest report-writing, and false testimony under oath. They are therefore admissible under Rule 404(b) to show modus operandi and under Rule 608(b) to impeach Laureano's credibility—issues that go to the very core of the jury's deliberations in this case. Accordingly, Defendants' motion to exclude evidence related to the 2017 Napier stop and the *Howard* case should be denied, just as the evidence of the 2018 Napier stop and the Brookins matter should be admitted into evidence.

## IV.    ADMISSIBILITY OF JUSTICE SCHIANO'S SUPPRESSION RULING

Defendants seek to preclude any reference at trial to Justice Charles Schiano's Decision and Order from the *Mapp* suppression hearing in the underlying criminal case, including the specific finding that there was no probable cause for the traffic stop. Plaintiff opposes this motion in limine. Justice Schiano's suppression ruling—which explicitly found that Officer Laureano's testimony about the traffic stop was unsupported by video evidence and lacked probable cause—is highly relevant to Plaintiff's claims of false arrest, malicious prosecution, and fabrication of evidence under 42 U.S.C. §1983. Excluding all mention of that ruling would unfairly prejudice Plaintiff by removing crucial evidence regarding Officer Laureano's credibility and the absence of probable cause, issues that lie at the heart of this case.

As Judge Larimer recognized in denying summary judgment, probable cause is a central, disputed factual issue that must be decided by the jury. *Johnson* v. *City of Rochester*, No. 21-CV-6683-DGL, 2023 WL 3989864 (W.D.N.Y. June 13, 2023). While not preclusive, Justice Schiano's findings demonstrate that a factfinder could reasonably conclude that Officer Laureano lacked probable cause for the stop. For the reasons discussed below, Justice Schiano's decision and its specific no-probable-cause finding should not be deemed "inadmissible extrinsic evidence."

Instead, the Court should permit Plaintiff to reference and present this evidence at trial—subject to appropriate instructions—because it easily satisfies the relevance standard (Rules 401, 402) and its probative value far outweighs any risk of unfair prejudice (Rule 403). Moreover, prior judicial findings in a related matter directly bearing on an officer's credibility and the facts of the case are admissible in a civil rights trial such as this.

### A. Justice Schiano's Suppression Ruling Is Highly Relevant to Probable Cause and Officer Laureano's Credibility (FRE 401, 402)

Under Federal Rules of Evidence 401 and 402, evidence is admissible if it has "any tendency" to make a fact of consequence more or less probable than it would be without the evidence. The bar for relevance is low: evidence need not conclusively establish a fact, only slightly shift the probability of a consequential fact in the party's favor. Here, Justice Schiano's October 13, 2020 suppression Decision and Order meets this standard by directly addressing two critical factual issues the jury must decide:

1.    Whether Officer Laureano had probable cause to stop and arrest Plaintiff.

2.    Whether Officer Laureano fabricated his account of the traffic stop (thereby implicating his credibility and the integrity of the prosecution).

### 1. Findings from the Underlying Criminal Case

In the underlying criminal case, *People* v. *Johnson*, Justice Schiano conducted a *Mapp* hearing to determine whether the handgun seized from Plaintiff's vehicle should be suppressed as the fruit of an unlawful stop. **Exhibit 16**, Mapp Hearing Transcript. Officer Laureano testified that he initiated the traffic stop after seeing Plaintiff's vehicle pull over toward the curb without using a turn signal, in alleged violation of N.Y. Vehicle & Traffic Law §1163. *Id*. at pp. 6 and 26. However, Justice Schiano reviewed video footage of the incident from a nearby surveillance camera and found that the video did not support Laureano's testimony. **Exhibit 17**, Suppression

Order. Specifically, the video showed that "Officer Laureano activated his emergency lights before [Plaintiff's] vehicle pulled over to the curb," meaning Plaintiff had not yet begun to pull over when Laureano turned on his lights. *Id*. at 4. Based on the video evidence, Justice Schiano concluded that the police "failed to meet [their] burden to establish probable cause to stop [Plaintiff]'s vehicle," and he ordered the handgun suppressed as fruit of an unlawful stop. Shortly thereafter, all charges against Plaintiff were dismissed. *Id*.

