JA-064

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | \| |
| | \| *Case No.: 17-CR-6019* |
| *Government,* | \| |
| | \| |
| *vs.* | \| *September 11, 2018* |
| | \| |
| *BRIAN D. BROOKINS,* | \| |
| | \| |
| *Defendant.* | \| |
| | \| |

## TRANSCRIPT OF STATUS CONFERENCE
### BEFORE THE HONORABLE CHARLES J. SIRAGUSA
### UNITED STATES DISTRICT JUDGE

<u>APPEARANCES:</u>

For the Government,

> DEPARTMENT OF JUSTICE
> UNITED STATES ATTORNEY'S OFFICE
> By:  CHARLES E. MOYNIHAN, ESQ.
> 100 State Street
> Rochester, New York 14614

For the Defendant,

> FEDERAL PUBLIC DEFENDER
> WESTERN DISTRICT OF NEW YORK
> By:  ANNE BURGER, ESQ.
> First Federal Plaza, Suite 400
> 28 East Main Street
> Rochester, New York 14614
> Anne_burger@fd.org

JA-065

```
 1              (Proceeding commenced at 1:40 p.m.)
 2              THE COURT:  This is the Matter of the United
 3       States v. Brian Brookins.  The Court notes the
 4       presence of Mr. Brookins, his attorney, Ms. Burger,
 5       and Mr. Moynihan is here on behalf of the
 6       Government.
 7              I assume, counsel, no resolution has been
 8       reached in this case?
 9              MS. BURGER:  That's correct, your Honor.  A
10       few seconds ago Mr. Moynihan, indicated to me that
11       his office would not be prepared to offer an
12       arraignment with a time-served sentence.  He did
13       indicate he could try to seek approval for a
14       sentence involving a 16-month term.  I guess,
15       subject to approval, I ran that by Mr. Bookins just
16       now, and that is not something defense is
17       interested in.
18              THE COURT:  The Court then is prepared to
19       render a decision from the bench as it indicated it
20       would.
21              The matter is before the Court, based upon the
22       defendant's application for De Novo Review of
23       Magistrate Judge Feldman's report recommendation in
24       which Judge Feldman recommended to this Court that
25       the motion to suppress a handgun and drugs seized
```

Case 21-1747, Document 139-2, 04/30/2021, 3087810, Page56 of 145
Case 22-1478, Document 26, 10/16/2022, 3401187, Page69 of 145
JA-066

3

```
 1            on May 27, 2016 from the Dodge Durango that the

 2            defendant was operating be denied.

 3                    I think germane to the bench decision is the

 4            procedural history of the case.  The defense motion

 5            to suppress was originally filed as part of his

 6            omnibus application on March 16, 2017, and that was

 7            docket No. 22.

 8                    On March 27th of 2017, the Government

 9            responded in docket No. 23.  The Government,

10            really, in that initial response set forth three

11            theories upon which it maintained the motion to

12            suppression be denied:

13                    The first search incident to arrest citing

14            Arizona v. Gant, 566 U.S. 332 (2006), which stood

15            for the proposition that what occurred was a search

16            according to the Government incident to arrest,

17            because either the arrestee is not secured and

18            within reaching distance of the passenger

19            compartment of the vehicle at the time of the

20            search where the officer has reason to believe that

21            the vehicle contains evidence of the crime of

22            arrest.

23                    The second theory the Government offered in

24            that initial response was probable cause to search

25            the vehicle based upon the smell of marijuana
```

Case 22-1478, Document 26, 10/16/2022, 3401187, Page70 of 145

4

```
1          emanating from the Duragno.

2               In the third theory, the Government maintained

3          that the motion to suppression should be denied on

4          the basis of an inventory search, because the

5          defendant admitted that his license was suspended.

6               Finally, the Government pointed to the

7          doctrine of inevitable discovery, arguing that in

8          any event, based upon that doctrine, the evidence

9          at issue should be admissible.

10              As a result of the original application in the

11         Government's response, Magistrate Judge Feldman

12         held a hearing on June 27th and July 25, 2017, at

13         which two Rochester Police Officers were called to

14         testify by the Government.  They were Officer

15         Jonathan Laureano and Officer Salvatore Amato.

16              In a post hearing memorandum of law, which is

17         docket No. 40, the Government argued that

18         suppression should be denied based upon, again,

19         search incident to arrest pursuant to Gant, and I

20         am quoting, "because Officer Laureano had reason to

21         believe that the vehicle contained evidence of the

22         crime for which Goolsby [sic], obviously a mistake,

23         was placed under arrest.

24              Surprising to the Court, after the hearing,

25         the Government pursued that theory, because it was
```

Case 6:17-cr-06018-CJS-JWF Document 72 Filed 09/26/18 Page 5 of 44
Case 1:19-cv-06834-RWP-CLH-K5 Document 34-10 Filed 08/23/19 Page 120 of 35
JA-068

5

1    clear at least from the hearing that the defendant

2    was outside the vehicle and the offense for which

3    he was being placed under arrest was the traffic

4    infraction of failure to signal a left turn.

