```
 1   STATE OF NEW YORK        COUNTY OF MONROE

 2   SUPREME COURT           CRIMINAL TERM

 3   -----------------------------------------X

 4   THE PEOPLE OF THE STATE OF NEW YORK    :  Indictment No.
                                                  2016-0154
 5      -vs-                                :

 6   DARIUS D. HOWARD,                      :  CRIM POSS NARCO
                                               AGG UNLIC OP
 7                          Defendant.      :  Hearing, cont'd

 8   -----------------------------------------X

 9                              Hall of Justice
                                Rochester, New York 14614
10                              August 11, 2016

11

12   B e f o r e :

13           HON. ALEX R. RENZI

14                         Supreme Court Justice

15

16   A p p e a r a n c e s :

17           SANDRA DOORLEY, ESQ.
                  District Attorney, Monroe County
18           By:  DARREN PILATO, ESQ.
                  Assistant District Attorney
19
             TIMOTHY DONAHER, ESQ.
20                Public Defender, Monroe County
             By:  STEPHANIE STARE, ESQ.
21                Attorney for the Defendant

22           Defendant Present

23
                              Reported By:
24                            Marcella M. Schreiber, CSR
                              Official Court Reporter
25
```

HOWARD-000222

2

1                              <u>WITNESSES</u>

2   <u>FOR THE PEOPLE</u>                                    <u>PAGE</u>

3   <u>OFFICER JOHN LAUREANO</u>

4        Direct Examination By Mr. Pilato              4

5        Cross-Examination By Ms. Stare              13

6        Redirect Examination By Mr. Pilato         18

7

8                              <u>EXHIBITS</u>

9                                              <u>ID   EVD</u>

10  <u>PEOPLE'S</u>

11       1 - Tow Report                          6

12       2 - Property Custody Report            11

13

14  <u>DEFENDANT'S</u>

15       A - General Order 511                  15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  This is the matter of the People of

2     the State of New York versus Darius Howard.  Ms. Stare

3     is here on behalf of Mr. Howard and Mr. Pilato on

4     behalf of the People.

5          We had a hearing back on August 2nd.  The

6     hearing concluded, I heard arguments from counsel.  And

7     it was clear that the People, who had the burden of

8     proof in regards to the inventory search, didn't

9     address the issue during the hearing.  And over the

10    objection, strenuous objection, from Ms. Stare, the

11    Court is allowing the People to reopen the hearing.  I

12    don't see any prejudice.

13         Anything else that anybody wishes to say?

14         MS. STARE:  Judge, I would just -- all of our

15    submissions prior to this were just by e-mail, so I

16    can --

17         THE COURT:  Preserve the record.

18         MS. STARE:  Yes, please.  I would just argue

19    the People were not at all surprised in any way by this

20    being an inventory search.  It was established through

21    their witness.  They should have been prepared to

22    sustain their burden and, in fact, stated it wasn't

23    their burden and chose not to present the correct

24    evidence.  They were then given case law by myself

25    showing that it is their burden and, therefore, being

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1    given a second bite at the apple after basically having

2    been spoon fed the information that they need, that

3    they did not realize that they needed before.  And it

4    is our position that allowing the reopening of this

5    hearing would be a discretion that we would strenuously

6    object.

7            THE COURT:  What I'll ask you to do, Ms. Stare,

8    is when the People conclude today, grab all the e-mails

9    that were sent in regards to this, and we'll staple

10   them together and make them a court exhibit for appeal

11   preservation.

12           MS. STARE:  Thank you.

13           THE COURT:  Call your witness.

14           MR. PILATO:  Good people Officer John Laureano.

15   OFFICER JOHN LAUREANO, called herein as a

16   witness, previously having been duly sworn, testified as

17   follows:

18           THE COURT:  Officer, you don't need to be

19    sworn.  You were already sworn in on this case.  I'd

20    just remind you you're still under oath.

21           THE WITNESS:  Yes, Judge.

22   DIRECT EXAMINATION BY MR. PILATO:

23    Q.    Officer, I'm going to redirect your attention back

24   to the date of September 21st, 2015, at around 9:15 in the

25   evening.  You testified about an arrest you made that day.

HOWARD-000225

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1    Do you recall that arrest?

2        A.    Yes.

3        Q.    And do you recall at a certain point why you --

4    what the individual was arrested for?

