STATE OF NEW YORK
SUPREME COURT          COUNTY OF MONROE

---

THE PEOPLE OF THE STATE OF NEW YORK,

-vs-

DEVIN JOHNSON,

Defendant.

Ind. #: 2020/0070

---

APPEARANCES:

| For the People: | For Defendant: |
|---|---|
| Gregory Clark, Esq. | Mark A. Young, Esq. |
| Assistant District Attorney | 45 Exchange Boulevard |
| SANDRA DOORLEY, ESQ. | Times Square Building, Suite 802 |
| Monroe County District Attorney | Rochester, NY 14614 |
| 47 S. Fitzhugh Street | |
| Rochester, New York 14614 | |

## DECISION AND ORDER

**Schiano, Jr., J.**

Defendant, Devin Johnson, is charged by the above-referenced Indictment with Criminal Possession of a Weapon in the Second Degree, in violation of Section 265.03(3) of the Penal Law of the State of New York; and, Criminal Possession of a Weapon in the Third Degree, in violation of Section 265.02(3). Defendant moved the Court to suppress the handgun found asserting there was no probable cause for his seizure by police and the court granted a probable cause hearing, which was held on August 25, 2020. Officers Jonathan Laureano and Thomas Lisle of the Rochester Police Department ("RPD") testified on behalf of the People. Defendant did not call any witnesses.

-2-

For the reasons set forth below, defendant's motion to suppress tangible evidence is granted.

## Findings of Fact

On August 24, 2019, at approximately 9:46 p.m., Officer Laureano responded to a general radio call from Officer Perelli asking any units in the area to check a gas station parking lot at Clifford Avenue and Portland Avenue for a "suspicious" Black Audi SUV. Officer Laureano spotted the SUV in the parking lot and followed it as it proceeded east on Clifford Avenue and then turned south on to Miller Street.

Officer Laureano testified that he intended to pull the black Audi SUV over and identify the driver if he observed a traffic infraction to provide probable cause. Officer Laureano further testified on direct examination that as he followed the SUV on Miller Street "the vehicle pulled over to the side of the curb, and it didn't activate its signal before pulling to the side of the curb. At that time I did activate my emergency equipment and perform a traffic stop" (Hearing Transcript, August 25, 2020, p. 6, lns. 21-24). Further, Officer Laureano was asked on direct.

> **ADA Clark**: And you said there came a time when you saw the vehicle park at the curb without signaling; is that correct?
>
> **Officer Laureano**: Yes.
>
> **ADA Clark**: And then what happened after you observed the vehicle go to the curb without signaling?
>
> **Officer Laureano**: I activate[d] my emergency equipment to perform a traffic stop.

(Hearing Transcript, August 25, 2020, p. 7, lns. 9-15).

-3-

While the defendant did not call any witnesses at the hearing, Counsel placed into evidence, without objection, RPD Blue Light Camera footage for the camera located at Clifford Avenue and Miller Street as Defendant's Exhibit A.  The Court reviewed the video footage which depicts defendant's black Audi SUV turn onto Miller Street followed by Officer Laureano's police car.  It further shows Officer Laureano conduct the traffic stop by activating his emergency lights.   More specific findings of fact regarding the traffic stop relevant to the Court's decision are discussed below.

As Officer Laureano exited his vehicle, defendant exited his vehicle and fled the scene on foot.  Officer Laureano gave chase and took defendant into custody.  A subsequent inventory search of the vehicle revealed a handgun under the front passenger seat.

### Conclusions of Law

"[I]n evaluating the legality of police conduct, [a court] must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter" (*People v Howard*, 129 AD3d 1654 [4th Dept 2015] [quotations omitted]; *People v De Bour*, 40 NY2d 210, 215 [1976]).

"The police may lawfully stop a vehicle when they have probable cause to believe that the driver of [a vehicle] has committed a traffic violation, and they may lawfully stop a vehicle when there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a

-4-

crime." *People v White*, 27 AD3d 1181, 1182 (4th Dept 2006)(citations and quotations omitted).

The court finds the stop of defendant's vehicle was unlawful. The People rely on Officer Laureano's testimony, discussed above, that he observed defendant pull his vehicle to the curb without signaling, a traffic infraction. The Blue Light camera evidence, however, does not bear this out. The Blue Light camera footage shows that the Officer Laureano activated his emergency lights before defendant's vehicle pulled over to the curb. The Court does not, therefore, credit Officer Laureano's testimony as to probable cause to stop defendant's vehicle. Accordingly, the People have failed to meet their burden to establish probable cause to stop defendant's vehicle *(People v Knupp*, 159 AD3d 510, 510 [1st Dept 2018] *lv denied*, 31 NY3d 1118).

Further, the Court finds that the tangible evidence, i.e., the handgun, was discovered "by exploitation of [the initial] illegality, the unlawful stop" and must be suppressed *(People v Stith*, 69 NY2d 313 [1987]; *People v Parris*, 136 AD2d 882, 883 [4th Dept 1988]["Since we conclude that the initial seizure of the defendant was unlawful, the fruits of that unconstitutional seizure must be suppressed"]).

Accordingly, it is

**ORDERED**, that defendants' motion to suppress tangible evidence is granted.

The above constitutes the Decision and Order of the Court.

Dated:  OCT, 13 , 2020.
Rochester, New York

**HONORABLE CHARLES A. SCHIANO, JR.**

-5-

Supreme Court Justice