UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEVIN JOHNSON,

                Plaintiff,

    -v-

The CITY OF ROCHESTER and ROCHESTER
POLICE OFFICER JONATHAN LAUREANO,

                Defendants.
_____

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE IMPROPER AND UNDULY PREJUDICIAL EVIDENCE**

**Civil No. 21-CV-6683 (EAP)**

# Table of Contents

Table of Contents ................................................................................................ i

Table of Citations ................................................................................................ ii

Argument

Point I:   The Plaintiff's Seventh Cause of Action............................................. 1

Point II:  The Plaintiff's Opposition to Preclusion of any Evidence or Mention of the Yamiek Maddox Matter is Factually Unsupportable and Based on Rank Supposition ............................................................................................... 1

Point III: The Plaintiff Offers No Cogent Or Legally Supportable Argument Against Preclusion Of Any Mention Of, Or Evidence Concerning, The Nishean Napier Or Darius Howard Incidents, Or For His Belated Attempt To Include The Incident Concerning Brian Brookins .............................................................. 5

Point IV: The Plaintiff Offers No Cogent or Legally Supportable Argument Against Preclusion of Justice Schiano's Decision and Order in the Underlying Criminal Matter, Including His Suppression Ruling....................................... 13

Conclusion  ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Arlio v Lively*, 474 F.3d 46 [2d Cir. 2007].................................................................. 14

*Banushi v Palmer*, 2011 WL 13894 [E.D.N.Y. 2011] ..................................................... 6

*Bermudez v City of New York,* 2019 WL 136633 [E.D.N.Y. 2019] ................................. 6

*Brookins v Laureano and Amato*, 18-cv-0487 (FPG) .................................................... 9

*Djangmah v Falcione*, 22013 WL 6388364 [S.D.N.Y. 2013]................................... 6, 13

*Johnson v City of Rochester*, 2023 WL 8237560 [W.D.N.Y. 2023] .............................. 13

*Lewis v City of Albany Police Department*, 547 F. Supp.2d 191, 200 [N.D.N.Y. 2008] ... 6

*Nibbs v Goulart*, 822 F. Supp.2d 339 [S.D.N.Y. 2011] .................................................. 6

*Old Chief v United States*, 519 U.S. 172 [1997] .......................................................... 13

*Thomas v Messer*, 2017 WL 11318534 [N.D.N.Y. 2017]................................................ 6

*United States v Benedetto*, 571 F.2d 1246 [2d Cir., 1978]) .......................................... 6

*Wallace v Hano*, 1992 WL 230139 [S.D.N.Y. 1992] ...................................................... 6

**Statutes**

FRE §401 ........................................................................................................................ 1

FRE §403 ................................................................................................................ 12, 14

FRE §404(b)(1) ............................................................................................................ 1, 5

FRE §404(b)(2) ............................................................................................... 6, 8, 9, 10

FRE §405(b)......................................................................................................... 1, 6, 12

FRE §608(b)........................................................................................................ 1, 5, 8, 10

NY CPLR §105(u) ........................................................................................................... 3

Vehicle & Traffic Law §1163.................................................................................... 9, 13

# ARGUMENT

## POINT I

### RE: THE PLAINTIFF'S SEVENTH CAUSE OF ACTION.

The Defendants hereby withdraw that portion of their motion *in limine*, which sought dismissal of the Seventh Cause of Action in the Plaintiff's Complaint alleging the City's *respondeat superior* liability.

## POINT II

### THE PLAINTIFF'S OPPOSITION TO PRECLUSION OF ANY EVIDENCE OR MENTION OF THE YAMIEK MADDOX MATTER IS FACTUALLY UNSUPPORTABLE AND BASED ON RANK SUPPOSITION.

Officer Perelli's involvement in the Yamiek Maddox matter is clearly inadmissible under FRE 401, 404(b)(1) and 405(b), and also under 608(b) unless it somehow involved Officer Perelli's character for truthfulness. The Plaintiff's attempt to manufacture that is based on no more than rank speculation, unfounded allegations, and is unworthy of consideration.

