**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

DEVIN JOHNSON,

                                        Plaintiff,

            -against-

CITY OF ROCHESTER, et al.,

                                        Defendants.

---

**21-cv-6683 (EAW)(MWP)**

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S ORDER COURT'S ORDER AT DOCKET 79, TO ADDRESS THE HOLDINGS AT HEADING II. C (DENYING DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF OTHER INCIDENTS, WITHOUT PREJUDICE), II. D (GRANTING DEFENDANTS' MOTION TO PRECLUDE ADMISSION OF JUDGE SCHIANO'S DECISION AND ORDER INTO EVIDENCE, BUT DENYING PRECLUSION OF CROSS EXAMINATION ON THE CONCLUSIONS CONTAINED THEREIN) AND II. E (DENYING DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF THE DARIUS HOWARD CRIMINAL PROCEEDING AND FEDERAL CIVIL RIGHTS LAWSUIT).**

ROTH & ROTH, LLP
Elliot D. Shields
*Attorneys for Plaintiff*
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020
eshields@rothandrothlaw.com

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

I.    The Johnson Mapp Hearing Order Is Admissible as Direct Substantive Evidence of Plaintiff's False Arrest, Malicious Prosecution and Evidence Fabrication Claims ................... 3

    A.    The Second Circuit decision in *Haynes* v. *Acquino* requires admission of Judge Schiano's suppression ruling ................................................................................................. 3

    B.    The Johnson Case Is Distinguishable from the District Court's Decision on Remand in *Haynes* .......................................................................................................................... 6

    C.    The Johnson Case Is Distinguishable from *Brundidge v. City of Buffalo* ..................... 7

II.    The Second Circuit's Inclusionary Approach to Rule 404(b) Permits Admission of Similar Acts Evidence to Prove Intent, Motive, and Plan ............................................................... 8

    A.    Admission In Evidence Is Settled Second Circuit Law ................................................ 8

    B.    Civil Rights Cases Apply the Same Rule Where State of Mind Is Disputed ................. 9

    C.    Criminal Cases Apply the Same Rule Where State of Mind Is Disputed .................... 11

III.    Under Rule 404(b) and *Carroll* v. *Trump*, The Videos Of Laureano's Two Stops Of Nishsean Napier Are Admissible ...................................................................................... 13

    A.    The Napier videos show the same pattern analysis applied in *Carroll* ........................ 14

    B.    The videos of the Napier stops are highly probative like the Access Hollywood tape in *Carroll* .......................................................................................................................... 14

    C.    The evidence serves proper Rule 404(b) purposes ..................................................... 15

IV.    The Four Prior Judicial Findings in Allen, Howard, Parsons, and Brookins that Laureano's Testimony Not Credible Are Admissible ........................................................ 15

    A.    The four prior judicial findings that Laureano testified untruthfully are admissible.... 15

V.    Judge Schiano's Suppression Ruling and the Six Other Exhibits Are Admissible in Evidence to Prove Essential Elements for Punitive Damages Under the *Gore* Reprehensibility Analysis ............................................................................................................................ 19

    A.    Legal Framework for Punitive Damages in § 1983 Cases ........................................... 19

    B.    Judge Schiano's suppression ruling is relevant to Plaintiff's punitive damages claim 20

    C.    The Napier Videos and four suppression rulings in *Allen*, *Howard*, *Parsons*, and *Brookins* are relevant to proving the "malice" aggravating factor ...................................... 22

        1.    The Napier Videos Demonstrate Deliberate Targeting and Malicious Intent ......... 22

        2.    The Suppression Rulings Prove Deliberate Fabrication Rather Than Honest Mistakes ................................................................................................................... 22

    D.    The Six Exhibits Establish a Clear Pattern of Repeated Misconduct ............................ 25

    E.    Pattern evidence is admissible in police misconduct cases where punitive damages are sought ..................................................................................................................................... 25

    F.    The Seven Exhibits Are More Probative of Reprehensibility Than Pattern Evidence in Other Approved Cases ....................................................................................................... 26

VI.    Alternatively, Even if Inadmissible, the Four Prior Judicial Findings in *Allen*, *Howard*, *Parsons*, and *Brookins* that Laureano's Testimony Was Not Credible and the Two Napier Videos Are Proper Subjects for Cross Examination of Laureano ............................................. 28

    A.    The White Factors Support Cross-Examination ........................................................... 28

    B.    *Gibbs* v. *Borona* provides guidance .............................................................................. 29

    C.    The Napier Videos Satisfy Rule 608(b) ...................................................................... 30

VII.    Additional Exhibits From The Darius Howard Criminal Case And Federal Civil Rights Action Are Admissible ............................................................................................................. 31

    A.    Relevance, Modus Operandi, and Rule 404(b) ........................................................... 31

    B.    Admission of Civil Depositions Under Rule 32(a)(8), Rule 801(d)(1)(A), and Rule 613 32

    C.    Cross-Examination Under Rule 608(b) and *United States v. White* ............................ 34

    D.    Rule 403 Balancing .................................................................................................... 34

CONCLUSION ............................................................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

BMW of North America, Inc. v. Gore, 517 U.S. 559, 574-75 (1996) ............................... 19, 22, 25

Brundidge v. City of Buffalo, 79 F.Supp.2d 219, 223 (W.D.N.Y. 1999)...................................... 7

Carroll v. Trump, 124 F.4th 140, 167-69 (2d Cir. 2024)................................................... passim

*Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) ........................................................................ 6

*Clay v. Buzas*, 208 F.R.D. 636, 638 (D. Utah 2002)................................................................... 33

*Coan v. Dunne*, No. 3:15-cv-00050 (JAM), 2019 WL 1976146, at *7 (D. Conn. May 3, 2019). 33

*DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003)................................................. 3, 19, 20, 26

Fennell v. Horvath, 2020 WL 3429395, at *3–4 (E.D. Pa. June 23, 2020)............................ 11, 18

*Fernandez v. N. Shore Orthopedic Surgery & Sports Med., P.C.*, 79 F. Supp. 2d 197, 207–08
    (E.D.N.Y. 2000).................................................................................................................. 26

*FHFA v. Merrill Lynch*, No. 11 Civ. 6202 (DLC), 2014 WL 798385, at *1–2 (S.D.N.Y. Jan. 15,
    2014)..................................................................................................................................... 32

Garnett v. Undercover Officer C0039, 2015 WL 1539044, at *14 (S.D.N.Y. Apr. 6, 2015)....... 21

*Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) .................................. 5

Gibbs v. Borona, 2021 WL 1171558 (D. Conn. 2021)................................................................. 29

Hardy v. Adams, 2024 WL 838689, at *10 (N.D.N.Y. 2024)...................................................... 25

Haynes v. Acquino, 2018 WL 3126725, at *5 (W.D.N.Y. 2018).................................................. 6

*Haynes* v. *Acquino*, 692 F. App'x 670, 672-73 (2d Cir. 2017) (summary order) ....................... 1, 3

*Hub v. Sun Valley Co*., 709 F.2d 214, 217 (1st Cir. 1983) ......................................................... 33

Hynes v. LaBoy, 887 F. Supp. 618, 624–25 (S.D.N.Y. 1995) ............................................... 11, 18

*Ikerd v. Lapworth*, 435 F.2d 197, 205 (7th Cir. 1970).............................................................. 33

Ismail v. Cohen, 899 F.2d 183 (2d Cir. 1990) ..................................................................... 3, 10, 18

Johnson v. City of Rochester, 2023 WL 8237560, at *14-15 (W.D.N.Y. Nov. 28, 2023)............. 8

*Komlosi v. Fudenberg*, No. 88 CIV. 1792 HBP, 2000 WL 351414, at *18 (S.D.N.Y. Mar. 31,
    2000), *adhered to on reconsideration sub nom. Komlosi v. New York State Off. of Mental
    Retardation*, No. 88 CIV. 1792 (HBP), 2000 WL 554226 (S.D.N.Y. May 4, 2000), and *aff'd*,
    No. 01-89(XAP), 2002 WL 34244996 (2d Cir. May 13, 2002) ............................................ 20

*Kreitman v. Fla. Dep't of Corr.*, No. 4:20cv371-MW/MJF, 2020 WL 12188711, at *3 (N.D. Fla.
    Nov. 30, 2020) .................................................................................................................. 32, 33

Lee v. Edwards, 101 F.3d 805, 811 (2d Cir. 1996)................................................ 21, 25, 27, 28

*Lewis v. City of Albany Police Department*, 547 F. Supp. 2d 191 (N.D.N.Y. 2008) ............ 10, 18

Martinez v. City of New York, No. 16-CV-79, 2022 WL 17090267, at *18-19 (E.D.N.Y. Nov.
    18, 2022) .............................................................................................................................. 31

*Medline Indus., Inc. v. Kimberly-Clark Corp.*, No. 1:17-cv-02032-SCJ, ECF No. 168, at 5 (N.D.
    Ga. Apr. 2, 2019)................................................................................................................. 32

*Milfort v. Prevete*, 3 F. Supp. 3d 14, 25 (E.D.N.Y. 2014)........................................................ 26

*Old Chief v. United States*, 519 U.S. 172, 186–87 (1997)......................................................... 13