### 2. *Relevance to Civil Claims*

These facts are directly relevant to Plaintiff's civil claims for false arrest, malicious prosecution, fabrication of evidence and due process violations. Plaintiff alleges that he was subjected to an arrest and prosecution without probable cause, and that Officer Laureano fabricated evidence by falsely claiming a traffic violation as a pretext for the stop. Justice Schiano's ruling tends to prove precisely that: there was no traffic infraction and thus no lawful basis for the stop or arrest. A central element of a §1983 false arrest or malicious prosecution claim is the absence of probable cause. The suppression decision, made after a hearing at which Officer Laureano testified under oath, supports Plaintiff's contention that the stop lacked probable cause. Moreover, Judge Schiano explicitly found that Laureano's testimony was contradicted by the video—which is directly relevant to the evidence fabrication and state due process claims, and directly undermines Laureano's credibility.

Given the stark dispute over whether Plaintiff committed a traffic violation, Justice Schiano's findings are critical. They corroborate Plaintiff's account that he did nothing to justify the stop, while undermining Laureano's version. Indeed, in denying summary judgment, Judge Larimer noted that the finding of "no probable cause" could lead a factfinder to conclude Plaintiff was not pulling over before Laureano activated his lights. This prior judicial determination thus

has direct bearing on the issues of probable cause, evidence fabrication, due process violations and credibility—all of which will be central at trial. For these reasons, the ruling easily satisfies Rules 401 and 402.

**B. The Probative Value of the Suppression Ruling Far Outweighs Any Unfair Prejudice or Confusion (FRE 403)**

Defendants argue that Justice Schiano's decision is "inadmissible extrinsic evidence" and should be barred under Rule 403. That rule permits exclusion of relevant evidence only if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Here, the balance decidedly favors admission.

*1. High Probative Value*

As explained, the suppression ruling is perhaps the single most probative piece of evidence that Officer Laureano lacked a lawful basis to stop Plaintiff's car and lied about the reason for the stop. Justice Schiano's conclusions were based on both an adversarial hearing and objective video evidence. In a false arrest or malicious prosecution action, few pieces of evidence could be more probative than a prior judicial determination that the stop lacked probable cause. Its relevance to the evidence fabrication and due process claims, and Laureano's credibility, is also exceedingly high: it supports Plaintiff's claim that Laureano testified falsely about the circumstances of the stop.

*2. No "Unfair" Prejudice*

"Unfair prejudice" under Rule 403 means an undue tendency to suggest a decision on an improper basis (e.g., emotion or bias). A judicial finding that Laureano lacked probable cause does not invite the jury to decide on an improper basis; rather, it sheds light on the precise issue at hand—whether there was probable cause to arrest and prosecute Plaintiff. While Defendants may

be disadvantaged by the ruling, that does not constitute "unfair" prejudice. Rule 403 is not designed to bar strongly probative evidence simply because it is damaging to a party's case.

### 3. *Mitigation of Any Potential Confusion*

Defendants might argue that jurors will give undue weight to Justice Schiano's conclusion and improperly defer to it. But any such risk can be mitigated with a limiting instruction clarifying that the jury must make its own determination on probable cause and credibility, and that the state court's finding is not legally binding in this civil case. Jurors are presumed to follow the Court's instructions. In contrast, if the Court excludes all mention of the suppression ruling, jurors may be left to speculate why the contraband or weapons charges were dropped, potentially leading to confusion or unfair conjecture. The circumstances of the termination of the underlying criminal case are relevant to a malicious prosecution claim, and justice is best served by providing the jury with a complete and accurate narrative.

Finally, excluding the suppression ruling would severely prejudice Plaintiff. Probable cause is central to Defendants' defense; depriving Plaintiff of critical evidence that a neutral judge already questioned Laureano's version of events would be manifestly unfair. Thus, Rule 403 does not warrant exclusion.