5            The Government also, again, offered as a

6    basis for the legitimacy of the search Laureano's

7    testimony that while in the process of confronting

8    the defendant who was not responding to his

9    directions, he smelled marijuana coming from the

10   Durango.

11           Finally, the Government maintained that the

12   search was lawful, because it was an inventory

13   search, pointing to RPD general order directing

14   that towed vehicles, when left on private property

15   this time, because of a department initiated

16   incident.

17           They did not point at this time to the license

18   being suspended as the basis for legitimacy of the

19   inventory search.  And, interestingly, they did not

20   offer the theory of inevitable discovery in their

21   post-hearing memorandum.

22           In his report and recommendation, which is

23   Docket No. 42, Magistrate Judge Feldman recommended

24   that the motion to suppress be denied pursuant to

25   the Second Circuit Authority provided by U.S.

```
 1                v. Lyle, 856 F. 3d 191, (2017).

 2                     Essentially, Judge Feldman found that the

 3                defendant lacked standing to contest the search,

 4                because he was not on the rental agreement and

 5                Judge Feldman pointed out he didn't have a license.

 6                     Interestingly, the Government at no time ever

 7                argued standing, at least from what the Court can

 8                gleam, as a basis for denying the motion to

 9                suppress.  The matter then came back to this Court

10                based on the objections that the defendant filed to

11                the report and recommendation.

12                     In those objections former counsel,

13                Mr. DiCarlos (phonetic) pointed to appending case

14                before the Supreme Court that had yet to be

15                decided, Byrd v. U.S.

16                     While the Byrd case, in fact, was decided

17                while the case -- after the case came back to this

18                Court and the Government conceded in court

19                appearances, it no longer could argue -- or it

20                couldn't argue that the defendant lacked standing.

21                The Government conceded that the defendant had

22                standing to contest the search.  Also, another case

23                -- and the Byrd case was at 138 S. Ct. 1518.

24                     Interestingly, there is another case that was

25                decided, Collins v. Virginia, 138 S. Ct. 1663,
```

Case 6:17-cr-06012-WFS-JWF Document 343-10 Filed 09/08/18 Page 7 of 35
Case 1:18-cv-06843-WFS-JWF Document 343-10 Filed 09/08/18 Page 7 of 35
JA-070

7

1        having to do with the search of the vehicle that

2        was on the curtilage of a private residence.

3             With the Government's concession that the

4        defendant had standing, that obviously undermined

5        Judge Feldman's decision, which at the time was

6        based on the applicable Second Circuit Law, and

7        required this Court to address the more substantive

8        issues for the reasons offered for the search.

9             In that regard, the Court indicated that it

10       did want to hear further testimony from Officer

11       Laureano relating to the Government's contention

12       that the search of the Durango was justified by the

13       smell of marijuana.  Of course, it's well settled

14       that probable cause to search a vehicle is provided

15       when, for example, on a routine traffic stop, the

16       officer stopping the vehicle smells marijuana.

17            It is, of course, well settled that that would

18       justify the search of the vehicle and containers of

19       the vehicle, not necessarily under Federal Law, the

20       occupants.  However, on the date that Officer

21       Laureano was scheduled to testify, July 23, 2018,

22       the Government indicated that it was no longer

23       pursuing it's argument that the search was valid

24       because Officer Laureano smelled marijuana.

25            This position was certainly understandable to

Case 22-1478, Document 26, 10/16/2022, 3401187, Page73 of 145

Case 6:17-cr-06010-FPG-JWF Document 73-10 Filed 09/08/18 Page 20 of 46
Case 22-1478, Document 26, 10/16/2022, 3401187, Page74 of 145

JA-071

8

1     the Court based on a stipulation obtained by the

2     defense from Officer Audrey DiPoala, who assisted

3     Officer Laureano in an incident involving the

4     defendant, in which she indicated that she did not

5     smell marijuana.

6          It was also understandable, based upon the

7     hearing testimony in front of Judge Feldman of

8     Salvatore Amato of the Rochester Police Department,

9     which she essentially indicated she searched the

10    car for 20 minutes inside and never smelled

11    marijuana.

12         It was certainly as well understandable

13    because of the testimony that Officer Laureano

14    himself offered at trial where he said he thought

15    the smell was coming from the Durango, but wasn't

16    100 percent certain.

17         At that point, the Government was left with

18    one theory upon which it based it's argument that

19    the discovery of the handgun and drugs in the Dodge

20    Duragno was lawful and that was inventory search.

21    The Government did not pursue search incident to

22    arrest.  However, the Government did again point to

23    the doctrine of inevitable discovery as an

24    alternative theory even though the Government had

25    apparently abandoned that theory in its post

Case 22-1478, Document 26, 10/16/2022, 3401187, Page75 of 145

```
 1              hearing memorandum as the Court referred.
 2                   In reaching its decision, the Court adopts the
 3              findings of fact made by Judge Feldman in his
 4              report and recommendation, Docket No. 42, with
 5              certain clarifications and additions.
 6                   These clarifications and additions are the
 7              result of previous submissions by the Government
 8              and subsequent proceedings before this Court and
 9              include the September 6, 2018 testimony of Officer
10              Audrey DiPoala; the July 26, 2018 stipulation of
11              the Government, docket No. 60; the Government's
12              June 9, 2017 Brady disclosure; Defendant's Exhibits
13              A, C, D; all Rochester Police Departments reports,
14              and; E, a photograph of the driveway at 42 Kingston
15              Street.  These exhibits were all received and made
16              part of the record.
17                   Now, the specific clarifications and additions
18              that the Court adds to Judge Feldman's findings of
19              the fact are as follows:
20                   The Dodge Durango, which the defendant was
21              driving was rented from Enterprise Rental Company
22              located in Rochester at the Rochester Airport by
23              Kesha Misery, who was the defendants girlfriend and
24              whom he referred to as his wife and with whom he
25              had a child.  She rented the car for him, since he
```