5        A.    Yes, I do.

6        Q.    What was the charge?

7        A.    For a felony traffic and for criminal possession of

8    controlled substance.

9        Q.    In regard to the felony traffic charge, do you

10   remember the specific charge you arrested him for?

11       A.    Yes, I do.

12       Q.    What was that charge?

13       A.    For Aggravated Unlicensed Operator 1st Degree.

14       Q.    Okay.  And through the New York State Penal Law and

15   your General Orders, is there any specific requirement you're

16   supposed to do when someone is arrested for the charge of

17   aggravated unlicensed operation of a motor vehicle?

18       A.    Yes.

19       Q.    Now, Officer, did you determine if Mr. Howard was

20   the registered owner of the vehicle?

21       A.    Yes, I was able to determine it.

22       Q.    Was he the registered owner of the vehicle?

23       A.    No, he was not.

24       Q.    And at that time, was there anyone else present to

25   take the car away?

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1    A.    No.

2    Q.    So based on that set of circumstances, what were

3  you required to do through your General Orders?

4    A.    Tow the vehicle.

5    Q.    And what section of your General Orders dictates

6  what your responsibilities are with towing vehicles?

7    A.    It's Section 511.

8    Q.    Now, Officer, once you made the decision to tow the

9  vehicle pursuant to the orders, what did you have to do

10  before the vehicle could be towed away?

11    A.    It's normal that we conduct an inventory search.

12    Q.    And, Officer, what's the purpose of the inventory

13  search?

14    A.    To take -- we have to take any property that's of

15  value, such as legal documents, electronic devices, or

16  anything that might be of evidentiary value.

17    Q.    All right.  And what document -- does RPD use any

18  particular document in order to catalogue what happens during

19  that inventory search?

20    A.    Yes.

21    Q.    What document is that?

22    A.    It's called a tow report.

23        (People's Exhibit 1 marked for identification.)

24    Q.    Officer, I'm showing you what's been marked as

25  People's Exhibit 1.  Officer, could you state what People's

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1  Exhibit 1 is?

2      A.    It's a copy of the tow report.

3      Q.    For this particular arrest of Mr. Howard?

4      A.    Yes.

5      Q.    Okay.  And, Officer, does RPD create a tow report

6  on every case where a car is towed?

7      A.    No.

8      Q.    What are the circumstances in which they produce a

9  tow report?

10     A.    Well, I guess, can you be more specific?  I don't

11  understand that.

12     Q.    As an officer of RPD, when are you required to fill

13  out a tow report?

14     A.    Oh, every time we tow a vehicle.

15     Q.    And the form that you have in your hand, People's

16  Exhibit 1, Officer, could you explain how RPD maintains

17  People's Exhibit 1?

18     A.    How we maintain it and how do we fill it out?

19     Q.    Well, where do you get the documents from

20  originally?

21     A.    It's at our section office.

22     Q.    And then once you fill it out, how do you -- what

23  do you do with the document then?

24     A.    We submit it to our supervisor, the original, and

25  then we make a copy if it's for a case involving any type of

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1  physical arrest.

2      Q.    And does the tow report, does RPD maintain them in

3  all the -- when they are prepared, do they maintain one

4  specifically with the case and then have another copy that's

5  kept with all the other tow reports?

6      A.    Correct.  We rip off a copy.  It's a three-ply

7  report.  We rip off one copy, in which we submit that copy

8  for review when it's completed to a supervisor.  And like I

9  said, if it's related to a physical arrest and an

10  investigation, we usually make a copy of that to attach with

11  all the paperwork.

12      Q.    And is the information on the tow report written as

13  you guys are doing the search?

14      A.    No.  It can be written before, during, or after.

15  There's no specific time where it's supposed to be written.

16      Q.    Is it around the same time, though, as the search?

17      A.    Correct, during the course of, yes.

18      Q.    And do you recall who conducted the search on

19  Mr. Howard's car?

20      A.    Yes.

21      Q.    All right.  Who did the search?

22      A.    Myself and Officer Jennifer Mercato.

23      Q.    And, Officer, if you could just describe what

24  happened during the search.

25      A.    I searched the driver's portion of the vehicle, the

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1    front and rear seat.  Officer Mercato searched the passenger

2    side of the vehicle, that front and rear portion of the

3    vehicle.  I believe that Officer Mercato also searched the

4    trunk area.  I don't recall particularly going through that

5    area.