Officer Perelli is not a named Defendant in this action and none of the remaining causes of action concern him. His role in what occurred on the evening of the Plaintiff's arrest is limited to what he and the other three RPD members in the marked SUV observed on two occasions, the latter of which is captured on the BLC video at the Portland/Clifford and Clifford/Miller intersections. All of what Officer Perelli recounted in his Declaration supporting the Defendants' summary judgment motion Dkt# 29-17) is corroborated by the Declaration of Sgt. William Wagner (Dkt #29-18), who was also in the SUV.

1

The RPD members observed Mr. Johnson at 5 Lincoln Street and when he saw their marked SUV, he immediately disassociated himself from his vehicle, which they found suspicious.  When they located him again at the gas station at Portland and Clifford and passed by in the SUV, he again immediately disassociated himself from his vehicle until they drove out of sight.  Officer Perelli radioed ask to any Goodman Section road patrol Officer who was available to drive past the gas station to see whether the Plaintiff was still there.

Office Laureano complied and drove past the gas station, observing Mr. Johnson there.  He met with the other RPD members out of the Plaintiff's line of sight and one of them requested that the Sgt. manning the BLCs train the camera on the gas station to determine whether Mr. Johnson was still there and, if so, to keep him under surveillance.  The camera is seen swiveling from being trained on the intersection to being trained on the gas station and is adjusted several times, zooming in and out, and at one point zooming on the license plate of the car being operated by the person with whom the Plaintiff was seen speaking.  The Plaintiff does not dispute that he was at 5 Lincoln Street, nor does he, or could he, dispute that he was at the gas station.  His explanation for why he ran from the traffic stop—that he was on parole and did not want to risk violation and revocation—well-explains his suspicious behavior.

When the Sgt. manning BLCs advised that Mr. Johnson was leaving the gas station, the RPD members in the SUV asked Officer Laureano to follow him and, if he had probable cause to do so, to stop him and identify him.  That is exactly what is shown on the BLCs videos from Portland/Clifford and Clifford/Miller.  No aspect of any of this is subject to debate or to any allegation that Officer Perelli was being untruthful.

His only additional involvement was joining in the foot pursuit of the Plaintiff and after reaching him and Officer Laureano, affixing his own handcuffs to the Plaintiff's wrists.

Notwithstanding this, the Plaintiff would seek to cross-examine Officer Perelli about the Yamiek Maddox incident and use the various items of extrinsic evidence he submits to do so, including the Complaint in the civil action that ensued, Officer Perelli's SRR (Subject Resistance Report), his PSS testimony, the Stipulation of Settlement of the PSS matter, and the settlement documents regarding the civil lawsuit. His explanation for this is to challenge whether Officer Perelli tells the truth in official reports and sworn testimony, which are not even alleged in this action regarding the reports that he prepared. Further, none of the exhibits that the Plaintiff would seek to use support his rank speculation that the disposition of the Maddox matter establishes that Officer Perelli was being untruthful, or deliberately fabricating evidence or testimony.

First, the Plaintiff's supposition about why the District Attorney's Office declined to prosecute Maddox on the second degree harassment and resisting arrest charges is established by his counsel's use of the word that it, "suggests," that Officer Perelli was being untruthful. This is based upon a paragraph in the Complaint in the civil lawsuit, which is no more than an unsubstantiated allegation—the Complaint is not verified and does not have the force and effect of an affidavit under NY CPLR §105(u). Nothing at all is offered to substantiate the speculation about why the DA's office made the determination not to prosecute. Maddox was sixteen years old at the time—a youthful offender—and myriad other reasons may have influenced that decision. The Plaintiff's belief that this calls into question whether Officer Perelli fabricated or exaggerated anything is no more than speculation.

3

Second, Officer Perelli's explanation for why he used force against Maddox is corroborated by a female Police Officer, Leilani Colon, who is seen in the security camera video standing next to them, who also testified in the PSS matter, and who corroborated Officer Perelli's impression of Maddox's intentions (Exhibit A). Officer Perelli indicated in his SRR and testified that his belief as Maddox was permitted to gather his belongings and leave with an Appearance Ticket and as he came within less than a foot of Officer Perelli and called him a "faggot ass," was that he was attempting to physically engage him. The Plaintiff's attempt to conflate Officer Perelli's impression with deliberate untruthfulness is unavailing.