*Ortiz–Del Valle v. National Basketball Ass'n*, 42 F.Supp.2d 334, 345 (S.D.N.Y.1999)............. 20

People v. De Bour, 40 NY2d 210 (1976)........................................................................................ 7

*S.W. v. City of New York*, No. CV 2009–1777(ENV)(MDG), 2010 WL 4791712, at *2 (E.D.N.Y.
    Nov. 18, 2010) ................................................................................................................. 33, 34

*Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ...................................................... 5

*Screws v. United States*, 325 U.S. 91, 103 (1945) .................................................................... 12

Smith v. Wade, 461 U.S. 30, 56 (1983) ............................................................................ 19, 21

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 423 (2003) .................................... 26

United States v. Benedetto, 571 F.2d 1246, 1248–49 (2d Cir. 1978) .................................. 13, 17

United States v. Cavallaro, 553 F.2d 300, 305 (2d Cir. 1977) .............................................. 13, 18

*United States v. Cedeno*, 644 F.3d 79, 82–83 (2d Cir. 2011) ...................................................... 30

*United States v. Clanton*, 515 F. Supp. 3d 693, 699–700 (W.D.N.Y. 2021) ............................... 13

*United States v. Curley*, 639 F.3d 50, 56–57 (2d Cir. 2011) ......................................................... 8

United States v. Garnes, 354 F. App'x 557, 559 (2d Cir. 2009) .................................................... 9

*United States v. Guerrero*, 882 F. Supp. 2d 463, 494–95 (S.D.N.Y. 2011) ................................ 13

*United States v. Krug*, 2017 WL 907817 (W.D.N.Y. Mar. 8, 2017) ...................................... 11, 18

*United States v. Malka*, No. 21-cr-220, 2022 WL 16855230, at *4–5 (S.D.N.Y. Nov. 10, 2022)
................................................................................................................................................ 13, 18

*United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006), *aff'd*, 278 F. App'x
75 (2d Cir. 2008) ........................................................................................................................ 13

*United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) .......................................................... 8

*United States v. Sappe*, 898 F.2d 878, 880 (2d Cir. 1990) ........................................................... 8

*United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) ................................................................. 8

United States v. White, 692 F.3d 235, 248 (2d Cir. 2012) ........................................... 28, 29, 34

Vilkhu v. City of New York, 2009 WL 537495, at *3 (E.D.N.Y. Mar. 3, 2009) ......................... 11

Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) ......................................................................... 6

**Statutes**

Fed. R. Civ. P. 32(a)(8) .................................................................................................................. 32

Fed. R. Evid. 404(b) ................................................................................................................ 2, 8, 9

Fed. R. Evid. 608(b) ........................................................................................................ 2, 28, 30, 34

Fed. R. Evid 801(d)(1)(A) ............................................................................................................. 34

## INTRODUCTION

Plaintiff Devin Johnson respectfully submits this supplemental memorandum pursuant to the Court's Order at Docket 79, to address the holdings at heading II. C (denying Defendants' motion to preclude evidence of other incidents, without prejudice), II. D (granting Defendants' motion to preclude admission of Judge Schiano's Decision and Order into evidence, but denying preclusion of cross examination on the conclusions contained therein) and II. E (denying Defendants' motion to preclude evidence of the Darius Howard criminal proceeding and Federal civil rights lawsuit). Each of these holdings were made without prejudice, and the Court permitted the parties to submit supplemental briefing on these issues.

In the underlying criminal case, following a probable cause hearing, Justice Charles Schiano held issued a Decision and Order granting Mr. Johnson's motion to suppress the handgun:

> The court finds the stop of defendant's vehicle was unlawful. The People rely on Officer Laureano's testimony, discussed above, that he observed defendant pull his vehicle to the curb without signaling, a traffic infraction. The Blue Light camera evidence, however, does not bear this out. The Blue Light camera footage shows that Officer Laureano activated his emergency lights before defendant's vehicle pulled over to the curb. The Court does not, therefore, credit Officer Laureano's testimony as to probable cause to stop defendant's vehicle. Accordingly, the People have failed to meet their burden to establish probable cause to stop defendant's vehicle. People v. Knupp, 159 A.D.3d 510, 510 (1st Dep't 2018), lv. denied, 31 N.Y.3d 1118.

(Decision & Order pg. 4).

As explained below, the Decision and Order from Mr. Johnson's underlying criminal case (the "suppression ruling") is admissible in Plaintiff's because it is directly relevant to his false arrest, malicious prosecution and evidence fabrication claims. (*Haynes* v. *Acquino*, 692 F. App'x 670, 672-73 (2d Cir. 2017) (summary order) (reversing exclusion of suppression ruling in § 1983 false arrest case as relevant under Fed. R. Evid. 401 for probative value on lack of probable cause

and finding district court's Rule 403 analysis inadequate, as exclusion was not harmless error where jury's probable cause finding conflicted with suppression ruling)).

This was not an isolated finding—instead it is part-in-parcel of Laureano's long pattern of similar misconduct, or his "modus operandi", of making unlawful vehicle stops (and other similar unlawful enforcement actions), then lying about his actions in official police paperwork and under oath in sworn court testimony. Laureano's "modus operandi" is demonstrated by six proposed exhibits:

1. Nishsean Napier's cell phone video of the April 1, 2017 incident where Defendant Laureano stopped and detained Mr. Napier on his front porch after parking his mother's car in front of his home.

2. Laureano's Body Worn Camera recording of the March 15, 2018 incident where Laureano again stopped and detained Nishsean Napier while driving his vehicle in the vicinity of Culver Road and Hazelwood Terrace.

3. The suppression ruling in *People v. Allen*, Indictment No. 2021-0027A (N.Y. Sup. Ct., Monroe Cnty. Nov. 23, 2021).

4. The suppression ruling in *People v. Howard*, Indictment No. 2017-0480 (N.Y. Sup. Ct., Monroe Cnty. Sept. 14, 2020).

5. The suppression ruling in *People v. Parsons*, Indictment No. 2019/0597 (N.Y. Sup. Ct., Monroe Cnty. Dec. 10, 2019), and

6. The suppression ruling in *United States v. Brookins*, No. 17-CR-6019, 2018 WL 6629160 (W.D.N.Y. Dec. 19, 2018).

Under Second Circuit precedent regarding Fed. R. Civ. P. 404(b) and 608(b), these six exhibits are admissible into evidence to demonstrate Laureano's "modus operandi"—or his intent,

plan, and absence of mistake. *Carroll v. Trump*, 124 F.4th 140, 167-69 (2d Cir. 2024) (admitting *Access Hollywood* tape under Rule 404(b) as "evidence of a pattern, or *modus operandi*" where defendant's recorded statements described "conduct that was sufficiently similar in material respects to the conduct alleged" to show pattern "tending to prove the *actus reus*"); *Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) (affirming admission of police officer's similar excessive force incident to show "pattern, intent, and absence of mistake" in § 1983 action).

Moreover, Judge Schiano's suppression ruling in the Johnson case, and the additional six exhibits are also admissible because they are directly relevant to Plaintiff's claim for punitive damages. See *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (internal citations omitted) (with respect to "degree of reprehensibility" in assessment of punitive damages, "aggravating factors" include whether defendant acted "with malice as opposed to mere negligence" and "whether a defendant has engaged in repeated instances of misconduct.")

## ARGUMENT

**I.**     **The Johnson Mapp Hearing Order Is Admissible as Direct Substantive Evidence of Plaintiff's False Arrest, Malicious Prosecution and Evidence Fabrication Claims**

**A.**     **The Second Circuit decision in *Haynes* v. *Acquino* requires admission of Judge Schiano's suppression ruling**

In *Haynes v. Acquino*, 692 F. App'x 670 (2d Cir. 2017) (summary order), the plaintiff brought a § 1983 false arrest case in the Western District of New York. At a pretrial conference, the district court held that a Buffalo City Court suppression ruling that had found no probable cause for plaintiff's arrest was "irrelevant" and "inadmissible," and that even if relevant, "'the prejudicial effect to Defendants of admitting such judicial finding outweighs its potential probative value requiring preclusion under Fed. R. Evid. 403.'" *Id.* at 672. The case proceeded to trial, where the district court admitted suppression ruling but redacted the probable cause determination. *Id.*

3

The jury returned a verdict for defendants, finding—contrary to the City Court's suppression ruling—that probable cause existed for plaintiff's arrest. *Id*. at 673.

The Second Circuit reversed and remanded, holding that the suppression ruling was "relevant under Rule 401 because it was probative on the key issue of whether the Officers falsely arrested" the plaintiff. *Id.* at 672. The court emphasized that suppression rulings have "a tendency to make it more probable that the Officers arrested [plaintiff] without probable cause," and that, "the district court erred when it held that the City Court's Decision was irrelevant and excluded its use to establish that Haynes's arrest lacked probable cause." *Id*.

Critically, the Second Circuit found that the district court "gave inadequate consideration of the probative value of the City Court's Decision" when conducting its Rule 403 analysis. *Id.* at 673. The court determined that excluding the suppression ruling was not harmless error because "the jury found, contrary to the City Court's Decision, that there was probable cause for [plaintiff's] arrest," and the circuit court "[could not] conclude with fair assurance that such exclusion did not substantially influence the jury." *Id.* The Second Circuit's holding establishes that suppression rulings finding lack of probable cause are not only admissible but have substantial probative value that must be adequately weighed in any Rule 403 analysis.