### C. Justice Schiano's Prior Judicial Finding Is Admissible Despite Defendants' "Extrinsic Evidence" Objection, Because It Relates to the Same Incident and Credibility at Issue

Defendants assert that Justice Schiano's decision constitutes "inadmissible extrinsic evidence" of Officer Laureano's credibility. They may rely on Rule 608(b), which generally prohibits proving specific instances of a witness's conduct through extrinsic evidence solely to attack character. But Rule 608(b) is aimed at collateral matters—unrelated episodes of untruthfulness, such as lying on a job application. Here, the prior testimony directly involves the

same incident, the same date, and the same alleged justification for Plaintiff's arrest. It is therefore not a collateral matter; it is a central fact question in the case.

Even under Rule 608(b), courts have discretion to permit cross-examination regarding specific instances of conduct probative of credibility. Plaintiff must at least be permitted to ask Laureano about the suppression hearing result—specifically, whether a judge found that his testimony was contradicted by the video and that he lacked probable cause for the stop. If Laureano denies it or attempts to minimize it, Plaintiff should be allowed to introduce the court order or transcript to impeach him. This is not a "mini-trial" over an unrelated incident; it is an inquiry into the very facts of the case at bar.

Nor does *Arlio v. Lively*: 474 F.3d 46 (2d Cir. 2007) bar introduction of prior adjudicative findings. That case involved different circumstances: the prior administrative board's decision turned on issues not identical to the federal constitutional claim, and the risk of jury confusion was far greater. *Id* at 52 ("the district court agreed with Lively at the in limine hearing that the Arbitration Board's decision was irrelevant, since it was based solely on the particulars of the union collective bargaining agreement. It was not in any way an adjudication of Arlio's constitutional claims (nor could it be). However, Arlio ultimately convinced the district court that testimony about the arbitration was necessary to explain why he was *not* seeking back wages in the present federal suit.").

By contrast, Justice Schiano's suppression ruling directly addresses the very Fourth Amendment issue before this Court—probable cause for the stop—and is based on the same video evidence and officer testimony that the jury will evaluate at trial. A proper limiting instruction can ensure the jury does not simply "rubber stamp" the prior finding, but rather considers it alongside all other evidence.

Finally, to the extent Defendants raise a hearsay objection, the ruling falls within the public records exception under Rule 803(8), as it is a factual finding resulting from a legally authorized investigation (a suppression hearing). The judge's neutral and official determination carries substantial indicia of trustworthiness. In any event, Plaintiff may alternatively establish the fact of this prior finding through cross-examination or judicial notice, consistent with the rules of evidence.

**D. Conclusion on Motion in Limine Point IV**

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in Limine Point IV. Justice Schiano's suppression hearing Decision and Order—and specifically its finding that Officer Laureano lacked probable cause for the traffic stop—is relevant, probative, and admissible in this §1983 civil trial. Precluding this evidence would unfairly shield the jury from a critical piece of the truth, unduly prejudice Plaintiff, and compromise the jury's evaluation of both probable cause and Officer Laureano's credibility. A suitable instruction can alleviate any risk of juror confusion, permitting the jury to make an informed determination. As Judge Larimer has already held, whether probable cause existed is a quintessential jury question here, and Justice Schiano's findings are important evidence on that question. Defendants' motion to preclude should therefore be denied.

<b><u>CONCLUSION</u></b>

For all the reasons set forth above, Plaintiff respectfully requests that this Court deny the defendants' Motion in Limine in its entirety.

Dated: New York, New York         Respectfully Submitted,
       February 13, 2025         ROTH & ROTH LLP

                           By: _____~//s//~_____
                             Elliot Dolby Shields, Esq.
                             *Counsel for Plaintiff*

192 Lexington Ave, Suite 802
New York, New York 10016
Ph: (212) 425-1020

To:    All counsel of record (via ECF)