Case 6:17-cr-06049-CJS-JWF Document 72 Filed 09/26/18 Page 10 of 44
Case 1:22-cv-06049-CJS-JWF Document 340 Filed 09/26/18 Page 10 of 35

Case 22-1478, Document 26, 10/16/2022, 3401187, Page76 of 145

```
 1          did not have a credit card.  So, on the date of the

 2          incident, May 27, 2016, he was obviously driving it

 3          with her permission.

 4               Now, this comes from the Government's

 5          statements to the Court in its response to the

 6          omnibus motion.

 7               Second, as of May 27, 2016 the defendant was

 8          the owner of the residence at 42 Kingston Street.

 9          This comes from the hearing testimony before Judge

10          Feldman, and I should add, additionally, from some

11          of the new exhibits introduced which put down the

12          defendant's address at 42 Kingston Street.

13               Three, very important, Officer Laureano did

14          not initiate a traffic stop of the defendant by

15          turning on his emergency lights until the Dodge

16          Duragno was parked in the defendant's driveway at

17          42 Kingston Street and the defendant was exiting

18          the vehicle.  This was clarified during the

19          testimony of Officer DiPoala, although the Court

20          notes she took a different position until she was

21          shown her police report and then, apparently, with

22          her recollection refreshed, did indicate that

23          Laureano did not turn on his emergency lights until

24          the Durango the defendant was driving was parked in

25          the driveway of his residence and he was exiting
```

1      the vehicle.

2          That came from the testimony of Officer

3      DiPoala and her police report, which was received

4      as Exhibit B.

5          Five, upon exiting the vehicle, the defendant

6      approached -- now DiPoala's said the side door of

7      the residence with keys out -- that came from

8      Officer DiPoala's.

9          The whole exchange that was testified to in

10     front of Judge Feldman, which involved Officer's

11     Laureano and DiPoala during which time, according

12     to the testimony, the defendant was told repeatedly

13     to get back in the Durango, during which time, the

14     defendant asked why he was being stopped, during

15     the time the defendant the tried to open the door

16     to his residence, during the time which he failed

17     to comply with police direction, during the time in

18     which he was cap stunned because he wasn't

19     following the direction, and during the time which

20     he fled into the backyard and was arrested was, to

21     say the least, brief.

22         Referring to the CAD report, the printout of

23     the 911 activity which was received at the hearing

24     before Judge Feldman as Government Exhibit No. 1,

25     it says, and I am reading:  21:30, Jonathan

Case 6:17-cr-06019-CJS-JWF Document 72 Filed 09/26/19 Page 12 of 44
Case 19-1468-cr Document 4430 Filed 09/26/19 Page 12 of 35
Case 22-1478, Document 26, 10/16/2022, 3401187, Page78 of 145

1    Laureano; 21:31, holding air, male not cooperative,

2    then we go down to 21:32, male in custody.

3        At most, it's 2 minutes, maybe 1 minute, this

4    is all unfolding.

5        Prior to his arrest, and that would be

6    following his cap stun, the defendant was never

7    told why he was being stopped.  Officer DiPoala

8    does not recall ever telling Officer Laureano that

9    42 Kingston Street appeared to be vacant, as

10   Officer Laureano testified at the hearing before

11   Judge Feldman.  This comes from the June 9, 2017

12   Brady disclosure.

13       Officer DiPoala and Assisting Officer

14   Laureano, with the apprehension of the defendant,

15   never smelled marijuana coming from the Durango,

16   although as evidence by Exhibit E, the photograph

17   now in evidence, she must have come in proximity to

18   the vehicle.  During the exchange, during that

19   confrontation that took maybe 1 to 2 minutes, the

20   Government agreed at a court appearance that the

21   windows and doors of the Duragno were closed; that

22   is, the windows were up and the doors were closed.

23       Officer Amato who searched the Durango,

24   including the interior, approximately 20 minutes

25   never smelled marijuana.  That is Amato's testimony

Case 22-1478, Document 26, 10/16/2022, 3401187, Page79 of 145

JA-076

1    of the hearing.  Prior to any search of the

2    Durango, Officer Laureano told Officer Amato that

3    "we would be searching the vehicle for evidence as

4    well as incident to tow."  It comes from Officer

5    Amato's report received into evidence -- I'm not

6    sure -- it's either Exhibit A or B.

7         Thirteen, the tow slip, which according to the

8    procedures of the Rochester Police Department is

9    required to be completed when a vehicle is

10   impounded and which was received into evidence as

11   exhibit -- we may have two Defense Exhibit A's,

12   because it was received in the first hearing as

13   Defense Exhibit A.  But the important thing is,

14   under reason for tow, what is checked is felony

15   drug arrest.