6        Q.    But those areas were searched?

7        A.    The entire vehicle was searched, yes.

8        Q.    And then, if you could, do you document anything as

9    you're conducting the search of the vehicle on People's

10   Exhibit 1?

11       A.    Normally, yes.  Anything that's taken from the

12   vehicle is usually supposed to be documented in the narrative

13   portion.

14       Q.    Are you required to examine the condition of the

15   vehicle as well?

16       A.    Yes.

17       Q.    And, again, what's the purpose for doing an

18   assessment of the vehicle's condition?

19       A.    For the purpose of the tow report.

20       Q.    Now, Officer, while you conducted the search, do

21   you recall anything of value being found in the vehicle?

22       A.    Yes.

23       Q.    What do you recall being found?

24       A.    Some property belonging to the defendant, a cell

25   phone, I believe maybe a wallet.  I don't know if he had it

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1   on him or if it was in the vehicle.  And just the other items

2   I found, the contraband, that was seized as evidence.

3       Q.    Now, Officer, typically, what would happen to those

4   items that were found of value during an inventory search?

5       A.    They would be documented in the narrative portion

6   once removed.

7       Q.    Did you document finding anything of value in any

8   of your reports for this case?

9       A.    Yes.

10      Q.    You testified you found the defendant's phone?

11      A.    Yes, sir.

12      Q.    All right.  And what did you do with his phone?

13      A.    I had it with the rest of his property, which was

14  in my vehicle.

15      Q.    All right.  And did that property go to the RPD

16  pound, or did it go to booking with the defendant?

17      A.    I would have to look at my property custody report

18  to be certain.

19          THE COURT:  While he's looking for that, did

20      Officer Mercato or you find anything in addition to the

21      cell phone or maybe a wallet?

22          THE WITNESS:  Not that I can recall, Judge.

23          THE COURT:  Nothing else of value?

24          THE WITNESS:  Not that I can recall, Judge, no.

25          THE COURT:  What's it say on the tow report?

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1          THE WITNESS:  I did not complete this report.

2      And in the narrative portion, it's empty here.

3          THE COURT:  Okay.

4      (People's Exhibit 2 marked for identification.)

5    Q.    Officer, I'm showing you what's been marked as

6  People's Exhibit 2.  Could you state what Exhibit 2 is?

7    A.    This is a property custody report.

8    Q.    What was that property custody report filled out

9  for?

10   A.    This is for that same vehicle and traffic stop, but

11  is there an additional one?

12   Q.    People's Exhibit 2 is a two-page document.  I'll

13  show you the second page.  And for People's Exhibit 2, what

14  is People's Exhibit 2?

15   A.    It's a property custody report from the traffic

16  stop.

17   Q.    And why were two separate property custody reports

18  filled out?

19   A.    One was for the drugs and the paraphernalia.  The

20  second was for the US currency of money that we recovered.

21   Q.    And where was the money recovered?

22   A.    From the defendant.

23   Q.    On his person specifically?

24   A.    Yes, sir.

25   Q.    All right.  And was there a reason why one -- two

HOWARD-000232

OFFICER JOHN LAUREANO - DX BY MR. PILATO

1  separate property forms were filled out?

2      A.    No.   I guess it's personal preference.  Most of the

3  time, it's usually on one.  I believe I did the second one

4  because my partner had started the first, so just to cut down

5  on time.

6              THE COURT:  Where is the phone?

7              THE WITNESS:  I believe the phone went to the

8      defendant.

9              THE COURT:  You just gave it back to him?

10             THE WITNESS:  Yes, sir.

11     Q.    Officer, when you found the phone, you testified

12  you gave it back to the defendant?

13     A.    It's not here, so yes.

14     Q.    And then based on that, would the phone have gone

15  into a property holding room from the car impound lot or to

16  booking at that point, from your training and experience?

17     A.    With the vehicle?

18     Q.    The cell phone that was found.

19     A.    Oh, the cell phone, if I'm not seizing it, it's

20  normal to just return it to the individual with whatever

21  belongings they have on them that will go with them into the

22  booking and processing area.

23             MR. PILATO:  Thank you, Your Honor.  Nothing

24      further.

25             THE COURT:  Ms. Stare.

OFFICER JOHN LAUREANO - CX BY MS. STARE

1  CROSS-EXAMINATION BY MS. STARE:

2      Q.    So the only things listed on the property custody

3  report are things that you were seizing for evidence, right?