Third, contrary to the Plaintiff's argument, cross-examination of Officer Perelli on the Maddox matter and the introduction of extrinsic evidence would involve a mini-trial into that matter, would detract from the central issue in this suit, would only serve to confuse the jury and to unduly delay trial if there was a factually supportable claim that Officer Perelli lied. Again, his role in the Plaintiff's surveillance and arrest and his trial testimony would be limited and all of what he would testify to is corroborated by the video evidence, by Sgt. Wagner's sworn testimony, and by the Plaintiff's statements to Officer Glodowski as he awaited transport for an interview by Investigators.

Moreover, the Plaintiff's position is duplicitous. He seeks to preclude any mention of his criminal past, even including the fact that he was on parole, but wants to engage in a full-scale assault on Officers Laureano and Perelli through unrelated matters.

A review of the video footage establishes beyond cavil that Officer Perelli's interaction with a smart-mouthed 16-year old got out of control as he was being

4

released and given an Appearance Ticket and as he insulted Office Perelli as he moved past him. Maddox was insolent from before he was released, and he punched Officer Perelli several times in the face as they struggled (Exhibit B—photo of facial injuries) and he crowed about it to another Officer, Joel Hasper, as he sat in the back of Officer Perelli's car, claiming that he nearly knocked-out "your boy." At the very most, the video shows that what occurred was an interaction that quickly got out of hand. It does not, however, show any lying, or establish fabrication of any reports or testimony.

It is apparent that the Plaintiff's real motive in bringing this out at trial, especially through the use of extrinsic evidence, is to embarrass Officer Perelli without any valid assessment of his credibility. FRE 608(b) prohibits this, but more importantly, FRE 403 is intended to prevent this sort of abuse. There is no probative value to this incident and the substantial prejudicial effect is the intended purpose in introducing it. It is thus respectfully urged that this portion of the Defendants' motion be granted and that the Plaintiff be precluded from even mentioning the Maddox matter at trial.

## POINT III

**THE PLAINTIFF OFFERS NO COGENT OR
LEGALLY SUPPORTABLE ARGUMENT
AGAINST PRECLUSION OF ANY MENTION
OF, OR EVIDENCE CONCERNING, THE NISHEAN
NAPIER OR DARIUS HOWARD INCIDENTS,
OR FOR HIS BELATED ATTEMPT TO INCLUDE
THE INCIDENT CONCERNING BRIAN BROOKINS.**

FRE 404(b)(1) prohibits the use of evidence of any extrinsic act to prove a person's character in order to show that on a particular occasion, the person acted in accordance with that character. That is precisely what the Plaintiff attempts to do with regard to the incidents involving Nishean Napier, Brian Brookins and Darius Howard,

5

despite his claims to the contrary. His attempt to fit those incidents within FRE 404(b)(2) is transparent and unavailing.

He claims that each of the four incidents establish a pattern of conduct on Officer Laureano's part of racially motivated stops of young black men without cause and fabricating justifications for them and for searches. The law in this Circuit is settled regarding the requisite level of similarity and uniqueness of unrelated incidents to be admissible under FRE 404(b)(2):