Under *Haynes*, Judge Schiano's suppression ruling is relevant and admissible at trial. Judge Schiano's explicit findings—that Officer Laureano's testimony about the basis for the stop was not credible because it was contradicted by the Blue Light camera video, that there was no probable cause for the stop, and that the stop was unlawful—are directly relevant to essential elements of Plaintiff's false arrest, malicious prosecution, and evidence fabrication claims.

Like the suppression ruling in *Haynes*, Judge Schiano's credibility determination is "probative" on key issues of whether Laureano had probable cause to stop and arrested Plaintiff,

4

and thus relevant to the false arrest and malicious prosecution claims, which are "intertwined" in this case.

The suppression ruling further supports Plaintiff's malicious prosecution claim by demonstrating not only the lack of probable cause but also malice through Laureano's fabrication of the stop's justification, which initiated the criminal proceedings. See *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (malicious prosecution requires initiation without probable cause and malice).

It is also relevant to the evidence fabrication claim because Judge Schiano explicitly determined that Laureano's testimony about the alleged basis for the stop was not credible based on contradictory video evidence. Thus, it supports the fabrication claim, which requires Plaintiff to show that Laureano fabricated information that was "likely to influence a jury's verdict." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (holding that when an officer fabricates "his own account of his or her observations of alleged criminal activity" and conveys it to prosecutors, it violates the right to a fair trial if likely to influence a jury's verdict).

Judge Schiano's suppression ruling addresses the identical police conduct alleged in Plaintiff's claims, making it relevant direct evidence probative of whether Laureano had probable cause for the stop, whether he fabricated his account to initiate proceedings without probable cause, and whether his actions were undertaken with malice. The ruling's determinations provide independent judicial validation that Laureano's actions lacked legal justification and were based on a fabricated narrative. Excluding this evidence would risk the same reversible error identified in *Haynes*, where the suppression ruling's absence influenced the jury's probable cause finding contrary to the criminal court's determination. Thus, under *Haynes*, Judge Schiano's suppression

order is admissible in the direct case as substantive evidence going to the heart of Plaintiff's intertwined false arrest and malicious prosecution claims, and his evidence fabrication claim.

**B.** **The Johnson Case Is Distinguishable from the District Court's Decision on Remand in _Haynes_**

On remand, the district court in _Haynes_ again excluded the suppression ruling, but under circumstances that do not apply here. _Haynes v. Acquino_, 2018 WL 3126725, at *5 (W.D.N.Y. 2018). The _Haynes_ remand court emphasized two critical factors that distinguished the suppression ruling there from Judge Schiano's suppression ruling here.

First, the suppression ruling in _Haynes_ had been reversed on appeal by the Erie County Court, making it "legally null" and "without any effect." _Id._ (citing _Weyant v. Okst_, 101 F.3d 845, 854 (2d Cir. 1996)). Here, by contrast, Judge Schiano's suppression ruling was never appealed and remains valid. There is no question about its legal status or effect.

Second, the _Haynes_ remand court found that since the suppression court had "made no finding with respect to Officers Acquino and Rezabek's credibility", and because the suppression ruling, was reversed on appeal, the prejudice to defendants outweighed its probative value. _Id._ By contrast, here, Judge Schiano, explicitly held that, "The Blue Light camera footage shows that Officer Laureano activated his emergency lights before defendant's vehicle pulled over to the curb. The Court does not, therefore, credit Officer Laureano's testimony as to probable cause to stop defendant's vehicle." (Suppression ruling at 4). This express credibility determination dramatically increases the probative value compared to the _Haynes_ situation.

Moreover, the _Haynes_ remand court's concerns about "undue weight" given to judicial findings, _id._ (citing _Carter v. Burch_, 34 F.3d 257, 265 (4th Cir. 1994)), are inapposite here. The prejudice in this case runs in the opposite direction from that identified by the district court on remand—it is Plaintiff who will be prejudiced if Judge Schiano's ruling is excluded, as he would

be deprived of highly probative judicial findings that directly support his claims. Any concern about potential prejudice to Defendants from admitting the suppression ruling can be effectively mitigated through a limiting instruction to the jury. Such an instruction would be particularly appropriate here because the Court can direct the jury to independently assess the objective video evidence that formed the basis of Judge Schiano's credibility determination. Unlike the typical case where jurors might defer to judicial findings they cannot verify, here the jury will view the same Blue Light camera footage that Judge Schiano reviewed, enabling them to make their own determination about whether Laureano's testimony matches the video evidence. This eliminates any risk that the judicial finding will receive "undue weight."

## C.  The Johnson Case Is Distinguishable from *Brundidge v. City of Buffalo*

The Western District of New York's decision in *Brundidge v. City of Buffalo*, 79 F.Supp.2d 219, 223 (W.D.N.Y. 1999), excluded a suppression ruling, but on grounds that do not apply here. In *Brundidge*, the court excluded the ruling because "Judge McCarthy never indicated whether his decision to dismiss plaintiff's criminal case was based on State law, Federal law, or both." *Id.* The court noted that "New York Search and Seizure Law provides greater protection to criminal defendants than the Fourth Amendment," creating ambiguity about whether the ruling was relevant to federal civil rights claims. *Id.*

Here, there is no such ambiguity. Judge Schiano's suppression ruling applied well-established probable cause standards that derive from the Fourth Amendment to the United States Constitution. While *People v. De Bour*, 40 NY2d 210 (1976), is a New York state case, the probable cause analysis for vehicle stops is fundamentally a federal constitutional concept rooted in the Fourth Amendment. Moreover, Plaintiff's claims include not only federal § 1983 claims but also state law claims for malicious prosecution and violations of due process under the New York

State Constitution—both of which require proof that Laureano lacked probable cause for the stop and initiated prosecution without probable cause under New York law. See *Johnson v. City of Rochester*, 2023 WL 8237560, at \*14-15 (W.D.N.Y. Nov. 28, 2023) (Larimer, J.) (denying summary judgment on state law malicious prosecution claim and due process claim under N.Y. Constitution, finding that "the existence of probable cause to stop plaintiff's vehicle cannot be determined on a motion for summary judgment"). Judge Schiano's finding that Laureano's testimony was "not credible" regarding his claimed observations provides direct evidence relevant to both the federal and state claims, eliminating any concern about ambiguous legal standards that troubled the *Brundidge* court.

## II. The Second Circuit's Inclusionary Approach to Rule 404(b) Permits Admission of Similar Acts Evidence to Prove Intent, Motive, and Plan

The Second Circuit "follows the 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, … or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (citing *United States v. Sappe*, 898 F.2d 878, 880 (2d Cir. 1990)); see also *United States v. Curley*, 639 F.3d 50, 56–57 (2d Cir. 2011); *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012). Rule 404(b)(2) expressly authorizes such evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

### A. Admission In Evidence Is Settled Second Circuit Law

The Second Circuit's most recent guidance in *Carroll v. Trump*, 124 F.4th 140 (2d Cir. 2024) provides valuable guidance on admissibility of Rule 404(b) other acts evidence. While *Carroll* was primarily decided under Rules 413/415—which permit propensity evidence in sexual assault cases—the court also analyzed certain evidence under Rule 404(b)'s traditional framework,

confirming that such evidence remains admissible in evidence when offered for proper, non-propensity purposes.

There, the court admitted testimony from two women who alleged that Trump sexually assaulted them, finding this evidence satisfied Rules 413/415's requirements for sexual assault propensity evidence. Additionally, the court found the *Access Hollywood* tape admissible under Rule 404(b) as "evidence of a pattern, or *modus operandi*, that was relevant to prove that the alleged sexual assault actually occurred (the *actus reus*)." *Id.* at 167. The court explained that evidence of a pattern can be established through "characteristics ... sufficiently idiosyncratic to permit a fair inference of a pattern's existence," and emphasized that "the similarities between the past acts and current allegations 'need not be complete'" but must be "sufficiently similar as to 'earmark them as the handiwork of the accused.'" *Id.* at 168.

Importantly, the court recognized that pattern evidence may also serve the "non-propensity purpose of corroborating witness testimony" under Rule 404(b), provided the "corroboration is direct and the matter corroborated is significant." *Id.* at 169. The court found the evidence "directly corroborative" of the witnesses' testimony about Trump's pattern of behavior and concluded it tended to "confirm that the alleged sexual assault actually occurred."

*Carroll* thus reaffirmed established Second Circuit precedent that Rule 404(b) evidence may be admitted in evidence when offered for proper purposes such as proving *modus operandi*, corroborating testimony, or establishing that the charged act occurred. *See United States v. Garnes*, 354 F. App'x 557, 559 (2d Cir. 2009) (affirming admission of prior acts during government's case-in-chief to prove intent and knowledge where defendant's mental state was contested).