16        And, Fourteen, in these additions and

17   clarifications of findings of fact; therefore,

18   according to the tow slip, the search had to occur

19   before the stated basis for the towing.  There had

20   to be a search to find the drugs in the trunk

21   before you could say the car was being towed for a

22   felony drug arrest.

23        Now, turning to the applicable law:

24        At the outset, I think it's important to

25   emphasize that in the law and perhaps more

1    importantly than any other the arena, the end can
2    never justify the means.
3            While on one hand, one might say that the
4    police in this case should be commended because,
5    let's face it, their suspicions were spot on.  The
6    defendant was "a bad guy", he had a drug felony
7    conviction, a weapons felony conviction, and there
8    was gun and drugs in the car he was driving.
9            However, it is of critical importance that the
10   seizure of the gun and drugs comply with the
11   constitutional mandates of the fourth amendment.
12   The touchstone of the fourth amendment is, of
13   course, reasonableness.  In that regard, it is well
14   settled that the warrantless searches and seizures
15   are per say unreasonable subject to some
16   well-defined expectations.  It is also well settled
17   that with respect to the warrantless search, the
18   Government has the burden to prove it's lawfulness
19   by a preponderance of evidence.
20           Here, the Government maintains that the search
21   of the Duragno fit within now only 1 of these
22   well-defined exceptions to the warrant requirement.
23   That is that the Government's sole argument now is
24   that it was a lawful inventory search.
25           Somewhat confusingly, the Government

```
 1              alternatively argues the doctrine of inevitable

 2              discovery, apparently suggesting that even if it is

 3              one remaining basis of the lawfulness of the

 4              warrantless search is rejected by the Court that

 5              the gun and drugs would still have been discovered

 6              in the course of another, but this time, valid

 7              inventory search.

 8                   I am assuming that argument is, in essence,

 9              that even if the reason the car was inventoried was

10              not valid, there was some other valid reason that

11              would justify the inventory search, so the evidence

12              would have been inevitably discovered.

13                   However, in the course of the various

14              arguments, the Government has failed to appreciate

15              and clearly failed to develop there are two aspects

16              of the inventory search:  The impoundment or tow of

17              the vehicle and then the search itself, both of

18              which must pass constitutional muster.

19                   Here, the issue is not the manner in which the

20              purported inventory search was conducted, but

21              rather the reasonableness of the Duragno, of the

22              seizure, that is the impoundment of the Duragno

23              and, of course, on that issue, the Government has

24              the burden of proof.

25                   What has the Government argued?  The
```

Case 22-1478, Document 26, 10/16/2022, 3401187, Page81 of 145

1           Government has argued that the Durango was

2           impounded pursuant to what has been referred to as

3           the community care taking function.  Again, the

4           Government has made that argument, even though the

5           tow slip, Exhibit A, says that the vehicle was

6           impounded for a felony drug arrest, which obviously

7           means, as indicated, the car had to be searched

8           first.

9               That is, the tow is a result of the search;

10          the search was not a result of the tow.

11              Again, to emphasize, a prerequisite to a

12          valid inventory search is a valid impoundment of

13          the vehicle.  Police cannot randomly and

14          indiscriminantly decide which vehicles they are

15          going to impound.

16             The Supreme Court has recognized that

17          inventory searches, as a community caretaking

18          function, are non-investigative, serving a purely

19          administrative function; and, therefore, the

20          warrant requirement and probable cause requirements

21          are inapplicable.

22             In that regard, it is certainly well settled

23          that police may impound vehicles in the interest of

24          public safety and as part of this community

25          caretaking function.  However, and I am reading

1        from U.S. v. Arias, 210 WL 25939335:

2              In the interest of public safety, and as part

3        of what the Supreme Court has called the community

4        caretaking functions, automobiles are frequently

5        taken into custody limiting the sites within the

6        site.  Such impoundments constitute seizures in the

7        meaning of the 4th amendment and constitutionality

8        terms on the reasonableness of the impoundment as

9        an exercise of law enforcement community

10       caretaking.

11           I want to emphasis this language:  Community

12       caretaking functions are totally divorced -- I want

13       to repeat that -- are totally divorced from the

14       detection, investigation or acquisition of evidence

15       relating to the violation of the criminal statute.

16           Well, we go back to the finding of fact for

17       the search of the Durango.  Laureano told Amato

18       that he would be searching the vehicle for evidence

19       as well as incident to tow.

20           We have Mr. Moynihan's post hearing memorandum

21       in which he states several minutes later, law

22       enforcement searches the vehicles because of the

23       defendant's suspended license and the smell of

24       marijuana.

25           On community caretaking function, reading from

1    U.S. v. Goodrich, 183 F Sup. 2d. 135, 139 (2001

2    District of Massachusetts case), siting U.S.

3    v. Rodriquez-Morales, 929 F. 2d 780, 785 (1991

4    First Cir.)

5         Pursuant to their community caretaking

6    function, the police have the authority to impound

7    or tow a car that is endangering the public or is

8    itself endangered.  South Dakota v. Opperman, 428

9    U.S. 364, 383 (1976 S. Ct.), in the interest of

10   public safety, as part of what the Court has called

11   the community caretaking functions, automobiles are

12   frequently taken into police custody.  Vehicle

13   accidents present one such occasion to permit the

14   uninterrupted flow of traffic.