4      A.    Yes.

5      Q.    Isn't it true that your General Orders state,

6  whether or not of evidentiary value, all property is to be

7  noted on the property clerk's report?

8      A.    If I'm turning it in for safekeeping.

9      Q.    That's not what I'm asking you.  You're familiar

10  with the General Orders, correct?

11      A.    I am.

12      Q.    Okay.  Isn't it true that all property discovered

13  and secured, whether of evidentiary value or not, will be

14  noted in the property clerk's report?

15      A.    That is when we are taking it for safekeeping.

16  That's not if we return it to the person.

17      Q.    Okay.  What are the purposes of an inventory

18  search?

19      A.    It's normal procedure when conducting an inventory

20  search to -- for legal documents, anything of value, whether

21  it's -- just so that way, it doesn't get stolen at the

22  impound lot.  So laptops, tablets, things that are expensive

23  that can be removed and be put into safekeeping, it is normal

24  to take those things out.

25      Q.    So it's to document the whereabouts of things that

HOWARD-000234

OFFICER JOHN LAUREANO - CX BY MS. STARE

1    you find in the car so that there's no claims in the future

2    of lost or stolen items, right?

3        A.    Yes, ma'am.

4        Q.    But you didn't put anything in here about the cell

5    phone or the wallet, in any of the property custody reports?

6        A.    That information would be documented -- if removed,

7    it should be documented on the tow report.  If kept in the

8    Property Clerk's Office for safekeeping or for evidentiary

9    purposes, it will be documented on a property custody report.

10       Q.    And it's not in this case, right?

11       A.    No, because I did not submit it for safekeeping,

12   nor did I seize it as evidence.  I returned it to the

13   defendant.

14       Q.    You also didn't seize the car as evidence, but you

15   still filled out a tow report, right?

16       A.    Correct.

17       Q.    Now, you testified that you gave it back to

18   Mr. Howard, but we don't know that, right?  Because it's not

19   documented anywhere, right?

20       A.    I didn't take his cell phone, if that's what you're

21   trying to say.

22       Q.    I'm asking you if it is documented anywhere, other

23   than in your testimony, that you found a cell phone in that

24   car?

25       A.    If it's not in the report, my actual narrative of

OFFICER JOHN LAUREANO - CX BY MS. STARE

1   the crime report, if that's what you're referring to, then

2   no.

3        Q.    You also testified that according to General Order

4   511, you have to tow the car, right?

5        A.    Yes, ma'am.

6        Q.    And why is that?

7        A.    Due to the status of the -- due to the felony

8   status of his license -- or client I.D. number on his I.D.,

9   because he does not have a license, for AUO 1st and 2nd, we

10  tow the vehicles.

11       Q.    Okay.  But isn't it true that 511 says, In

12  situations incidental to arrest, vehicles will only be towed

13  if they are illegally parked, blocking, hazardous, or

14  safekeeping, or when required by law?

15       A.    Or when it's an AUO statute.

16       Q.    Can you tell me where in 511 that is?

17       A.    It's in 511.  I cannot tell you the exact specific.

18  I believe it might be D, the D section.  If you have a copy

19  of it there, I could flip to it for you.

20       (Defendant's Exhibit A marked for identification.)

21       Q.    Showing you what's been marked as Defendant's

22  Exhibit A for identification, do you recognize what that is?

23       A.    Yes, ma'am.

24       Q.    What is that?

25       A.    This is a copy of our General Orders, 511.

HOWARD-000236

OFFICER JOHN LAUREANO - CX BY MS. STARE

1    Q.    Okay.  And I'll give you a minute to review that,

2    and I'll reask my previous question.

3    A.    Okay.  So it's going to be here under C, for

4    traffic towing, traffic arrest and towing.  Under that, it's

5    paragraph 2.  "If the operator of a vehicle is charged with

6    Aggravated Unlicensed Operation 1 or 2 and any of the

7    following conditions exist, the vehicle will be towed to the

8    auto pound and entered as impounded."

9    Q.    The conditions that you just noted, when the

10   operator is charged with an AUO 1st or 2nd, you testified it

11   says, if any of the following conditions exist, then it will

12   be towed, correct?

13   A.    Yes.  I did read it that way, yes.

14   Q.    Okay.  The first condition is that the operator is

15   the registered owner, and that's not present here, right?