> "[T]o merit admission under this theory, the extrinsic evidence must share unusual characteristics with the act charged or represent a unique scheme (*Wallace v Hano*, 1992 WL 230139, at *7 [S.D.N.Y. 1992], citing *United States v Benedetto*, 571 F.2d 1246, 1249 [2d Cir., 1978]). More than the repeated commission of some act, the proffering party must demonstrate that the device used is so unusual and distinctive as to be like a signature (*Bermudez v City of New York,* 2019 WL 136633, at *6 [E.D.N.Y. 2019], internal quotations and citations omitted, but quoting Wallace, *supra*, at *7, and Benedetto, *supra*, at 1249]). [T]o establish that evidence is admissible pursuant to Rule 404(b), the party seeking admission must first demonstrate a pattern of relevant conduct that shares unique characteristics (*Bermudez, supra, at *7, citing Berkovich v Hicks*, 922 F.2d 1018, 1022 [2d Cir., 1991] and Benedetto, *supra*, at 1249). (See also, *Thomas v Messer*, 2017 WL 11318534, at *2 [N.D.N.Y. 2017]— prior complaints must be strikingly similar to the matter at bar, citing *Lewis v City of Albany Police Department*, 547 F. Supp.2d 191, 200 [N.D.N.Y. 2008]; *Banushi v Palmer*, 2011 WL 13894, at *2 [E.D.N.Y. 2011]; and *Nibbs v Goulart*, 822 F. Supp.2d 339, 349 [S.D.N.Y. 2011]; and *Djangmah v Falcione*, 22013 WL 6388364, at **9-10 [S.D.N.Y. 2013]).

None of the arguments advanced by the Plaintiff come close to establishing the requisite connection—the uniqueness, unusualness and distinctiveness, so as to serve as a "signature." There has never been a claim in this suit that Officer Laureano

6

specifically targeted the Plaintiff because he was a young black man. On the contrary, Officer Laureano was specifically asked by the other RPD members to follow the Plaintiff once he left the gas station and, if he had probable cause to do so, stop him and identify him. This was not random—he was not following the Plaintiff by mere happenstance—he was requested to do so to further the other RPD members' investigation. This fact alone is dispositive of the Plaintiff's arguments.

The two incidents involving Nishean Napier share no similarities with the incident involving the Plaintiff other than that Mr. Napier is black. Officer Laureano's first interaction with him was not a traffic stop; rather, he questioned Mr. Napier based on reasonable suspicion to conduct an investigatory stop when he behaved suspiciously after moving his mother's car to the side of the street opposite their house. Notwithstanding Mr. Napier's protestations, his mother provided Officer Laureano with his name and date of birth and when she confirmed that he in fact moved her car at her request, that ended the matter. There was no arrest, no search of Mr. Napier or the vehicle, nor was a civilian complaint lodged. All that the video footage submitted as Exhibit 12 by the Plaintiff establishes is that Officer Laureano was conducting police work.

When Officer Laureano stopped Mr. Napier on March 15, 2018, he had no idea who was operating the motor vehicle Mr. Napier was driving. He stopped it because it answered the description of a vehicle operated by a black male who had brandished a handgun at a group of middle schoolers and was in the area where it was last seen. The BWC footage submitted by the Plaintiff as Exhibit 9 begins with the group of kids reporting the matter to a Police Officer, who also took statements from a female

7

neighbor and from a black male neighbor who was driving by.  Officer Laureano's BWC footage begins at 18:53 and after Mr. Napier was secured in the back Officer Laureano's marked car, he explained that the vehicle Mr. Napier was driving, a dark-colored car sedan, answered the aforesaid description and was operating in the same area as the vehicle was last seen, according to another Officer who alerted Office Laureano.  As they spoke, Mr. Napier apparently recognized Officer Laureano from their previous interaction, though Officer Laureano did not recall him.  He explained that he did not believe that Mr. Napier was who they were looking for, but needed to identify him as part of the investigation.

Like their earlier interaction, Mr. Napier was not arrested, neither he nor his vehicle were searched, and no civilian complaint was filed.  When it was determined that his driver's license had been suspended a week earlier for non-payment of a couple of child support obligations, and that the registration had expired on the vehicle he was driving, he was extended the courtesy of not being issued traffic citations and was asked to call a licensed driver to drive it from the scene and to park it off of the road so that the owner would not be ticketed for the expired registration.  Like the earlier incident, all that the video footage of the interaction between Officer Laureano and Mr. Napier establishes is that Officer Laureano was doing police work.  The Plaintiff's claim that he was lying, or fabricating reports, is directly contradicted by the video footage.  It is plainly obvious from the video footage that Officer Laureano's later interaction with Mr. Napier was clearly coincidental.