**B. <u>Civil Rights Cases Apply the Same Rule Where State of Mind Is Disputed</u>**

In civil rights litigation, federal courts consistently admit Rule 404(b) evidence of similar acts to prove a defendant's intent, motive, or plan, especially where credibility and state of mind are central issues. The Second Circuit's decision in *Ismail v. Cohen,* 899 F.2d 183 (2d Cir. 1990), provides foundational guidance on this issue. In *Ismail,* the court affirmed the admission of evidence that a police officer participated in a similar incident of excessive force shortly after the incident at issue, holding that the district court did not abuse its discretion in admitting this Rule 404(b) evidence to show "pattern, intent, and absence of mistake." *Id.* at 188. The Second Circuit emphasized that such evidence was properly admissible under Federal Rules of Evidence 403 and 404(b), noting that the district court had "set forth several legitimate reasons for the admission of the [similar act] evidence (pattern, intent, absence of mistake, etc.) and determined that the risk of unfair prejudice did not substantially outweigh the probative value of the evidence." *Id.* at 188-89. Significantly, the court rejected the defendants' contention that the similar act evidence constituted an abuse of discretion, establishing that post-incident misconduct can be highly probative of an officer's intent and pattern of behavior.

In *Lewis v. City of Albany Police Department*, 547 F. Supp. 2d 191 (N.D.N.Y. 2008), the court admitted evidence that an officer had used excessive force in prior incidents involving African American suspects. The court found that this evidence was relevant to the officer's motive and intent for using excessive force against the African American plaintiff in that case, explaining that such incidents provided critical context to the plaintiff's allegations and were not unduly prejudicial. *Id*. at 200–02. The court stressed that the "substantial probative value of the relevant prior complaints is not substantially outweighed by the speculative danger of unfair prejudice, particularly given the limiting instructions to the jury." *Id*. at 200. Thus, *Lewis* squarely supports admission here, where Officer Laureano's prior misconduct—fabricating probable cause and

giving false testimony—bears directly on his motive and intent in the present case related to the unlawful stop of Devin Johnson and then providing false testimony to nullify the constitutional deficiencies related to the stop.

Other courts have consistently applied the same inclusionary principles. See *Hynes v. LaBoy*, 887 F. Supp. 618, 624–25 (S.D.N.Y. 1995) (admitting prior use-of-force incidents in § 1983 case to prove malice, intent, and absence of mistake); *Vilkhu v. City of New York*, 2009 WL 537495, at \*3 (E.D.N.Y. Mar. 3, 2009) (admitting pattern evidence in civil rights lawsuit to show identity); *Fennell v. Horvath*, 2020 WL 3429395, at \*3–4 (E.D. Pa. June 23, 2020) (admitting "strikingly similar" disciplinary history to show retaliatory intent, rejecting temporal remoteness argument).

These decisions mirror the Second Circuit's reasoning in *Carroll*: where prior acts share distinctive features with the misconduct alleged, they are admissible to prove intent, motive, and plan—even if involving different victims or separated by time—because they directly rebut claims of accident, mistake, or fabrication.

**C.    Criminal Cases Apply the Same Rule Where State of Mind Is Disputed**

The Western District of New York's comprehensive analysis in *United States v. Krug*, 2017 WL 907817 (W.D.N.Y. Mar. 8, 2017), provides particularly instructive guidance on admitting Rule 404(b) evidence in police misconduct cases where intent is disputed. In *Krug*, a Buffalo police officer was charged with three counts of using excessive force in violation of 18 U.S.C. § 242, with incidents spanning over four years. *Id.* at \*1. The court addressed whether Rule 404(b) would allow the government to prove one excessive force incident by using evidence of other excessive force incidents to establish the officer's "willful" state of mind—the specific intent required under § 242. *Id.* at \*2.

The *Krug* court recognized that § 242 is a specific intent crime requiring proof that the defendant had "a specific intent to deprive a person of a federal right," not merely general intent to use force. *Id.* at *3 (citing *Screws v. United States*, 325 U.S. 91, 103 (1945)). The court explained that even where a defendant concedes he "intended to use physical force" but claims it "was appropriate under the circumstances," the defendant's specific intent to violate constitutional rights remains squarely at issue. *Id.* This is precisely analogous to cases where officers claim their conduct was justified or reasonable—the specific intent to fabricate evidence or provide false testimony remains contested even if the officer admits to the underlying conduct.

Critically, the *Krug* court found the other-acts evidence "highly probative of whether the Defendant acted 'willfully'" because it addressed the unique challenge of proving specific intent through circumstantial evidence. *Id.* at *5. The court noted that "it is even more difficult to prove a unique type of specific intent, such as that required by § 242, without circumstantial evidence," and that when "there are few ways to prove an element of a crime, any evidence that tends to prove that element necessarily has more probative value than it otherwise might." *Id.* at *4. The court emphasized that evidence of prior excessive force incidents was particularly valuable where it included "the results of prior acts"—such as internal investigations and civil lawsuits—because this provided "evidence of the defendant's knowledge that use of excessive force implicates federal constitutional rights." *Id.*

The *Krug* analysis directly supports admission of Officer Laureano's pattern of misconduct here. Like the excessive force incidents in *Krug*, Laureano's prior cases demonstrate his knowledge that fabricating probable cause and providing false testimony violate clearly established constitutional rights. The judicial findings in *Howard*, *Brookins*, *Parsons*, and *Allen* serve the same function as the internal investigations and lawsuits in *Krug*—they provide concrete evidence that

Laureano was "on notice" that his conduct was constitutionally impermissible. This makes his repeated similar conduct in the Johnson case all the more probative of his willful intent to deprive Johnson of his constitutional rights.

Other courts within this Circuit have applied the same principle. *See, e.g.*, *United States v. Cavallaro*, 553 F.2d 300, 305 (2d Cir. 1977) (upholding admission of subsequent acts as "highly probative" of intent and common plan); *United States v. Benedetto*, 571 F.2d 1246, 1248–49 (2d Cir. 1978) (reversing exclusion of prior misconduct sharing "unusual characteristics" with charged conduct); *United States v. Malka*, No. 21-cr-220, 2022 WL 16855230, at *4–5 (S.D.N.Y. Nov. 10, 2022) (admitting later acts in the government's case-in-chief where the defendant "followed a substantially identical playbook" and the conduct was "highly probative" of intent and knowledge); *United States v. Guerrero*, 882 F. Supp. 2d 463, 494–95 (S.D.N.Y. 2011) (admitting drug-trafficking acts in case-in-chief to establish knowledge and intent); *United States v. Clanton*, 515 F. Supp. 3d 693, 699–700 (W.D.N.Y. 2021) (admitting prior firearm possession in case-in-chief to prove knowing possession in felon-in-possession prosecution); *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006), *aff'd*, 278 F. App'x 75 (2d Cir. 2008) (admitting prior fraudulent conduct in case-in-chief to prove knowledge and intent).

The Supreme Court has likewise recognized that a proponent is entitled to present a coherent narrative of the charged conduct, including relevant other-acts evidence that sheds light on contested elements. *See Old Chief v. United States*, 519 U.S. 172, 186–87 (1997). So long as the purpose is proper and the probative value is not substantially outweighed by unfair prejudice, there is no requirement to reserve such proof for rebuttal.

**III.    Under Rule 404(b) and *Carroll* v. *Trump*, The Videos Of Laureano's Two Stops Of Nishsean Napier Are Admissible**

The Second Circuit's decision in *Carroll v. Trump*, 124 F.4th 140 (2d Cir. 2024), provides direct guidance for admitting Laureano's video-recorded stops of Nishsean Napier. In *Carroll*, the court admitted the *Access Hollywood* tape under Rule 404(b) as "evidence of a pattern, or *modus operandi*, that was relevant to prove that the alleged sexual assault actually occurred." *Id.* at 167. Like the *Access Hollywood* tape, the Napier videos are objective recordings that document a pattern of similar misconduct by the same defendant.

**A.  The Napier videos show the same pattern analysis applied in _Carroll_**

The *Carroll* court found the *Access Hollywood* tape admissible because it described "conduct that was sufficiently similar in material respects to the conduct alleged" to show "the existence of a pattern tending to prove the *actus reus*." *Id.* at 169. The court emphasized that "the similarities between the past acts and current allegations 'need not be complete'" but must be "sufficiently similar as to 'earmark them as the handiwork of the accused.'" *Id.* at 168.

The Napier videos satisfy this standard. Both stops show Laureano targeting young Black men for pretextual stops without articulable suspicion, demanding identification without legal justification, and providing no coherent explanation when challenged. This mirrors his conduct in the Johnson case. The fact that Laureano targeted the identical victim twice within one year, with no enforcement action taken in either instance, demonstrates deliberate harassment rather than good-faith policing.

**B.  The videos of the Napier stops are highly probative like the Access Hollywood tape in _Carroll_**

Just as the *Carroll* court found the *Access Hollywood* tape provided objective evidence of Trump's pattern of conduct, the Napier videos eliminate ambiguity about Laureano's actions and motivations. The recordings capture Laureano's inability to articulate legitimate reasons for the

14

stops and his evasiveness when directly challenged about racial profiling—precisely the conduct alleged in the Johnson case.