15        Cady vs. Dombrowski, 413 U.S. 433 (1973 2nd

16   Cir.), local police officers unlike Federal

17   Officers frequently investigate vehicle accident in

18   which there is no claim of criminal liability

19   engaged and what for one of a better term may be

20   described as community caretaking function, totally

21   divorced from the detection, investigation or

22   acquisition of evidence relating to the violation

23   of the criminal statute.

24        The question which the Court poses is, is

25   there any view of the evidence and exhibits in this

Case 6:17-cr-06019-CJS-JWF Document 72 Filed 09/20/19 Page 19 of 44
Case 1:06-cv-06543-RW-KS-HKS Document 340 Filed 09/14/20 Page 85 of 35
Case 22-1478, Document 26, 10/16/2022, 3401187, Page85 of 145

```
1        case which can support a conclusion by a
2        preponderance of evidence that the search of the
3        Dodge Duragno was solely pursuant to a community
4        caretaking function in light of Laureano's
5        statement to Amato that were searching the car for
6        evidence and a tow and Mr. Moynihan's statement in
7        his admissions that we are searching it because of
8        the smell of marijuana, albeit that argument has
9        been withdrawn.
10            But the Government has persisted in its
11       position that what happened on May 27, 2016 was a
12       valid inventory search and only relying on
13       inevitable discovery as an alternative argument.
14            In arguing that the search that occurred on
15       May 27th of 2016 was valid, the Government points
16       to what was received into evidence at the hearing
17       before Judge Feldman as Exhibit No. 13, Rochester
18       Police Department General Order 511.
19            The Government has never suggested that what
20       it maintains was a valid inventory search was valid
21       for any other reason than compliance with this
22       general order.  Again, the issue here is really,
23       when I say inventory search, the issue is the
24       impoundment.  But the Government really never
25       called out that specific argument.
```

Case 16:17cr06048-CJS-JWF Document 473:0 Filed 08/26/18 Page 20 of 146
Case 22-1478, Document 26, 10/16/2022, 3401187, Page86 of 145
JA-083

20

```
 1              The question the Court must resolve, despite
 2       the Government's reliance on General Order 511, and
 3       despite the fact that the Government has never made
 4       an argument apart from General Order 511, have we
 5       proven the search reasonable, the Court needs to
 6       address this issue:  Are standardized procedures
 7       required for impoundment?
 8              As the defense pointed out in its latest
 9       submission, it's clear in the Circuit that
10       standardized procedures are required for the
11       inventory search.
12              But, in this Circuit, I am referring to U.S.
13       v. Barrios, 374 F. Appx. 56, the 2nd Circuit didn't
14       address that issue.  It pointed out the split in
15       the Circuits, but never addressed it.
16              So, the Government relies on the specific
17       procedures, and General Order 511  never makes any
18       argument that the inventory search could be
19       justified apart from following those general
20       orders; but the Court in abundance of caution
21       believes it needs to address this issue.
22              In that regard, the Court agrees, and believes
23       the 2nd Circuit would, with the majority of
24       Circuits, that have found standardized procedures
25       for impoundment are required.
```

Case 22-1478, Document 26, 10/16/2022, 3401187, Page87 of 145

1   That's the law in the 8th, 7th, 9th and

2   11th.  The 1st, 3rd, and 5th Circuits disagree.

3   The DC Circuit, while not requiring standardized

4   procedures, has taken this disposition that if you

5   have standardized procedures in place for the

6   search -- excuse me for the impoundment -- to be

7   reasonable, you have to follow those procedures.

8   So, looking to what the Government has relied

9   on, General Order 511 in evidence as Exhibit

10   No. 13, there is a specific section under roman

11   numeral 4, heading B, that says towing vehicles

12   from private property.  Common sense indicates that

13   this portion of General Order 511 offers direction

14   to Rochester Police Officers as to when they can

15   tow from private property.

16   If I misspoke and said the search occurred in

17   March of 2016, it was obviously May of 2016, so I

18   stand corrected.

19   So, let's take a look at that.  First of all,

20   it's undisputed that the Dodge Duragno was on the

21   private property, and it's undisputed that the

22   Dodge Durango was on the defendant's private

23   property.