16   A.    Correct.

17   Q.    Second condition is that the vehicle is not

18   properly registered, but the vehicle was property registered,

19   right?

20   A.    Yes.

21   Q.    No valid proof of insurance, but there was valid

22   proof of insurance, right?

23   A.    None that he provided, but the vehicle was insured.

24   Q.    Okay.  And the last one is the operator is not the

25   owner, and no one else is available who can legally drive the

OFFICER JOHN LAUREANO - CX BY MS. STARE

1  vehicle, correct?

2      A.    Yes, ma'am.

3      Q.    And, again, noting back to your previous testimony

4  a couple weeks ago, you never tried to notify or contact the

5  registered owner, right?

6      A.    No, I did not.  And at that point, I did not need

7  to.

8      Q.    And the car was legally parked at the time you

9  searched it?

10     A.    Yes, it was.

11     Q.    Now, you said you and Officer Mercato did the

12  search together, right?

13     A.    Yes.

14     Q.    So who searched the trunk?

15     A.    I believe Officer Mercato did.  I do not recall

16  going through the trunk.

17     Q.    Who searched the glove compartment?

18     A.    If it was the passenger side glove compartment, it

19  would have been Officer Mercato.

20     Q.    So you don't know?

21     A.    I was on the driver side, and I know she was on the

22  passenger side.

23     Q.    Who searched the engine compartment?

24     A.    I did.

25     Q.    What other areas were searched?

OFFICER JOHN LAUREANO - RDX BY MR. PILATO

1    A.    Just the interior, exterior of the vehicle, the

2  wheel wells, underneath the vehicle.

3    Q.    And how long would you say all of that took you?

4    A.    All together, maybe 10 minutes.

5    Q.    Did you call for the tow truck before or after you

6  performed that search?

7    A.    I believe it was after.

8    Q.    Okay.  On the property tow report, box No. 17

9  indicates "property removed," right?  It's a standardized

10 form.

11   A.    Oh, the checked box, yes.

12   Q.    And in this case, you checked no?

13   A.    I did not check no.  I did not complete this

14 property report.  Officer Mercato completed it.

15   Q.    But property was removed by you, correct?

16   A.    Correct.

17   Q.    And that is the cellphone that is not documented

18 anywhere, correct?

19   A.    Correct, except for the narrative.

20         MS. STARE:  Nothing further.

21         THE COURT:  Any Redirect?

22 REDIRECT EXAMINATION BY MR. PILATO:

23   Q.    Did you document anywhere, Officer, that the phone

24 was removed?

25   A.    Yes, in the crime report.

HOWARD-000239

OFFICER JOHN LAUREANO - RDX BY MR. PILATO

1    Q.    And do you recall, did you actually wait for

2    someone else -- do you recall waiting at the end of this

3    investigation at the scene for someone else to arrive?

4    A.    We waited for a short time.  We did not make

5    attempts to contact that individual, though.

6    Q.    What information was given to you by the defendant

7    that made you decide to wait for a short period of time?

8    A.    The defendant claimed that his girlfriend had been

9    at the Goodman Plaza, I believe, shopping and that she should

10   be returning shortly.

11   Q.    And so is that why you chose to wait?

12   A.    Well, that, and for the other reason of him knowing

13   the individual that was in the driveway that we initially

14   pulled into.

15   Q.    Okay.  And then at that point -- how long would you

16   say that wait was?

17   A.    The total time we were -- from the time we began

18   the stop until the time we left the scene was approximately

19   45 minutes to an hour.

20                MR. PILATO:  Thank you.  Nothing further.

21                THE COURT:  Anything on that, Ms. Stare?

22                MS. STARE:  No, Your Honor.

23                THE COURT:  Is anybody offering the General

24        Orders?

25                MR. PILATO:  I mean, I can offer it as proof.

1    I think he testified as to the major parts.

2         THE COURT:  Well, he read from a document not

3    in evidence, too, but he did that under Ms. Stare's

4    questioning.  And it sounds like she's referring to

5    another part.

6         MS. STARE:  I'm not offering it.  I was

7    refreshing his recollection.

8         THE COURT:  Okay.  Thank you very much.

9         THE WITNESS:  Thank you, Judge.

10        THE COURT:  I forgot to ask.  Any other

11   questions, Ms. Stare?