The incident involving Brian Brookins is likewise so dissimilar to that involving the Plaintiff that it is inadmissible under FRE 404(b)(2) and 608(b).  Mr. Brookins was

driving a rental vehicle with Canadian license plates in a known, high-crime area and when Officer Laureano drove past him, he reacted with a startled look that raised Officer Laureano's suspicion. He followed Mr. Brookins on Garson Avenue, then onto Kingston Street and where he turned into the driveway at 42 Kingston, failing to properly activate his directional signal on either occasion. Officer Laureano stopped him and attempted to identify him, but he refused, then fled and resisted arrest. He commenced a federal civil suit (*Brookins v Laureano and Amato*, 18-cv-0487 (FPG)), alleging false arrest, illegal search and seizure and malicious prosecution, but the latter claim was dismissed because he lacked standing, given that the car was not owned or rented by him. Upon the completion of discovery, the Officers moved for summary judgment and in his Decision and Order (18-cv-0487, Dkt #39), Judge Geraci granted Officer Laureano partial summary judgment and left for trial only the claim that the vehicular search was illegal. He granted Officer Laureano summary judgment on the legality of the traffic stop, based on qualified immunity.

Subsequent to the issuance of Judge Geraci's Decision and Order, and prior to trial, Mr. Brookins, through counsel, voluntarily discontinued the lone remaining claim with prejudice (18-cv-0487, Dkt #55). He attempted, *pro se*, to resurrect the malicious prosecution claim through an appeal to the Second Circuit. A three-judge Panel issued a Summary Order denying the appeal (18-cv-0487, Dkt #61). His request for an *en banc* review, was denied.

Other than that the traffic stops of the Plaintiff and Mr. Brookins were for violation of separate portions of Vehicle & Traffic Law §1163, the two events bear no similarity whatsoever. So, the Brookins incident is inadmissible under FRE 404(b)(1) or (2).

9

Further, it is not admissible under FRE 608(b)(1) because any claim of fabrication or falsification is contrary to, and disposed of, by Judge Geraci's Decision and Order finding that there was at least an arguable probable cause—a reasonable belief on Officer Laureano's part—that there was a vehicle and traffic law violation. The only remaining question of fact concerned the basis for a vehicular search. Officer Laureano did not conduct a search of the Plaintiff's vehicle. The Plaintiff should thus be precluded from mentioning, or from introducing any evidence or testimony on the Brookins matter.

There are no factual similarities between the Plaintiff's stop and arrest and the stop and arrest of Darius Howard, whom the Plaintiff's counsel also represents in a pending civil rights suit. The claim that the matters illustrate racial profiling is dispositively contradicted by the fact that Officer Laureano was asked by the other RPD members to follow and, if he had probable cause to do so, to stop and identify Plaintiff to further their investigation. The Plaintiff was not being profiled based upon his race by Officer Laureano. So, the requisite basis for admissibility as a pattern, or *modus operandi* under FRE 404(b)(2) does not exist.

Second, it is apparent from the Plaintiff's opposition to this portion of the Defendants' *in limine* motion that his counsel is trying to litigate the Howard matter within the trial of this matter. In particular, the allegation that Mr. Howard was proved not to be driving the vehicle Officer Laureano stopped and searched is only an allegation taken from his Complaint, which the Defendants have denied in their Answer and it finds no support in Justice Renzi's Decision and Order (Exhibit 13 to the Plaintiff's opposing papers) or in the ADA's Affirmation submitted on the post-trial motion (Exhibit

14). In fact, the jury determined that, beyond a reasonable doubt, Mr. Howard was in fact driving the vehicle in convicting him of first degree Aggravated Unlicensed Operation.

Further, the owner of the vehicle, Melissa B. Larnia, was disclosed by Mr. Howard to be his then girlfriend, as Officer Laureano indicated on the Prisoner Data Report he completed at the time of the arrest (Exhibit C), and she posted bail for him following his arraignment (Exhibit D). His claim that he knew nothing about the vehicle, nor had any association with it, and that some other man was driving it and parked it are disputed issues of fact in his suit.