### C.  The evidence serves proper Rule 404(b) purposes

The *Carroll* court recognized that pattern evidence serves the "non-propensity purpose of corroborating witness testimony" and proving that the charged act occurred. *Id.* at 169. Here, the Napier videos corroborate Johnson's account and directly rebut Laureano's claim of legitimate law enforcement justification. The temporal sequence—with Johnson's stop occurring after both Napier incidents—shows this was not an isolated mistake but part of an ongoing practice.

Under *Carroll*'s framework, the Napier videos are admissible under Rule 404(b) to prove Laureano's *modus operandi*, intent, and plan, and to establish that his stop of Johnson was part of a deliberate pattern of unconstitutional conduct.

### IV.  The Four Prior Judicial Findings in Allen, Howard, Parsons, and Brookins that Laureano's Testimony Not Credible Are Admissible

### A.  The four prior judicial findings that Laureano testified untruthfully are admissible

Admission of the four prior suppression hearings fits squarely in the Second Circuit model. Plaintiff's theory is that Officer Laureano fabricated probable cause and gave false testimony in the incident involving Devin Johnson, consistent with a repeated and deliberate plan to shield unconstitutional conduct. This intent and plan are central, disputed elements of Plaintiff's claims.

Plaintiff alleges that Laureano initiated the August 24, 2019 traffic stop without probable cause, fabricated allegations in his paperwork to justify the stop, and then testified falsely in subsequent judicial proceedings. These allegations are at the core of Plaintiff's false arrest, malicious prosecution, evidence fabrication, and due process claims. Justice Charles Schiano's suppression ruling in Mr. Johnson's underlying criminal case squarely supports those claims: after

reviewing the body-worn camera footage, the Justice Schiano determined that Laureano's asserted basis for the stop was not supported by the video evidence and thus not credible. Laureano, however, offers an innocent explanation, claiming that he did have probable cause to initiate the stop. The suppression ruling directly refutes this claim and establishes that Laureano misrepresented the facts to sustain the legality of his actions.

This is not an isolated incident. In *People v. Howard*, Indictment No. 2017-0480 (N.Y. Sup. Ct., Monroe Cnty. Sept. 14, 2020), the court—relying in part on explicit admissions from the Monroe County District Attorney's Office—found that Laureano fabricated evidence, provided false testimony and violated Mr. Howard's constitutional rights, resulting in the vacatur of his conviction. Critically, Laureano testified falsely twice—at a Mapp Hearing and at trial—that he had returned Mr. Howard's cell phone to him at the time of arrest. This was not a trivial point: Mr. Howard alleged that he had been video recording the interaction on his phone and that the footage would have shown that Laureano lied about the basis for the stop and arrest. By falsely testifying about the phone, Laureano eliminated the possibility that this exculpatory evidence could surface. This mirrors Justice Schiano's findings in Devin Johnson's underlying criminal case, where he held that the objective video evidence refuted Laureano's claimed justification for the stop; thus, the *Howard* suppression ruling is relevant to demonstrating Laureano's "modus operandi" or "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident", and thus is admissible under Rule 404(b).

In *United States v. Brookins*, No. 17-CR-6019, 2018 WL 6629160 (W.D.N.Y. Dec. 19, 2018), Judge Siragusa found Laureano's stated justification for a vehicle search "not credible" and directly contradicted by other officers' testimony. The court concluded that Laureano had manufactured his justification after the fact to avoid suppression—an almost identical sequence to

*Johnson*, where the court found that Laureano's claimed observations were not supported by the contemporaneous video evidence and appeared to have been fabricated to legitimize an unlawful stop.

*People v. Parsons*, Indictment No. 2019/0597 (N.Y. Sup. Ct., Monroe Cnty. Dec. 10, 2019), likewise involved Laureano pursuing and detaining a suspect without any concrete, articulable basis. Justice Schiano suppressed the recovered firearm after finding that the officers—including Laureano—had no reasonable suspicion to initiate the pursuit. The judge highlighted that Laureano's vague assertion that Parsons "might" be engaged in criminal activity was unsupported by any observation and contradicted by the absence of testimony about the People's own claimed "grabbing at the waistband" narrative. This matches the Johnson pattern: initiating a stop based on speculative or invented observations, unsupported by actual evidence, and later attempting to justify the stop through testimony the court ultimately found unconvincing.

Finally, in *People v. Allen*, Indictment No. 2021-0027A (N.Y. Sup. Ct., Monroe Cnty. Nov. 23, 2021), Judge Bailey Turner suppressed evidence obtained from Laureano's warrantless home entry, rejecting his claims that consent or exigent circumstances justified his actions. The court found that Laureano entered the residence without permission, observed no ongoing emergency, and later attempted to obtain consent after the fact—a "papering over" of an unlawful search. While factually involving a home entry rather than a vehicle stop, Allen follows the same pattern: initiating a police action without legal authority, then manufacturing a post hoc justification to survive judicial scrutiny.

Across *Johnson*, *Howard*, *Brookins*, *Parsons*, and *Allen*, the pattern is unmistakable and shares the "unusual characteristics" and "substantially identical playbook" identified in cases such as *United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978), *United States v. Cavallaro*, 553 F.2d

300 (2d Cir. 1977), and *United States v. Malka*, No. 21-cr-220, 2022 WL 16855230 (S.D.N.Y. Nov. 10, 2022). The pattern evidence is equally compelling under civil rights precedent, as courts consistently recognize that an officer's repeated similar misconduct is highly probative of intent and motive. *See Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990) (admitting post-incident excessive force evidence to show "pattern, intent, and absence of mistake"); *Lewis v. City of Albany Police Department*, 547 F. Supp. 2d 191, 200–02 (N.D.N.Y. 2008) (admitting evidence of officer's prior excessive force incidents involving African American suspects as relevant to motive and intent); *Hynes v. LaBoy*, 887 F. Supp. 618, 624–25 (S.D.N.Y. 1995) (admitting prior use-of-force incidents to prove malice, intent, and absence of mistake); *Fennell v. Horvath*, No. 19-4183, 2020 WL 3429395, at *3–4 (E.D. Pa. June 23, 2020) (admitting "strikingly similar" disciplinary history to show retaliatory intent). This case presents an even stronger foundation for admission under *United States v. Krug*, 2017 WL 907817, at *4–5 (W.D.N.Y. Mar. 8, 2017), which found other-acts evidence "highly probative" in police misconduct cases because "there are few ways to prove an element of a crime" like specific intent "without circumstantial evidence," particularly where prior incidents put the officer "on notice" that his conduct violated constitutional rights.

In each case, Laureano initiated law enforcement action without lawful grounds, fabricated or embellished his justification after the fact, and was ultimately found by a court to have provided testimony that was not credible because it was contradicted by objective evidence or by other witnesses. This recurring modus operandi is highly probative of intent, knowledge, absence of mistake, and a common plan—precisely the purposes for which Rule 404(b) permits admission in evidence. Because Laureano's knowledge, intent, and absence of mistake are at the heart of this case, these prior acts are not collateral attacks on credibility but direct, substantive proof of a contested element. As in *Garnes*, *Guerrero*, and *Clanton*, their probative value is substantial, and

18

any risk of unfair prejudice can be mitigated through a limiting instruction. The Second Circuit's inclusionary approach allows—and precedent affirms—admission of such evidence.

V.    **Judge Schiano's Suppression Ruling and the Six Other Exhibits Are Admissible in Evidence to Prove Essential Elements for Punitive Damages Under the *Gore* Reprehensibility Analysis**

A.    **Legal Framework for Punitive Damages in § 1983 Cases**

Punitive damages are available in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-75 (1996), established three guideposts for determining whether a punitive damages award is excessive: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm and the punitive damages award; and (3) the difference between the remedy and civil penalties in comparable cases.

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. The Supreme Court identified three aggravating factors that courts should consider when assessing reprehensibility: "(1) whether a defendant's conduct was violent or presented a threat of violence; (2) whether a defendant acted with malice as opposed to mere negligence; and (3) whether a defendant has engaged in repeated instances of misconduct." *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (citing *Gore*, 517 U.S. at 576).

"The third sub-factor requires inquiry into whether defendant has engaged in similar conduct aimed at individuals other than plaintiff." *Komlosi v. Fudenberg*, No. 88 CIV. 1792 HBP, 2000 WL 351414, at *18 (S.D.N.Y. Mar. 31, 2000), *adhered to on reconsideration sub nom. Komlosi v. New York State Off. of Mental Retardation*, No. 88 CIV. 1792 (HBP), 2000 WL 554226

19

(S.D.N.Y. May 4, 2000), and *aff'd*, No. 01-89(XAP), 2002 WL 34244996 (2d Cir. May 13, 2002); *see also, Ortiz–Del Valle v. National Basketball Ass'n*, 42 F.Supp.2d 334, 345 (S.D.N.Y.1999) (considering a finding of a continuing violation of misconduct, defined as proof of ongoing discriminatory policies or practices towards persons other than the plaintiff, to determine whether defendant's activity was an "aggravating factor" under the Gore analysis).