24   So, the Government points to this towing

25   vehicles from private property section and says,

```
 1          while a valid inventory search, even though te tow
 2          slip said drug felony arrest, even though Laureano
 3          told Amato we are going to search for evidence and
 4          a tow, that this was a constitutionally valid
 5          impoundment because it was done in accordance with
 6          4B2, which reads:
 7               Members will tow a vehicle from private
 8          property for safe keeping when;
 9               A.  The vehicle was left on said private
10          property pursuant to a departmental initiated
11          incident.  The example they give is abandoned
12          during a vehicle chase.
13               Now, as was clear at our last court appearance
14          when the Court questioned the Government, they
15          continued to maintain that this section is
16          applicable, although it's beyond the Court.
17               The Court wonders under what view of the
18          evidence could you argue that the Dodge Duragno was
19          left in the driveway of 42 Kingston Street because
20          of something the police did, because of a
21          departmental initiated incident.  As was clarified
22          by officer DiPoala, before the police did anything
23          by way of initiating a traffic stop, the Durango
24          was parked at the driveway at 42 Kingston Street,
25          and the defendant was exiting.
```

Case 22-1478, Document 26, 10/16/2022, 3401187, Page88 of 145

```
1              So, the Court finds that argument justifying
2         in the first instance, the validity of an inventory
3         search, to be wholly without merit.
4              Then, at least at some point, the Government
5         pointed on to section C of roman numeral 4, vehicle
6         and arrest towing, No. 2;
7              That the operator of a vehicle is charged with
8         aggravated unlicensed operation 1st and any of the
9         following conditions exist:  The vehicle will be
10        towed to the auto pound;
11             D applies, the operator is not the owner and
12        no one else is available who can readily drive the
13        vehicle.
14             Well, No. 1, common sense indicates that no
15        one else available who can legally drive the
16        vehicle must mean something or it wouldn't be in
17        there, and there is certainly no evidence educed at
18        the hearing that said any inquiry was made of the
19        police, such as is anyone home at 42 Kingston
20        Street, is there anybody available to drive it.
21        The Court makes the distinction between available
22        and readily available.
23             But beyond that, there is a section that I
24        have referred to that pertains to private property.
25        What would the community caretaking function
```

1   relating to public safety have to do with towing a

2   vehicle which is parked on private property?  It

3   certainly would make sense if an individual was

4   stopped on the highway and it turned out his

5   license was suspended.  You can't let him drive.

6   You can't let the vehicle sit there.  So, yes, in

7   that circumstance, it would certainly seem that

8   towing comports with the 4th Amendment, but not

9   where the vehicle is parked on the defendant's own

10  property.  It seems not reasonable to say, in the

11  circumstances presented here, that you could tow

12  the vehicle because the defendant was subsequently

13  arrested for aggravated unlicensed operation.

14       Then we have what the defense referred to as

15  the Government's hodgepodge argument.

16       The Court, on a previous occasion, directed

17  the Government's attention to J of this section,

18  talking about rental vehicles, which says the

19  enforcement of the terms of a rental agreement is

20  not a civil matter.  A rental vehicle may not be

21  towed solely for the reason that someone other than

22  the person on the rental agreement is operating the

23  vehicle.

24       Well, the Government is arguing, oh, well, it

25  wasn't just for that reason.  Here's the other

Case 6:17-cr-06019-CJS-MWP Document 72 Filed 09/20/18 Page 25 of 44
Case 1:18-cr-06043-CJS-HKS Document 30 Filed 09/20/18 Page 25 of 35
JA-088

25

Case 22-1478, Document 26, 10/16/2022, 3401187, Page91 of 145

1    reasons.  The defendant was not cooperative.  He

2    resisted.  His license was suspended.  He did it

3    for safe keeping.  The house appeared to be vacant.

4    Although as to the latter, while Laureano testified

5    to that and offered that that information was

6    provided by DiPoala, in her stipulation, she said

7    she doesn't recall ever telling Laureano that.

8    There was certainly no evidence educed at the

9    hearing that anybody made any observations about

10   the interior of the house; and, in any event, what

11   difference does it make?  It was the defendant's --

12   it's undisputed that was the defendant's residence,

13   that he owned it.

14        So, the Court does not find No. 1 that this

15   even applies to this situation because, again,

16   common sense dictates that this applies to

17   situations where a rental vehicle may be stopped on

18   a public road.  You are not going to tow just

19   because the driver is not on the rental agreement

20   because the police don't want to get involved in

21   these civil disputes.  But maybe there is some

22   other reasons:  License suspended, can't let him

23   drive.

24        Now, the prosecution sited in it's last

25   submission cases relating to rental vehicles, but

```
 1          all the cases, or the least the case that the
 2          prosecution sited, pertained to the rental company
 3          saying we want our vehicle.  There is no indication
 4          here that Enterprise ever reported that the vehicle
 5          was stolen, that they needed it back.
 6              It's undisputed, based on the Government's
 7          submission in its papers, as previously referred to
 8          by the Court, that defendant's significant other,
 9          who he referred as his wife, rented the vehicle for
10          him.
11              So, the Court finds and concludes that to the
12          extent that the Government is arguing, General
13          Order 511 justified the -- again, the Government
14          doesn't make the distinction between search and
15          impoundment, but I will say impoundment -- the
16          Court finds it has failed to prove that by a
17          preponderance of evidence, for the reasons
18          discussed.
19              And, again, at the risk of repeating myself, a
20          common sense reading of this section where you have
21          a direction of police officers saying this pertains
22          to private property, the argument that the
23          Government, with respect to that section, states
24          that the car was left there, because of a police
25          related initiated incident, again, has no merit,
```

1    based on the evidence.

2         Okay.  The Government has relied on General

3    Order 511 and has not made any argument, again,

4    that the inventory impoundment/inventory search was

5    reasonable, other than it was based on 511.  But,

6    for argument sake, let's assume this Circuit says,

7    no, you don't need standardized procedures -- I

8    can't imagine they would, but let's say they did --

9    the Court would nonetheless find the Government has

10   failed to prove by a preponderance of evidence that

11   the impoundment was reasonable.