12        MS. STARE:  No.

13        THE COURT:  Okay.  Counsel approach, please.

14   (An off-the-record discussion was held at the bench.)

15        THE COURT:  Ms. Stare, do you wish to be heard

16   in argument?

17        MS. STARE:  Yes, please.  The Court is already

18   in receipt of the three cases that the defense is

19   relying on, primarily *People vs. Gomez* that states the

20   hallmark of an inventory search is a meaningful

21   inventory list, which that case distinguishes from a

22   mere evidence log.  All we have here is an incomplete

23   property custody report, which is a property custody

24   report listing things of evidentiary value, not a log

25   of what was found in the car.

HOWARD-000241

1       The case law, *People vs. Gomez, People vs.*
2  *Galak,* are both very clear that the purpose of an
3  inventory search cannot be to rummage around looking
4  for things of evidentiary value.  There was a lot of
5  testimony, both on the prior date and today, about the
6  cell phone that was allegedly found in the car.  It's
7  not insignificant that that was never inventoried,
8  never listed anywhere, not mentioned anywhere except
9  for the narrative.

10      The tow report goes on to indicate that no
11 property was removed whatsoever.  *People vs. Galak*
12 states that an inventory search must create a usable
13 inventory.  And with the cell phone and the wallet
14 missing from any lists that were given, it's hard to
15 imagine that can be deemed a usable inventory.
16 Establishing a standardized procedure is only the first
17 step.  It still must also be a constitutionally
18 reasonable search.

19      And I would point to *People vs. Johnson* where
20 the Court found that it was less than a believable
21 claim that it was an inventory search and appears to
22 merely be a pretext to cover for what the officer's
23 desire was in the first place to see what the defendant
24 was up to and somehow get into the interior of the car.
25 Cell phones are obviously of value.  The purpose of an

HOWARD-000242

1    inventory search is to inventory things of value found

2    in the car.  And it's completely missing from any

3    reports.  I think it's clear this was a pretextual

4    reason to get into the car.  There was no reason to

5    search the car.  And it's clear that it wasn't an

6    inventory search, as no inventory was taken, no

7    meaningful inventory, as required by the case law.

8            THE COURT:  Mr. Pilato?

9            MR. PILATO:  Your Honor, Officer Laureano

10   testified the basis to tow the car was through General

11   Orders for an individual who had been arrested for

12   Aggravated Unlicensed Operation of a Motor Vehicle in

13   the 1st Degree.  He was not the registered owner of the

14   vehicle, and the owner of the vehicle was not there to

15   give possession of the car to.  So it's appropriate for

16   him to tow the car.

17           Then in regard to it being towed, through his

18   General Orders, he was -- testified about how it was

19   then appropriate for him to do an inventory search.  He

20   testified about how him and Officer Mercato did the

21   inventory search.  He indicated through his narrative

22   that he found a phone, does not recall anything else of

23   value being found.  And I think, Your Honor, the fact

24   that he documents it in his narrative is substantial,

25   because no case law says that an inventory list must be

1    a specific item list.  It just needs to be documented,

2    which in this particular case Officer Laureano did

3    document the phone being taken.

4        I think the big issue here is that Officer

5    Laureano, giving the phone back to the defendant,

6    allowed it to go to booking with him with the rest of

7    his personal affects, as opposed to taking it to the

8    impound lot and having it be stored there, where I

9    don't think it would have suited its purpose.  I think

10   it belonged in booking with the defendant and his

11   personal affects.

12       So based on the fact that he does document the

13   only property of value that he recalls finding in

14   there, the cell phone in his addendum report, I believe

15   everything else he's complied with.

16       The only argument, Your Honor, that I think

17   could be argued is that the tow report, he testified,

18   does not indicate property was removed.  And he clearly

19   explained that on the record, as to the fact that it

20   wasn't removed for the purpose of evidence and it

21   wasn't removed for the purpose of being stored in the

22   car tow facility.  Again, it was given back to the

23   defendant in his possession.  So I believe at the bare

24   minimum, Your Honor, the General Orders were

25   substantially complied with and that any deviation

HOWARD-000244

1    would be insignificant.

2            THE COURT:  The Court makes the following

3    conclusions:  That Officer Laureano, upon determining

4    that the defendant's license had been suspended,

5    arrested him for Aggravated Unlicensed Operation in the

6    1st Degree.  And pursuant to the General Order Section

7    511(C)(2), which Officer Laureano read in court here,

8    that whenever there's an arrest for AUO 1st or 2nd,

9    that the vehicle must be towed, he then conducted a

10   search, along with Officer Mercato.