Mr. Howard's claim that his cellphone was central to his case because he recorded the events surrounding his arrest on it, is also a disputed fact in his civil suit. Further, documents were provided to him in discovery in that action showing that the Property Clerk sent a certified letter, return receipt requested, to him at his residence address in mid-December, 2018, three months after he was released from incarceration, advising that the phone was being released to him and, if not retrieved by January 15, 2019, it would be destroyed (Exhibit E). The return address on the envelope indicated that it was sent by the Rochester Police Department Property Clerk and if the phone were truly dispositive of his civil action, he had every incentive to retrieve it. Yet, he ignored the notice left at his residence indicating the attempted delivery of the certified letter.

There is no indication in Justice Renzi's D&O that he had determined that Officer Laureano had been lying, or had fabricated testimony or evidence. He indicated only that the testimony at the suppression hearing and at trial "did not comport" with the

11

ADA's knowledge that the cellphone had actually been turned into the Property Clerk. In fact, Officer Laureano noted on his Incident Report (Exhibit F) that the phone was seized as evidence, along with the drugs located in the vehicle.

At most, the foregoing, which concern disputed facts in the Howard civil litigation, establish that Officer Laureano's recollection was inaccurate and that he believed that he had returned Mr. Howard's cellphone to him, the hyperbole in the Plaintiff's opposing Memorandum notwithstanding.

In view of the foregoing, there is clearly no basis for the Plaintiff's claim that the mention of, or introduction of any evidence on, the Howard matter is permissible under FRE 608(b). The claim that Officer Laureano was lying in that matter, and/or fabricating evidence, are no more than allegations. Again, it is apparent that the Plaintiff's counsel is attempting to litigate the Howard matter within the trial of this matter—to engage in a mini-trial. If that were permitted, then it is respectfully submitted that the Defendants should be permitted to introduce evidence establishing that Mr. Howard pled guilty to precisely the same activity when arrested on January 10, 2020 in Perry, New York for possessing and attempting to sell drugs out of an automobile that he claimed wasn't his.

In sum, there is no proper basis for the introduction of any evidence on, or the cross-examination of Officer Laureano about, the incidents involving Nishean Napier, Brian Brookins, or Darius Howard. It is clear that the Plaintiff is attempting to do precisely what FRE 404(b) precludes—using other specific events allegedly concerning Officer Laureno's character to prove that he acted in conformance therewith at the time of his arrest. Even if this were otherwise, however, none of this would be admissible under FRE 403, given the scant probative value, if any, of any of those incidents, and

12

the manifest, significant prejudicial effect these would have on Officer Laureano's right to a fair trial. It is settled that, "Unfair prejudice within [the] context [of FRE 403], means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" (*Djangmah*, *supra*, at \*10, citing and quoting *Old Chief v United States*, 519 U.S. 172, 180 [1997]). Officer Laureano is entitled to the jury's unbiased perspective of the facts and circumstances of the Plaintiff's arrest, which he would be deprived of if the other incidents were admitted, or were fodder for cross-examination. It is thus respectfully urged that this Court grant this portion of the Defendants' *in limine* motion.

## POINT IV

**THE PLAINTIFF OFFERS NO COGENT OR
LEGALLY SUPPORTABLE ARGUMENT AGAINST
PRECLUSION OF JUSTICE SCHIANO'S DECISION
AND ORDER IN THE UNDERLYING CRIMINAL MATTER,
INCLUDING HIS SUPPRESSION RULING.**