### B. **Judge Schiano's suppression ruling is relevant to Plaintiff's punitive damages claim**

Judge Schiano's suppression ruling provides direct judicial evidence of the reprehensibility factors identified in *Gore* and applied by the Second Circuit. Specifically, the ruling demonstrates that Laureano "acted with malice as opposed to mere negligence"—the second *Gore* reprehensibility factor. *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003). Judge Schiano's finding that "The Blue Light camera footage shows that Officer Laureano activated his emergency lights before defendant's vehicle pulled over to the curb" and that he "does not, therefore, credit Officer Laureano's testimony" establishes that Laureano's false testimony was not the product of confusion or honest mistake, but deliberate fabrication.

The third *Gore* reprehensibility factor examines "whether a defendant has engaged in repeated instances of misconduct." *Id.* Judge Schiano's ruling in the Johnson case does not stand alone—it is part of a documented pattern of similar judicial findings that Laureano fabricated testimony, as more fully demonstrated in the discussion of the *Allen*, *Howard*, *Parsons*, and *Brookins* rulings below. This pattern is particularly significant because several of these adverse credibility findings preceded the Johnson incident, putting Laureano on explicit notice that his conduct violated constitutional rights.

The temporal sequence of adverse credibility findings is particularly damaging to any claim of good faith. By August 24, 2019—the date of the Johnson incident—Laureano had already been

found not credible by Judge Siragusa in *United States v. Brookins*, No. 17-CR-6019, 2018 WL 6629160 (W.D.N.Y. Dec. 19, 2018). In *Brookins*, the prosecution itself abandoned its marijuana-smell justification for a vehicle search on the day Laureano was scheduled to provide additional testimony, after his initial testimony was directly contradicted by Officer Salvatore Amato, who "searched the car for 20 minutes inside and never smelled marijuana." The government's withdrawal of its theory based on Laureano's testimony demonstrates that even prosecutors recognized his credibility problems—putting him on clear notice that fabricating testimony would not only be detected by courts but would undermine prosecutions.

This notice is critical to the punitive damages analysis. As the Second Circuit recognized in *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996), an officer's "training as a police officer gave him notice as to the gravity of misconduct under color of his official authority," and when combined with actual judicial findings that his testimony was not credible, Laureano cannot claim he was unaware that fabricating probable cause and providing false testimony violated clearly established constitutional rights. See also *Garnett v. Undercover Officer C0039*, 2015 WL 1539044, at *14 (S.D.N.Y. Apr. 6, 2015) (noting that "the fabrication of evidence by a police officer displays not just a callous indifference to the rights of the arrestee, but also constitutes an egregious abuse of authority" that "betrays the trust that society has placed in its law enforcement personnel, and distorts our system of justice," making punitive damages particularly appropriate).

The fact that Laureano continued this pattern of fabrication after being found not credible in *Brookins*—and after seeing prosecutors abandon their case rather than rely on his testimony—demonstrates the kind of "reckless or callous indifference to federally protected rights" that warrants substantial punitive damages. *Smith v. Wade*, 461 U.S. at 56. This evidence directly addresses the jury's need to assess whether Laureano's conduct in the Johnson case was an isolated

incident or part of a deliberate, ongoing practice that persisted despite clear notice of its unconstitutionality.

C. **The Napier Videos and four suppression rulings in _Allen_, _Howard_, _Parsons_, and _Brookins_ are relevant to proving the "malice" aggravating factor**

The second _Gore_ reprehensibility factor—whether defendant acted with malice rather than mere negligence—is central to Plaintiff's punitive damages claim. The six exhibits provide powerful evidence that Laureano's conduct was not the result of split-second judgment calls or good-faith mistakes, but rather deliberate, malicious violations of constitutional rights.

### 1. *The Napier Videos Demonstrate Deliberate Targeting and Malicious Intent*

The two video recordings of Laureano's stops of Nishsean Napier—on April 1, 2017, and March 15, 2018—show malicious conduct that goes far beyond negligent policing. In the April 1, 2017 video, Laureano stops Napier directly in front of his own home and, when challenged to justify the detention, can only claim that Napier "looked back" at him after exiting his car and walking towards his home—a patently insufficient basis for a constitutional stop. When Napier directly challenges the stop's racial motivation, asking "Because I've got dreads? Because I'm a Black man with dreads?" Laureano becomes evasive and fails to provide any substantive response.

The March 15, 2018 video confirms this was not negligent policing but deliberate harassment. Laureano again stopped Napier without lawful justification, forcibly removed him from his vehicle, handcuffed him, and ultimately released him without any charges. The fact that Laureano targeted the identical victim twice within one year demonstrates malicious intent to harass rather than good-faith law enforcement.

### 2. *The Suppression Rulings Prove Deliberate Fabrication Rather Than Honest Mistakes*

The four suppression rulings provide judicial determinations that Laureano's testimony was deliberately false rather than negligently mistaken. In *United States v. Brookins*, Case No. 17-CR-6019 (W.D.N.Y. Sept. 11, 2018), Judge Siragusa found Laureano's testimony about smelling marijuana so unreliable that the government abandoned that theory of prosecution entirely. The court noted that "It was certainly as well understandable because of the testimony that Officer Laureano himself offered at trial where he said he thought the smell was coming from the Durango, but wasn't 100 percent certain." Judge Siragusa also highlighted that another officer, Salvatore Amato, "searched the car for 20 minutes inside and never smelled marijuana," directly contradicting Laureano's claim. The government's abandonment of their marijuana-smell justification on the day Laureano was scheduled to provide additional testimony speaks volumes about the prosecution's own assessment of his credibility.

In *People v. Parsons*, Indictment No. 2019/0597 (N.Y. Sup. Ct., Monroe Cnty. Dec. 2, 2019), Justice Schiano rejected Laureano's attempts to justify an unlawful pursuit and detention. Laureano admitted under cross-examination that Parsons "committed no crime" and "wasn't being charged with anything," yet testified that "I've taken drugs off Mr. Parsons. I've taken fake guns from Mr. Parsons and his associates. They are out there every day engaging in some type of criminal activity." The court found this reasoning insufficient, noting that police had "determined before even approaching defendant to detain and search him based on nothing more than speculation that, at some point, Vanhorn may have passed the gun they suspected him [Vanhorn] of carrying to defendant." Justice Schiano granted the suppression motion, finding that "the police did not have the necessary reasonable suspicion of criminal activity to initiate a chase of defendant."

In *People v. Howard*, Indictment No. 0154/2016 (N.Y. Sup. Ct., Monroe Cnty. Sept. 14, 2020), the court found that Laureano provided testimony at both a suppression hearing and at trial "that did not comport with the facts." Specifically, Laureano testified falsely that he had "immediately returned" Mr. Howard's cell phone to him "on the date of his arrest," when the undisputed facts established that "the phone was secured with the property clerk on the date of the defendant's arrest." This false testimony was particularly significant because Mr. Howard alleged the phone contained video evidence that would have proven Laureano lied about the basis for the stop. The court found that this violation of Howard's right to exculpatory evidence under *Brady v. Maryland* "may have been obtained in violation of his federal and New York State constitutional rights" and granted Howard's motion to vacate his conviction. The court agreed with Mr. Howard that had this impeachment evidence been disclosed, "it cannot be said that had such impeachment been on display to the jury such would not have effected the jury's ultimate verdict."

In *People v. Allen*, Indictment No. 2021-0027A (Monroe Cnty. Ct. Nov. 19, 2021), Judge Bailey Turner found that Laureano's warrantless entry into Allen's apartment violated her constitutional rights and that his subsequent actions were designed to manufacture consent after an illegal search. The court found that "Officer Laureano coerced Defendant Allen into consenting by unhandcuffing her, referring to her as 'doll', and submitting an alternative basis for her consent. He told her that he just wanted her to sign a form so that he could say there was nothing in the home." Judge Turner determined that "Officer Laureano coaxed Defendant Allen to consent to try to justify his initial entry and curious hunch to search the premises," and that "Defendant's constitutional rights were violated as a result of the illegal search of her home."

These judicial findings demonstrate that Laureano's false testimony was not the result of confusion, memory lapses, or good-faith mistakes, but rather deliberate fabrication designed to shield unconstitutional conduct from judicial scrutiny.

### D.  The Six Exhibits Establish a Clear Pattern of Repeated Misconduct

The third *Gore* reprehensibility factor—whether defendant engaged in repeated instances of misconduct—is powerfully established by the temporal span and consistency of Laureano's violations. The six exhibits span from 2017 to 2021, with the Johnson incident occurring on August 24, 2019, directly in the middle of this pattern.

As the Second Circuit recognized in *Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996), evidence of repeated misconduct is particularly damaging in police misconduct cases: "A finding of repeated misconduct is supportable by testimony in the trial transcript as to other complaints against Edwards charging excessive force. Although there is no evidence concerning any formal investigation of these complaints, the jury did hear testimony from Edwards about them." *Id*. at 810.

Here, the evidence is far stronger than in *Lee*. Rather than mere complaints, Plaintiff has judicial findings in four separate cases that Laureano fabricated evidence and provided false testimony, plus objective video evidence of his harassment of Napier on two separate occasions. This pattern demonstrates that Laureano's misconduct in the Johnson case was not an isolated incident but part of a deliberate, ongoing practice of constitutional violations.