12        We have gone through the facts, the vehicle

13   was parked in the defendant's driveway.  He had the

14   permission of his girlfriend to drive the vehicle

15   because she rented it for him.  It would simply, in

16   the Court's mind, be unreasonable in a situation

17   like that to say that you could impound the vehicle

18   under the community caretaking theory.  I base that

19   on the cases discussed.

20        What does that mean?  Well, it means that the

21   Government's argument that the -- again, I keep

22   saying this -- the Government doesn't distinguish

23   between impoundment and search, but the Court does

24   -- Impoundment is not reasonable.  The Government

25   hasn't shown that it complied with the standardized

```
1        procedure or that if you don't need a standardized
2        procedure, that the impoundment of the vehicle was
3        in anyway reasonable.
4            Well, that still leaves this:
5            That still leaves, I guess, their argument of
6        inevitable discovery.  In that regard the Court
7        refers to the 2nd Circuit case of U.S. v. Mendez,
8        315 F. 3d 132.
9            Here Mendez says -- and Mendez was in the
10       context of an inventory search as the basis for
11       inevitable discovery, although just to go back,
12       it's confusing here, because I guess the Government
13       is arguing that, okay, even if the basis -- the
14       police stated for impounding it was not
15       constitutionally permissible, there existed another
16       constitutionally basis for impounding it --
17           Here's what Mendez says in pertinent parts:
18           Under the inevitable Discovery doctrine,
19       evidence that was allegedly obtained will not be
20       suppressed if the Government can prove that the
21       evidence would have been obtained inevitably, even
22       if there had been no stationary constitutional
23       violation.
24           In these cases, we have held that the
25       Government must prove three things:
```

1.   That the police had legitimate custody of the vehicle or other property being searched, so that an inventory search would have been justified;

2.   That when the police and the police agency in question conducted inventory searches, they did so pursuant to an established or standardized procedures; and,

3.   That those inventory procedures would have inevitably lead to the discovery of the challenged evidence.

Well, we are back to 1.  1 is the ball game. 1, that the police had legitimate custody of the vehicle or other property being searched so that an inventory search would have been justified.

Did the police legitimately impound the vehicle?  Because, again, this is kind of a convoluted argument being made by the Government, and based on what the Court has said, the Court determines they have not proven that they had legitimate custody of the vehicle, that the vehicle was lawfully impounded.

Again, they have said in their tow report that it was impounded because of a drug felony arrest, and the Court has already detailed why it doesn't think the provisions of General Order 511 the

Case 6:17-cr-06019-CJS-JWF Document 72 Filed 09/26/19 Page 30 of 44
Case 1:18-cr-06089-RA-HKS Document 340 Filed 09/24/19 Page 30 of 35
Case 22-1478, Document 26, 10/16/2022, 3401187, Page96 of 145

JA-093

1    Government argued applied, that the Court has also

2    said even if the Circuit believes that standardized

3    procedures are not required for impoundment, and

4    sides with the minority, instead of the majority of

5    Circuits, the Court find that the Government has

6    not proven by a preponderance of evidence that the

7    impoundment, under the facts and circumstances

8    presented here, was reasonable.

9         Accordingly, the Court grants the motion to

10   suppress.

11        Ms. Burger, what I will ask you to do is to

12   prepare an order, settle up with Mr. Moynihan and

13   attach and reference a copy of the Court's

14   decision.

15        Now, this leads to this question, the

16   custodial status -- again, I don't know what the

17   Government intends to do.  You certainly can appeal

18   it.  Mr. Moynihan, I don't know if you have

19   anticipated what the Court might decide.  I don't

20   know if you intend to appeal it.  Obviously, if you

21   do, the case remains.

22        I assume -- I don't think it would -- that the

23   2nd circuit could disagree with me.  If it does,

24   the case remains active.  So, I think the only real

25   issue is the custodial status right now and, in

Case 6:17-cr-06119-CJS-JWF Document 72 Filed 08/28/18 Page 31 of 35
Case 1:18-cr-06119-FPG-HKS Document 23-10 Filed 08/28/18 Page 96 of 135
JA-094