11           Officer Mercato searched the passenger side,

12   front and back and, in all likelihood, the glove

13   compartment.  From what Officer Laureano remembers, she

14   checked the trunk area.  Officer Laureano checked the

15   driver's side, front and back.  And when he searched

16   the driver's front side, he found the defendant's cell

17   phone and alleged contraband underneath that cell phone

18   near the cup holder.

19           He said when he was conducting the search of

20   the vehicle pursuant to a tow, he was looking for legal

21   documents, electric devices, or anything of value.  The

22   tow report that was completed in this matter was filled

23   out by Officer Mercato.  That tow report indicates that

24   no evidence was taken from the vehicle.

25           Officer Laureano's recollection of what was

1    recovered was a cell phone inside the vehicle and

2    possibly a wallet.  He doesn't really recall whether

3    the wallet was on the defendant or in the vehicle.

4          There was testimony from Officer Laureano at

5    the beginning of the hearing that when he found the

6    alleged contraband and the phone, he went back to the

7    car and told the defendant it was going to be towed.

8    The defendant asked for his phone, which Officer

9    Laureano said he had already removed from the car.

10   That cell phone was never documented in property and

11   custody reports or on the tow report, as Officer

12   Laureano believes that he just gave the phone back to

13   the defendant to take along with him to booking.  What

14   happened to the wallet is unclear to this Court, but it

15   was not documented in the property custody report or on

16   the tow report.

17         The Court finds that the search conducted by

18   Officer Laureano was a valid inventory search, and the

19   Court is going to deny the suppression in defense

20   counsel's motion.  Your exception is noted for the

21   record.

22         I don't recall if I ruled on my finding of fact

23   on the statement.

24         MS. STARE:  You did, Judge.

25         THE COURT:  I thought so, but I wasn't sure.

1           Now, Mr. Howard, I got a phone call -- strike

2    that.  Mr. Shulman came in to my chambers and said that

3    he may be retained and was asking if there was a

4    possibility of any type of adjournment if he was

5    retained.  I told him no adjournment.  He said he was

6    prepared to go to trial on Monday, if you retained him.

7    Have you retained him yet?

8           THE DEFENDANT:  No, I have not.  That must be

9    my mother's lawyer.  I was unaware of that, I guess.

10   It's a surprise.

11          THE COURT:  You didn't know about that?

12          THE DEFENDANT:  No.

13          THE COURT:  Apparently she's going to retain

14   Mr. Shulman possibly today or tomorrow or maybe over

15   the weekend.  Because Mr. Shulman said he would be

16   ready to go to trial on Monday, because I said no

17   adjournments, so talk to your mom about that.  But for

18   right now, Ms. Stare is your attorney.

19          THE DEFENDANT:  I love Ms. Stare.

20          THE COURT:  We'll see you on Monday.

21          My records indicate I did not give Parker

22   warnings.  Mr. Howard, one last thing, Monday is the

23   trial.  You need to be here at 9:30 appropriately

24   dressed, just like what you're wearing today.

25          THE DEFENDANT:  I bought a tie today.  I didn't

HOWARD-000247

1    get a chance to put it on.  I tried.

2              THE COURT:  However you're dressed, don't come

3    in a T-shirt or shorts or anything like that.

4              THE DEFENDANT:  No.

5              THE COURT:  If Monday morning comes along and

6    you're not here and we don't have a reasonable excuse

7    why you're not here -- a reasonable excuse could be

8    you're in the hospital --

9              THE DEFENDANT:  I'll be here.

10              THE COURT:  -- that's a good excuse, but be

11    here, because if there's no reasonable excuse -- I

12    think you posted bail, right?  That would be forfeited,

13    a warrant would go out for your arrest, but the trial

14    would proceed in your absence.  Do you understand that?

15    I'm sure you'll be here.  You've made every other

16    appearance.

17              THE WITNESS:  Definitely.

18              THE COURT:  See you then.

19              MR. PILATO:  Thank you, Your Honor.  People are

20    ready.

21    (Certified to be a true and accurate transcript.)

22

23

24              Marcella M. Schreiber, CSR
              Official Court Reporter
25              Dated: 09/12/2016