Judge Larimer's Decision, which constitutes the law of this case, is dispositive of this issue. He clearly understood that the basis for the traffic stop was whether the Plaintiff's vehicle began drifting, or pulling over toward the curb, before Officer Laureano activated his emergency lights (*Johnson v City of Rochester*, 2023 WL 8237560, at \*\*4-5 [W.D.N.Y. 2023]). He determined that Officer Laureano's statements in his sworn declaration supporting the Defendants' summary judgment motion were consistent with his testimony at the Mapp hearing held in the underlying criminal action—the violation of NY Vehicle & Traffic Law §1163(d) was Mr. Johnson's leaving the travel lane without signaling (Id., at \*4). He further held that upon reviewing the BLC footage of the stop, he found it to be inconclusive as to what occurred first—the drifting, or the activation of

the emergency lights. This effectively vitiated Judge Schiano's determination. While Judge Larimer determined that Justice Schiano's subjective view of the BLC footage demonstrated that a factfinder could reasonably conclude that the Plaintiff was not pulling over toward the curb prior to the activation of the emergency lights, he was clearly not endorsing Justice Schiano's determination, or finding it dispositive of the issue. This, it is submitted, neutralizes Justice Schiano's subjective determination and renders it immaterial and irrelevant to this matter (Id., at*5).

Under these circumstances, and as observed by the Second Circuit in *Arlio v Lively*, 474 F.3d 46, 53 [2d Cir. 2007], cited by the Plaintiff, the prejudicial effect of any mention of Justice Schiano's subjective determination, which Judge Larimer did not share, much less its introduction into evidence at this trial, so far outweighs any potential probative value that it might have that this Court should grant the Defendants' motion. Specifically, the Second Circuit observed that, "The allure of a prior expert adjudication must be strong for a jury," and that "District Courts must assiduously guard juries against the siren's song of irrelevant and prejudicial prior determinations" (Id., at 53). There, the prior determination was made by the Arbitration Board involving the same parties to the ensuing civil litigation based on the plaintiff's wrongful termination for constitutionally infirm grounds. Justice Schiano's D&O would very likely have the effect on the jury empaneled to decide this case, as is cautioned against Arlio (*supra*, at 53). The Plaintiff should thus be precluded from mentioning it or introducing it into evidence, pursuant to FRE 403.

Further, it is not admissible under FRE 608(b). Justice Schiano's determination that what he subjectively viewed on the BLC video was not consistent with Officer

14

Laureano's testimony was contrary to Judge Larimer's view of it and, as aforestated, he held that Officer Laureano's testimony in his Declaration and at the Mapp hearing were not inconsistent with the video, which Judge Larimer deemed inconclusive on the central issue.  In other words, Judge Larimer eliminated the allegation that Officer Laureano was untruthful, incredible, or was fabricating evidence.  That is the use to which the Plaintiff would put Justice Schiano's Decision and Order at trial, however, and it is clearly extrinsic and inadmissible.

Curiously, at page 23 of his Memorandum, the Plaintiff muses that the jury may be left to speculate why the weapons charges were dropped, apropos to his malicious prosecution claims, but that is easily addressed with an instruction that the underlying criminal matter terminated in the Plaintiff's favor.  Rather oddly, he wants some evidence or testimony on this, but opposes the Defendants' motion to address this in the manner proposed.  He implicitly recognizes, however, that some indication of the basis for the malicious prosecution claim—termination of the weapons charges—will need to be brought out at trial.  Doing so through Justice Schiano's D&O, however, is clearly not an appropriate means of so doing, particularly given Judge Larimer's decision that effectively neutralized Justice Schiano's determination.  It is thus respectfully submitted that this portion of the Defendants' motion in limine be granted.

## CONCLUSION

For the foregoing reasons, it is respectfully urged that this Court grant those portions of the Defendants' *in limine* motion which seek preclusion of mention of, or introduction of any evidence or testimony on, the Yamiek Maddox incident involving Officer Perelli, or the Nishean Napier, Brian Brookins, or Darius Howard incidents

15

involving Officer Laureano, or Judge Schiano's D&O in the Plaintiff's underlying criminal action.

DATED: February 27, 2025
       Rochester, New York

Respectfully submitted,

PATRICK BEATH, Corporation Counsel

BY: s/ Christopher S. Noone
    CHRISTOPHER S. NOONE, Esq., of Counsel
    Attorneys for Defendants
    30 Church Street, Room 400A City Hall
    Rochester, New York 14614
    Telephone: (585) 428-6753
    chris.noone@cityofrochester.gov