### E.  Pattern evidence is admissible in police misconduct cases where punitive damages are sought

Federal courts admit evidence of similar acts in § 1983 cases where punitive damages are at issue because such evidence is directly probative of the *Gore* reprehensibility factors. In *Hardy v. Adams*, 2024 WL 838689, at *10 (N.D.N.Y. 2024), the court noted that "the Second Circuit has

further noted that a law enforcement officer's 'abuse of a position of respect and authority to commit malicious ... acts of violence,' as the jury found to have happened here, is 'reprehensible' and constitutes the sort of misconduct that punitive damages awards serve to deter." (quoting *DiSorbo*, 343 F.3d at 188).

The Second Circuit has specifically recognized that evidence of an officer's pattern of misconduct is particularly probative in determining punitive damages because it demonstrates the malicious nature of the conduct. *See DiSorbo*, 343 F.3d at 186 (noting that "aggravating factors" for reprehensibility analysis include "whether defendant acted with malice as opposed to mere negligence" and "whether defendant has engaged in repeated instances of misconduct").

Importantly, in justifying reductions of punitive damages awards, Courts routinely cite a plaintiff's failure to demonstrate a pattern of similar misconduct. See *Milfort v. Prevete*, 3 F. Supp. 3d 14, 25 (E.D.N.Y. 2014) ("Furthermore, the record does not indicate that the Defendant engaged in repeated acts of similar misconduct. Given these findings, an award of $40,000, while partially substantiated, exceeds reasonable bounds."); *Fernandez v. N. Shore Orthopedic Surgery & Sports Med., P.C.*, 79 F. Supp. 2d 197, 207–08 (E.D.N.Y. 2000) ("There is no evidence that defendant's actions in this case were violent or presented a threat of violence; nor is there any evidence the defendant has engaged in repeated instances of misconduct with respect to other employees. Thus, this Court finds there was a low degree of reprehensibility in this case."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) (in reversing and remanding punitive damages award, finding that "[t]he Campbells have identified scant evidence of repeated misconduct of the sort that injured them.").

F. **The Seven Exhibits Are More Probative of Reprehensibility Than Pattern Evidence in Other Approved Cases**

The evidence here is stronger than pattern evidence admitted in other police misconduct cases. In *Lee v. Edwards*, the Second Circuit found that "testimony in the trial transcript as to other complaints against Edwards charging excessive force" was sufficient to establish repeated misconduct, even though "there is no evidence concerning any formal investigation of these complaints." 101 F.3d at 810.

Here, by contrast, Plaintiff has robust evidence of both malice and repeated misconduct. Most significantly, Judge Schiano's suppression ruling in the underlying Johnson criminal case provides the strongest possible foundation for punitive damages. Unlike cases where pattern evidence relates to separate incidents involving different victims, Judge Schiano's ruling directly addresses the very conduct at issue in this § 1983 action. The court's finding that "The Blue Light camera footage shows that Officer Laureano activated his emergency lights before defendant's vehicle pulled over to the curb" and that he "does not, therefore, credit Officer Laureano's testimony" supports Plaintiff's claim that Laureano deliberately fabricated evidence and lied in his sworn testimony about the stop. This is critical evidence for the "malice" reprehensibility element.

The additional exhibits demonstrate this was not an isolated lapse in judgment but part of an established pattern. Four separate suppression rulings spanning multiple years—*Allen*, *Howard*, *Parsons*, and *Brookins*—contain judicial findings of deliberate fabrication. Objective video evidence shows Laureano's harassment of the same victim, Nishsean Napier, on two separate occasions. This pattern spans from 2017 to 2021, with the Johnson incident occurring in August 2019, directly in the middle of this documented misconduct. Multiple judges have made express credibility determinations that Laureano's testimony was not credible. Most significantly, Laureano had already been found not credible in *Brookins* before the Johnson incident occurred,

with prosecutors abandoning their case rather than rely on his testimony—providing him clear notice that his conduct was unconstitutional.

This combination provides strong proof of both malice and repeated misconduct that could be presented to a jury. Unlike *Lee v. Edwards*, where there were merely "complaints" without formal investigations, Plaintiff here has a judicial finding of deliberate fabrication in the underlying Johnson incident itself, multiple additional judicial findings of similar fabrication in separate proceedings, objective video evidence of harassment, and clear proof that Laureano had notice his conduct was unconstitutional before the Johnson incident occurred. This evidence establishes not only that Laureano acted with malice in the Johnson case, but that he did so as part of a deliberate, ongoing practice that persisted despite explicit judicial notice that his conduct violated clearly established constitutional rights. Such evidence provides a foundation for punitive damages under the *Gore* reprehensibility analysis.

**VI.    Alternatively, Even if Inadmissible, the Four Prior Judicial Findings in *Allen*, *Howard*, *Parsons*, and *Brookins* that Laureano's Testimony Was Not Credible and the Two Napier Videos Are Proper Subjects for Cross Examination of Laureano**

Even if the Court concludes the prior suppression rulings and Napier videos are not admissible into evidence, they are admissible for cross-examination under Rule 608(b) and *United States v. White*, 692 F.3d 235, 248 (2d Cir. 2012).

**A.    The White Factors Support Cross-Examination**

The Second Circuit permits cross-examination when a witness's "testimony in other cases had been criticized by a court as unworthy of belief." *White*, 692 F.3d at 248. The *White* factors overwhelmingly favor admissibility here.

All four suppression hearings were formal judicial proceedings where Laureano testified under oath, satisfying Factor 3. This formality weighs heavily in favor of admissibility, as perjury

in judicial proceedings strikes at the heart of the justice system. The lies concerned central, outcome-determinative matters—the legal justifications for stops, searches, and entries—satisfying Factor 4. In *Howard*, Laureano falsely testified about returning a cell phone that allegedly contained exculpatory video evidence. In *Brookins*, *Parsons*, and *Allen*, he fabricated the very legal justifications for his police actions. Laureano's motive in each prior case mirrors his motive here: avoiding findings of constitutional violations that could expose him to civil liability. This identical motive (Factor 6) is particularly probative of his character for truthfulness. And the temporal proximity of these findings—spanning 2018 to 2021, with Johnson's incident in August 2019—demonstrates that Laureano's false testimony was part of a continuing pattern (Factor 5).

### B. *Gibbs* v. *Borona* provides guidance

In *Gibbs v. Borona*, 2021 WL 1171558 (D. Conn. 2021), the plaintiff sought to cross-examine Detective Borona about two prior judicial rulings: *United States v. Calhoun,* 2017 WL 1078634 (D. Conn. 2007) and *Russo v. City of Bridgeport,* 479 F.3d 196 (2d Cir 2007). The court's treatment of these two rulings provides clear guidance here.

The court allowed cross-examination about *Calhoun* but precluded *Russo*. The *Calhoun* ruling was recent and involved an explicit adverse credibility finding by Judge Underhill at a suppression hearing, where he determined that Borona's claim that he believed exigent circumstances existed was "not credible" and reflected a "bad faith violation of the Fourth Amendment." The *Gibbs* court emphasized that "a finding that a witness is not credible is not fundamentally different from a finding that the witness lied. It often just reflects a fact finder's desire to use more gentle language." *Id.* at \*6 (quoting *White*, 692 F.3d at 249). Because *Calhoun* contained a direct credibility determination tied to sworn testimony in a recent proceeding, the court held it was probative and admissible for impeachment.

By contrast, the court precluded use of *Russo*, finding it distinguishable on two critical grounds: temporal remoteness and lack of an actual credibility finding. The court noted "the lengthy passage of time" between *Russo* (2007) and the *Gibbs* trial (2021)—a fourteen-year gap—and that *Russo* arose only in the context of a summary judgment ruling that credited a plaintiff's allegations for purposes of that motion, without "an actual finding by a court that Detective Borona was not credible." These factors rendered impeachment with *Russo* of little probative value while carrying dangers of unfair prejudice and confusion.

Here, the four suppression rulings involving Laureano align with the admissible *Calhoun* ruling, not the excluded *Russo* decision. They are recent (2018-2021), involve explicit judicial credibility determinations made after adversarial proceedings under oath, and contain direct findings that Laureano was "not credible" or provided false testimony. Like *Calhoun*, they provide probative impeachment value that substantially outweighs any risk of prejudice.

### C.  <u>The Napier Videos Satisfy Rule 608(b)</u>

The Napier videos show specific instances of conduct probative of truthfulness—Laureano conducting stops without justification and being unable to articulate legitimate reasons when challenged. This pattern directly impeaches his credibility regarding the Johnson stop. The conduct did not result in criminal convictions, satisfying Rule 608(b)'s limitation, and the temporal proximity (2017 and 2018 videos, with the Johnson incident in 2019) makes this evidence particularly probative.

Cross-examination about these prior findings serves the truth-seeking function of trials. As the Second Circuit emphasized in *United States v. Cedeno*, 644 F.3d 79, 82–83 (2d Cir. 2011), courts must provide "wide latitude" to cross-examine witnesses, and this principle applies with even greater force to civil rights plaintiffs challenging police conduct. Any prejudice can be

addressed through limiting instructions. *See, e.g., Martinez v. City of New York*, No. 16-CV-79, 2022 WL 17090267, at *18-19 (E.D.N.Y. Nov. 18, 2022) (concluding that although evidence of officers' failure to Mirandize plaintiff "may be unfairly prejudicial," this risk "does not substantially outweigh the evidence's probative value" and ordering that "the Court shall limit the potential prejudice from this evidence" through limiting instructions "once when the evidence is introduced during trial, and again before deliberations").