Case 22-1478, Document 26, 10/16/2022, 3401187, Page97 of 145

```
 1        that regard, I am going to calender this for
 2        Wednesday so he can be interviewed by probation,
 3        and they can recommend conditions of release.  The
 4        Government can certainly have exception to the
 5        Court's ruling and the Government can proceed in
 6        any fashion it wants.
 7             MS. BURGER:  What time tomorrow, your Honor?
 8             THE COURT:  Thursday -- where is he being
 9        held?
10             MS. BURGER:  Livingston.  He has not yet been
11        interviewed by pretrial.
12             THE COURT:  If you could arrange pre-trial to
13        interview him at some point.  We can put it on for
14        --
15             MR. MOYNIHAN:  Judge, if we can do this in
16        afternoon...
17             THE COURT:  Sure.  No problem.  How about we
18        put it on at 1:30.
19             MR. MOYNIHAN:  That would be fine, Judge.  If
20        for some reason --
21             THE COURT:  If it changes, we will make
22        adjustments, Mr. Moynihan.
23             MR. MOYNIHAN:  Thank you, Judge.
24             THE COURT:  One addition to the Court's
25        decision, I neglected to site this case, which I
```

```
1    think is a good discussion.  I want to add to the
2    cases U.S v. Sanders.  It's a 2015 10th Circuit
3    case.
4         And, here's the holding in the case.  We hold
5    that impoundment of a vehicle located on private
6    property that is neither obstructing traffic nor
7    creating an imminent threat to public safety is
8    constitutional, only if justified both as a
9    standard policy and a reasonable non-protectoral
10   community caretaking rationale.
11        It goes on to say, ascertaining whether an
12   impoundment is justified by a reasonable an
13   legitimate non-protectoral community caretaking
14   rationale is not an easy task.  We know that Courts
15   have considered the following non-exclusive list of
16   factors:
17        Whether the vehicle was on public or private
18   property; if on private property whether the owner
19   has been consulted; whether an alternative to
20   impoundment exists, especially another person
21   capable of driving the vehicle; whether the vehicle
22   is implicated in a crime; and, whether the
23   vehicle's owner and or driver consents to the
24   impoundment.
25        I went through those factors, and I want to
```

Case 6:17-cr-06019-CJS-JWF Document 72 Filed 08/26/19 Page 38 of 44
Case 1:18-cv-06019-CJS-HKS Document 24-10 Filed 08/01/18 Page 99 of 35
JA-096

Case 22-1478, Document 26, 10/16/2022, 3401187, Page99 of 145

33

```
 1        add to the decision, I think it's a very well
 2        reasoned case.
 3             If I went through those understandably
 4        non-exclusive list of factors, the vehicle was on
 5        private property, the defendant's residence, if on
 6        private property, whether the property owner has
 7        been consulted...
 8             Well, it's the defendant's.  He is not going
 9        to object, obviously, to the car being on his
10        property.
11             3.  Whether an alternative to impound exists,
12        especially another person capable of driving the
13        vehicle.  Well, there is no point in driving it.
14        As I have made in numerous court appearances, where
15        are you going to take the vehicle?  It's on his
16        property.
17             And, 4, whether the vehicle is implicated in a
18        crime...
19             Well, it's not implicated in a crime.  The
20        vehicle was involved in the most minor traffic
21        infraction, failing to signal left 100 feet before
22        making the turn.
23             And, 5, whether the vehicle's owner and or
24        driver have consented to the impoundment...
25             Well, the defendant didn't consent.  Who is
```

Case 6:17-cr-06011-CJS-JWF Document 73-20 Filed 09/26/18 Page 36 of 45
Case 1:18-cr-06011-CJS-JWF Document 73-20 Filed 09/26/18 Page 36 of 45
Case 22-1478, Document 26, 10/16/2022, 3401187, Page100 of 145

34

```
 1          the owner of the vehicle?  Well, the bailee,

 2          although, according to the Government's response in

 3          its moving papers, it's only a 30-day rental, but

 4          the rental company wasn't consulted.  Ms. Misery

 5          wasn't consulted.

 6                So, taking those factors, which I think are to

 7          the point in determining whether or not the

 8          impoundment in this case comported with

 9          constitutional requirements, assuming standardized

10          procedure is necessary; or even assuming it wasn't,

11          the Court finds that they certainly point to the

12          inability of the Government to prove, under the

13          facts and circumstances of this case, by a

14          preponderance of evidence that the impoundment was

15          reasonable.

16                So, I want to add that to the decision.

17          Again, Ms. Burger, if you could settle an order

18          with Mr. Moynihan and attach the transcript, thank

19          you.

20                MR. MOYNIHAN:  Thank you, Judge.

21                THE CLERK:  The date of the search was May

22          27, 2016.

23                (Proceedings adjourned.)

24

25
```

Case 6:17-cr-06019-CJS-JWF Document 72 Filed 09/26/18 Page 35 of 44
Case 1:18-cr-06019-CJS-HKS Document 24-10 Filed 04/13/20 Page 3 of 35
JA-098
Case 22-1478, Document 26, 10/16/2022, 3401187, Page101 of 145

REPORTER CERTIFICATION


I, NICOLE E. PHILLIPS, being a Court Reporter in the County of Genesee, State of New York, do hereby certify that I reported in stenotype machine shorthand, *CaseCatalyst* software the proceedings held in the above-entitled matter;

That on September 18, 2018, before THE HONORABLE JUDGE CHARLES J. SIRAGUSA, I reported in machine shorthand the proceeding had in the United States Federal Court, in the matter of THE UNITED STATES OF AMERICA v. **BRIAN D. BROOKINS**, Defendant;

Further, that the foregoing transcript numbered pages 1 - 34 is a true and accurate transcription of my said stenographic notes taken at the time and place hereinbefore set forth.

I further certify that I am neither attorney or counsel for any of the parties, nor a relative or employee of any attorney or counsel connected with the action, nor financially interested in the outcome of the action.


_____

Nicole E. Phillips

Dated at Livonia, New York

this 25th day of September, 2018.