## VII.   Additional Exhibits From The Darius Howard Criminal Case And Federal Civil Rights Action Are Admissible

Plaintiff seeks to introduce additional evidence from the criminal prosecution of Darius Howard and from the related federal civil rights action. The proposed exhibits include transcripts from the Huntley/Mapp hearings, grand-jury and trial testimony of Officer Jonathan Laureano and other witnesses in *People v. Howard*, Indictment No. 2016-0154 (N.Y. Sup. Ct., Monroe Cnty.), as well as deposition transcripts from the civil rights case *Howard v. City of Rochester*, No. 23-cv-6561 (W.D.N.Y.).

### A.   Relevance, Modus Operandi, and Rule 404(b)

The *Howard* case provides direct proof of Laureano's pattern of fabricating evidence and lying under oath. In that case, Laureano twice swore—at a Huntley hearing and at trial—that he had returned Mr. Howard's phone at the time of arrest. In fact, chain-of-custody records showed Laureano vouchered the phone as evidence the next day. The Monroe County District Attorney later conceded the testimony was false, and Mr. Howard's conviction was vacated on constitutional grounds. The state court specifically found that Laureano's conduct deprived Howard of exculpatory video evidence.

This conduct mirrors the Johnson case: in both, Laureano initiated an unlawful stop, fabricated justification, and then lied under oath to sustain his version. Under the Second Circuit's

inclusionary approach, Rule 404(b) admits such evidence to show intent, plan, knowledge, and absence of mistake. See *Carroll v. Trump*, 124 F.4th 140, 167–69 (2d Cir. 2024) (admitting "modus operandi" pattern evidence); *Ismail v. Cohen*, 899 F.2d 183, 188–89 (2d Cir. 1990) (admitting prior police misconduct to prove intent and absence of mistake). Far from "other bad acts" offered for propensity, the Howard transcripts demonstrate the same unusual, distinctive "playbook" Laureano employed against Johnson.

## B. Admission of Civil Depositions Under Rule 32(a)(8), Rule 801(d)(1)(A), and Rule 613

Laureano's deposition testimony from the *Howard* civil case is independently admissible. Federal Rule of Civil Procedure 32(a)(8) permits use of depositions taken in another action "involving the same subject matter between the same parties, or their representatives or successors in interest." Fed. R. Civ. P. 32(a)(8). Courts construe this rule liberally, requiring only substantial similarity of issues and an adequate motive to cross-examine. *FHFA v. Merrill Lynch*, No. 11 Civ. 6202 (DLC), 2014 WL 798385, at *1–2 (S.D.N.Y. Jan. 15, 2014); see also *Kreitman v. Fla. Dep't of Corr.*, No. 4:20cv371-MW/MJF, 2020 WL 12188711, at *3 (N.D. Fla. Nov. 30, 2020) (quoting *Medline Indus., Inc. v. Kimberly-Clark Corp.*, No. 1:17-cv-02032-SCJ, ECF No. 168, at 5 (N.D. Ga. Apr. 2, 2019)) ("These requirements have been construed liberally in light of the twin goals of fairness and efficiency." (internal quotation marks omitted)).

Where, as here, the deposition involves the same party (or its representative) as in the prior action, courts emphasize that the rule's "same parties" prong is met if the party was present or represented at the prior deposition and had substantially the same motivation to develop the testimony. See *Kreitman*, 2020 WL 12188711, at *5 (holding that the requirements of Rule 32(a)(8) were satisfied as to a state agency defendant where the agency's secretary was a defendant in the prior case, the agency acknowledged it was "present at the depositions," and the secretary

"had the same motivation to develop the witnesses' testimony" in the prior action); *S.W. v. City of New York*, No. CV 2009–1777(ENV)(MDG), 2010 WL 4791712, at *2 (E.D.N.Y. Nov. 18, 2010) (permitting use of prior depositions against the City of New York where the City was a party to the earlier case and "had the same incentive as it would have in this case to cross-examine the State's witnesses and develop a record with its own witnesses" on overlapping systemic issues); *Coan v. Dunne*, No. 3:15-cv-00050 (JAM), 2019 WL 1976146, at *7 (D. Conn. May 3, 2019) (concluding that Rule 32(a)(8) was satisfied where the deponent was a party in the later action, the issues substantially overlapped, and the same trustee—who was an adversary in both proceedings—had a motive to cross-examine, noting that the rule's requirements are "construed liberally in light of the twin goals of fairness and efficiency" (quoting *Clay v. Buzas*, 208 F.R.D. 636, 638 (D. Utah 2002))). The rule's purpose—to "avoid a needless waste of time, money and effort and to expedite the litigation"—further supports its liberal application when the same party's interests align across cases. *S.W.*, 2010 WL 4791712, at *1 (quoting *Ikerd v. Lapworth*, 435 F.2d 197, 205 (7th Cir. 1970)).

Here, the City of Rochester represented Laureano in both actions and had the same motive and opportunity to cross-examine him, satisfying the "same parties" requirement. See *Kreitman*, 2020 WL 12188711, at *5 (finding the "same party" prong met where a state agency was present through its representative in the prior action and shared the same motivation); *Coan*, 2019 WL 1976146, at *7 (emphasizing the "presence of an adversary with the same motive to cross-examine" as key to the inquiry (quoting *Hub v. Sun Valley Co.*, 709 F.2d 214, 217 (1st Cir. 1983))). Moreover, the substantial overlap in subject matter is evident: both the *Howard* and *Johnson* cases involve allegations of police misconduct by Officer Laureano, including unlawful vehicle stops, fabrication of evidence, and providing false testimony under oath. Furthermore, in the *Howard*

33

civil deposition, Laureano was questioned not only about the *Howard* case, but also about the *Johnson* case, the Napier incidents, and the four suppression hearings in *Allen, Howard, Parsons*, and *Brookins*. See *S.W. v. City of New York*, No. CV 2009–1777(ENV)(MDG), 2010 WL 4791712, at *2 (E.D.N.Y. Nov. 18, 2010) (finding substantial overlap where both actions alleged similar systemic deficiencies in the City's foster care system, such as inadequate screening of foster parents and excessive caseloads, and applying Rule 32(a)(8) liberally to allow use of prior depositions on overlapping issues). Judge Pedersen even authorized questioning in *Howard* depositions about *Johnson*-related issues, recognizing the overlap and ensuring fairness in allowing the prior testimony's use.

Additionally, the deposition is admissible under Rule 801(d)(1)(A) as a prior inconsistent statement, and under Rule 613 for impeachment. If Laureano testifies inconsistently in this trial, his prior sworn statements from Howard may be introduced substantively.

### C.  Cross-Examination Under Rule 608(b) and *United States v. White*

Even if excluded as direct evidence, these transcripts are proper subjects for cross-examination. Rule 608(b) permits inquiry into specific instances of conduct probative of a witness's character for truthfulness. The Second Circuit in *United States v. White*, 692 F.3d 235, 248–49 (2d Cir. 2012), emphasized that sworn false testimony in prior proceedings is quintessential impeachment material. Laureano's perjury in Howard meets every *White* factor: (i) it was sworn testimony, (ii) in judicial proceedings, (iii) about central facts, and (iv) occurred within a few years of Johnson's stop.

### D.  Rule 403 Balancing

The probative value of this evidence vastly outweighs any prejudice. The *Howard* transcripts are not cumulative of the suppression ruling—they contain the actual sworn false

testimony, enabling the jury to assess deliberateness and pattern. Any prejudice can be managed with limiting instructions, but excluding this material would prejudice Mr. Johnson by depriving the jury of the most probative impeachment evidence available.

## CONCLUSION

For the foregoing reasons, the evidence at issue is highly probative, admissible under Rules 404(b) and 608(b) to establish Laureano's modus operandi of conducting unlawful stops and fabricating justifications, and directly relevant to Plaintiff's claims for false arrest, malicious prosecution, evidence fabrication, and punitive damages. Excluding it would unfairly prejudice Plaintiff's ability to present his case and risk reversible error under controlling Second Circuit precedent. Accordingly, Plaintiff respectfully requests that the Court grant his motions in limine to: (1) admit Judge Schiano's suppression ruling from the underlying Johnson criminal case into evidence; (2) admit the two Napier videos and the four suppression rulings in People v. Allen, People v. Howard, People v. Parsons, and United States v. Brookins into evidence; and (3) admit the transcripts from the Huntley/Mapp hearings, grand jury, and trial testimony in the Howard criminal case, along with the deposition transcripts from the related Howard federal civil rights action, into evidence.

Dated: New York, New York        Respectfully Submitted,
       August 26, 2025        ROTH & ROTH LLP

       By: _____~//s//~_____
       Elliot Dolby Shields, Esq.
       *Counsel for Plaintiff*
       192 Lexington Ave, Suite 802
       New York, New York 10016
       Ph: (212) 425-1020

To:    All counsel of record (via ECF)