**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| |
|---|
| DEVIN JOHNSON*,* |
| Plaintiff, |
| -against- |
| CITY OF ROCHESTER, et al., |
| Defendants. |

**21-cv-6683 (EAW)(MWP)**

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE OR SANITIZE HANDGUN EVIDENCE**

ROTH & ROTH, LLP
Elliot D. Shields
*Attorneys for Plaintiff*
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020
eshields@rothandrothlaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT .................................................................................................................. 1

   I.   Elements of False Arrest, Malicious Prosecution, and Qualified Immunity...................... 1

     A.   False Arrest ...................................................................................................... 1

     B.   Malicious Prosecution...................................................................................... 2

     C.   Qualified Immunity.......................................................................................... 4

   II.   Decisions Applying *Boyd*: Fruits of an Illegal Stop Cannot Supply Prosecution Probable Cause ......................................................................................................................... 5

     A.   *Tillman* v. *Walsh* (W.D.N.Y. Mar. 27, 2025 — Judge Geraci) ........................ 7

     B.   *Penree* v. *City of Utica* (N.D.N.Y. 2016 — Judge D'Agostino)........................ 9

     C.   *Harper* v. *Town of Newburgh* (S.D.N.Y. 2020 — Judge Davison) ................ 9

     D.   *Delanuez* v. *City of Yonkers* (S.D.N.Y. 2022 — Judge Davison)................... 10

     E.   *Belton* v. *Wydra* (D. Conn. 2019 — Judge Dooley)....................................... 11

     F.   Additional Authorities: *Mazyck, Gannon, Vasquez*, and Others ................... 11

   III.   Application to This Case........................................................................................ 13

     A.   False arrest ...................................................................................................... 14

     B.   Malicious prosecution..................................................................................... 15

     C.   Fair-trial/fabrication claim ............................................................................. 15

     D.   Qualified Immunity........................................................................................ 15

   IV.   Evidence Rules 401, 403, and 404: Relevance and Unfair Prejudice.......................... 16

   V. Law of the Case ................................................................................................... 18

Conclusion ................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Ackerson* v. *City of White Plains*, 702 F.3d 15, 19–20 (2d Cir. 2012) ..................................... 2, 13

*Belton* v. *Wydra*, No. 3:17cv2006 (KAD), 2019 WL 2162718, at *8–10 (D. Conn. May 17, 2019) ............................................................................................................................................. 7, 11

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)……………………………………………passim

*Cameron* v. *City of New York*, 598 F.3d 50, 63–64 (2d Cir. 2010) ............................................. 3

*Cyrus* v. *City of New York*, 450 F. App'x 24, 26–27 (2d Cir. 2011) ............................................ 7

Dallas v. Goldberg, 143 F. Supp. 2d 312, 317-18 (S.D.N.Y. 2001) ..................................... 14, 17

*Delanuez* v. *City of Yonkers*, No. 20 Civ. 4476 (PED), 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) ........................................................................................................................... 7, 10, 16

element. See *Lanning* v. *City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018) ................................... 4

*Escalera* v. *Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ................................................................. 4

*Florida* v. *J.L.*, 529 U.S. 266, 271 (2000) ................................................................................. 2

*Harper* v. *Town of Newburgh*, No. 18 Civ. 2647 (PED), 2020 WL 1140858, at *16–17 (S.D.N.Y. Mar. 6, 2020) ................................................................................................................... passim

*Jaegly* v. *Couch*, 439 F.3d 149, 153 (2d Cir. 2006) ................................................................. 2

*Johnson v. City of Rochester*, No. 21-CV-6683DGL, 2023 WL 8988342, at *14 (W.D.N.Y. Nov. 28, 2023) ..................................................................................................................................... 15

*Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-cv-260 (KAD), 2023 WL 363043 (D. Conn. Jan. 23, 2023) ............................................................................................................................... 20

*Manganiello* v. *City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) ................................... 3

*Mazyck* v. *Johnson*, No. 08CV548, 2009 WL 2707360, at *4–5 (E.D.N.Y. Aug. 25, 2009) 5, 6, 11

*Old Chief* v. *United States*, 519 U.S. 172, 183–85 (1997) .............................................. 21, 22, 23

*Penree* v. *City of Utica, N.Y.*, No. 6:13CV1323, 2016 WL 915252, at *18–19 (N.D.N.Y. Mar. 4, 2016) ........................................................................................................................... passim

*Posr* v. *Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999) ................................... 3

*Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999) ........................................ 8

*Posr* v. *Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) ..................................................................... 3

*Rhee-Karn v. Lask*, 674 F. Supp. 3d 75 (S.D.N.Y. 2023) .......................................................... 20

*Ricciuti* v. *N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) .................................... 4, 5, 13

*Rohman* v. *N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) ........................................... 3

Sakoc v. Carlson, No. 5:11-cv-290, 2014 WL 12717389, at *5 (D. Vt. Aug. 26, 2014) ........ 14, 17

*Savage* v. *Acquino*, No. 13CV6376, 2018 WL 1478254, at *6 n.6 (W.D.N.Y. Mar. 13, 2018) ...... 2

*Simmons v. Ferrigno*, No. 17-CV-6176-FPG, 2024 WL 1229285 (W.D.N.Y. Mar. 22, 2024) ..... 20

*Stansbury* v. *Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) ............................................................. 2

*Stoncor Group, Inc. v. Peerless Insurance Co.*, 573 F. Supp. 3d 913 (S.D.N.Y. 2021) .......... 18, 19

*Tillman* v. *Walsh*, No. 23cv6439FPG, 2025 WL 949073, at *9–10 (W.D.N.Y. Mar. 27, 2025) 5, 6, 7, 16

*Townes* v. *City of New York*, 176 F.3d 138 (2d Cir. 1999) ....................................................... passim

*Vasquez* v. *Reilly*, No. 15CV9528 (KMK), 2017 WL 946306, at *8–10 (S.D.N.Y. Mar. 9, 2017) 5, 7, 8, 12

*Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ................................................................. 2, 13

**Statutes**

Fed. R. Evid. 401 .................................................................................................. 1, 20, 21

Fed. R. Evid. 402 ....................................................................................................... 1, 21

Fed. R. Evid. 403 ....................................................................................................... 1, 21

## INTRODUCTION

Plaintiff Devin Johnson respectfully submits this supplemental memorandum pursuant to the Court's Order at Docket 79, to address the holding at heading I. B., which denied without prejudice Plaintiff's motion in limine to preclude references to the handgun or only refer to the handgun as "contraband." At the June 16, 2025 conference, the Court requested that Plaintiff address the elements of his false-arrest, malicious-prosecution, and fabrication claims, the standards governing qualified immunity, and why evidence of the handgun discovered after Officer Laureano's traffic stop should be excluded or sanitized. The Court also requested additional case law other than *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) and Judge Larimer's decision on the motion for summary judgment.

As detailed below, the record and controlling law make the firearm immaterial to liability and unduly prejudicial. *Boyd* and its progeny make clear that with respect to Plaintiff's malicious prosecution claim, probable cause means probable cause to believe the prosecution could succeed, and that where, as here, the prosecution depends on evidence that "would clearly not be admissible," probable cause is lacking. 336 F.3d at 76–77. In an "intertwined" case like this one, a poststop firearm discovered only because of the unlawful stop cannot supply probable cause to arrest or to prosecute. The Court should exclude any mention, description, or image of a "handgun," "gun," "firearm," or "stolen" status under Federal Rule of Evidence 401, 402 and 403. In the alternative, the Court should require neutral terminology and a limiting instruction.

## ARGUMENT

**I.**    **Elements of False Arrest, Malicious Prosecution, and Qualified Immunity**

    **A.**    **False Arrest**

Section 1983 false-arrest claims mirror the common-law tort of false imprisonment. A plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Stansbury* v. *Wertman*, 721 F.3d 84, 89 (2d Cir. 2013). The absence of probable cause is the core of the claim. An arrest is reasonable only if, at the moment the officer restrains the plaintiff's liberty, the officer has facts sufficient to warrant a belief that the plaintiff has committed an offense. Probable cause is assessed based solely on information known to the officer at the time of the seizure; evidence uncovered afterward cannot retroactively justify the stop or arrest. *Ackerson* v. *City of White Plains*, 702 F.3d 15, 19–20 (2d Cir. 2012); *Jaegly* v. *Couch*, 439 F.3d 149, 153 (2d Cir. 2006); see *Florida* v. *J.L.*, 529 U.S. 266, 271 (2000) ("reasonable suspicion must exist … at the time of the stop"). Contraband found after a stop, such as the handgun here, therefore has no probative value in determining whether Officer Laureano had probable cause to initiate the stop.

Judge Larimer framed the issue: "the focus is not on whether there was probable cause to arrest plaintiff for unlawfully possessing a weapon … [t]he question … is whether the stop itself was justified." *Johnson v. City of Rochester*, 2023 WL 8237560, at *14-15 (W.D.N.Y. Nov. 28, 2023) (citation omitted). The firearm, discovered only after the lights activated and the stop occurred, cannot retroactively establish probable cause. *Savage* v. *Acquino*, No. 13CV6376, 2018 WL 1478254, at *6 n.6 (W.D.N.Y. Mar. 13, 2018) (post-stop discoveries cannot justify initial stop). The handgun has zero probative value on the pre-stop probable-cause question and risks confusing the jury about the temporal boundary of the analysis.

### B. **Malicious Prosecution**

To prevail on a malicious-prosecution claim under § 1983, a plaintiff must prove (1) that the defendant initiated or continued a criminal proceeding; (2) that the proceeding terminated in the plaintiff's favor; (3) that there was no probable cause to believe the prosecution could succeed; and (4) that the proceeding was commenced with malice. *Manganiello* v. *City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010); *Boyd*, 336 F.3d at 75–77. The plaintiff must also show a deprivation of liberty consistent with seizure after arraignment. *Rohman* v. *N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Initiation is satisfied where an officer files an accusatory instrument or furnishes material falsehoods to prosecutors. *Cameron* v. *City of New York*, 598 F.3d 50, 63–64 (2d Cir. 2010).

### 1. <u>Probable cause to believe the prosecution could succeed</u>

Malicious prosecution demands more than probable cause to arrest; the question is whether a reasonable officer would believe that the prosecution could succeed. The Second Circuit has cautioned courts not to "conflate probable cause to arrest with probable cause to believe that [the plaintiff] could be successfully prosecuted"; only the latter is relevant. *Posr* v. *Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).

In *Boyd*, the court held that when a prosecution depends on evidence that "would clearly not be admissible," there is no probable cause to believe the prosecution will succeed. 336 F.3d at 76–77. Where, as here, the prosecution's evidence derives entirely from a post-stop discovery that would be suppressed if the stop was unlawful, the prosecution lacks probable cause. Judge Larimer has already tethered that inquiry to the stop's lawfulness in this case. *Johnson*, 2023 WL 8237560, at *22. Where the State's proof hinges on a firearm that would be suppressed if the stop was unlawful, there is no probable cause to believe a prosecution could succeed. As detailed below in Point II, numerous other courts have applied *Boyd* to circumstances like those in this case to find

that contraband located as a result of an unlawful stop or arrest is immaterial to the probable cause inquiry in a malicious prosecution case.

### 2. <u>Favorable termination under Thompson v. Clark</u>

Before 2022, the Second Circuit required plaintiffs to show an affirmative indication of innocence to satisfy the "favorable termination" element. See *Lanning* v. *City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018). In *Thompson* v. *Clark*, however, the Supreme Court held that a plaintiff need not demonstrate a formal exoneration; termination without a conviction is sufficient for a favorable termination. 596 U.S. 36, 44–45 (2022). The Court grounded its decision in nineteenth-century tort law and Fourth Amendment values, rejecting the stricter Lanning standard. *Thompson* v. *Clark*, 596 U.S. ___ (2022). Thus, dismissal of the charges against Mr. Johnson satisfies the favorable-termination element, even absent an explicit declaration of innocence.

### 3. <u>Malice</u>

Under New York law, malice requires only that the defendant initiated the prosecution for an improper purpose. A lack of probable cause generally gives rise to an inference of malice. *Ricciuti* v. *N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997); *Boyd*, 336 F.3d at 78. Malice may be inferred from the absence of probable cause. *Boyd*, 336 F.3d at 78.

### C. <u>Qualified Immunity</u>

Qualified immunity shields officials from damages unless their conduct violates clearly established rights that a reasonable officer would understand. For false-arrest claims, officers are immune if they had arguable probable cause—that is, if officers of reasonable competence could disagree on whether probable cause existed at the moment of the stop. *Escalera* v. *Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

For malicious-prosecution claims, the question is whether officers had arguable probable cause to believe the prosecution could succeed. Evidence discovered after an unlawful stop cannot create arguable probable cause for the stop or for the prosecution. Courts have repeatedly denied qualified immunity where the prosecution rested solely on suppressed evidence. See *Vasquez v. Reilly*, 2017 WL 946306, at *8–10 (SDNY 2017)(applying *Boyd* to deny qualified immunity on motion to dismiss malicious prosecution claim because allegations sufficient to allege unlawful search); *Mazyck v. Johnson*, 2009 WL 2707360, at *5 (EDNY 2009)(denying defendants' motion for summary judgment on malicious prosecution claim and denying qualified immunity because "material issues of fact as to the sequence of events that led to the arrest and whether plaintiff was arrested before the weapon was found"); *Penree v City of Utica, et al*, 2016 WL 915252, at *18–19 (NDNY 2016)(" There is also no arguable probable cause to believe that Plaintiff Penree could be successfully prosecuted for the remaining criminal charges filed against him because each of those charges are based upon acts that were taken after Defendants Watson, Skibiniski, and Ciccone illegally entered into Plaintiff Penree's residence. Without a warrant, without probable cause, and without exigent circumstances, any evidence of Plaintiff Penree's actions were not going to be admissible as evidence at any criminal trial. *See id.* Therefore, defendants are not entitled to qualified immunity."). In *Tillman*, the court denied qualified immunity on analogous facts, noting that if the stop was unlawful, reasonable officers could not disagree that suppressed evidence fails to support prosecution. 2025 WL 949073, at *11.

Intentional fabrication cannot be immunized. *Ricciuti* v. *N.Y.C. Transit Auth.*, 124 F.3d 123, 130–31 (2d Cir. 1997).

## II.    <u>Decisions Applying *Boyd*: Fruits of an Illegal Stop Cannot Supply Prosecution Probable Cause</u>

The Supreme Court's decision in *Townes* v. *City of New York*, 176 F.3d 138 (2d Cir. 1999), addressed causation and damages; it held that the criminal exclusionary rule does not elongate the chain of causation for § 1983 damages. *Townes* did not define probable cause for malicious-prosecution claims. Four years later, *Boyd* clarified that probable cause in the malicious-prosecution context means probable cause to believe the prosecution could succeed; if the prosecution is based on evidence that "would clearly not be admissible," probable cause is absent. 336 F.3d at 76–77. This case turns on the lawfulness of the stop that led to discovery of the gun. *Johnson*, 2023 WL 8237560, at *14–15, *22. Under *Boyd*, a firearm found only after an unlawful stop cannot make a prosecution likely to succeed; it would be suppressed.

Courts across the Second Circuit consistently apply *Boyd* to cases where contraband is discovered only after an allegedly unlawful stop, distinguishing *Townes* and holding that the contraband cannot establish probable cause. Recent cases in this Circuit illustrate this principle and support exclusion of the handgun here. Courts in this Circuit apply *Boyd* to allow malicious prosecution claims to proceed where charges depend on fruits of an unlawful stop or search: *Tillman* v. *Walsh*, No. 23cv6439FPG, 2025 WL 949073, at *9–10 (W.D.N.Y. Mar. 27, 2025) (denying summary judgment on malicious-prosecution claim where contraband was found only after disputed stop and would be suppressed, leaving no probable cause to believe the prosecution could succeed); *Gannon* v. *City of New York*, 917 F. Supp. 2d 241, 244–45 (S.D.N.Y. 2013) (allowing malicious-prosecution claim to proceed because if the search was unlawful, the drugs would be suppressed and there would be no probable cause to believe the prosecution could succeed); *Mazyck* v. *Johnson*, No. 08CV548, 2009 WL 2707360, at *4–5 (E.D.N.Y. Aug. 25, 2009) (denying dismissal where a gun discovered after arrest would be suppressed, meaning there was no probable cause to believe the prosecution could succeed); *Vasquez* v. *Reilly*, No. 15CV9528

6

(KMK), 2017 WL 946306, at *8–10 (S.D.N.Y. Mar. 9, 2017) (holding that probable cause in the malicious-prosecution context means probable cause to believe the prosecution could succeed and that evidence obtained during an unlawful search cannot supply such probable cause); *Penree* v. *City of Utica, N.Y.*, No. 6:13CV1323, 2016 WL 915252, at *18–19 (N.D.N.Y. Mar. 4, 2016), aff'd in part, 694 F. App'x 30 (2d Cir. 2017) (denying summary judgment because evidence seized during an illegal entry would be suppressed and thus there was no probable cause to believe the prosecution could succeed); *Harper* v. *Town of Newburgh*, No. 18 Civ. 2647 (PED), 2020 WL 1140858, at *16–17 (S.D.N.Y. Mar. 6, 2020) (denying summary judgment where traffic stop's legality was disputed and marijuana was found only afterward, so probable cause to believe a prosecution could succeed was lacking); *Delanuez* v. *City of Yonkers*, No. 20 Civ. 4476 (PED), 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) (explaining that probable cause in malicious-prosecution cases means probable cause to believe the prosecution could succeed, not merely to arrest, and that evidence which would clearly be suppressed cannot be relied upon); *Belton* v. *Wydra*, No. 3:17cv2006 (KAD), 2019 WL 2162718, at *8–10 (D. Conn. May 17, 2019) (surveying split, adopting *Boyd*, and holding that evidence obtained unlawfully cannot supply probable cause to believe the prosecution would succeed). Contrary district decisions that lean on *Townes* to let fruits supply probable cause for malicious prosecution misread *Townes*. See *Vasquez*, 2017 WL 946306, at *9–10 (rejecting reliance on *Townes* for probable-cause analysis). And the summary order in *Cyrus* v. *City of New York*, 450 F. App'x 24, 26–27 (2d Cir. 2011), is nonprecedential and out of step with *Boyd*.

A. **_Tillman_ v. _Walsh_ (W.D.N.Y. Mar. 27, 2025 — Judge Geraci)**

In *Tillman v. Walsh*, Judge Geraci denied qualified immunity on a malicious-prosecution claim where the prosecution rested entirely on evidence obtained during an unlawful stop and

search. The plaintiff alleged that officers stopped him without reasonable suspicion, performed a pat-frisk, and recovered a firearm, bullets, and cocaine. The indictment was later dismissed after a court suppressed the gun and other evidence as the fruit of an unlawful search.

The defendants argued that discovery of the gun provided probable cause to arrest and prosecute. Judge Geraci rejected this, holding that defendants "seem to conflate probable cause to arrest … with probable cause to believe that [Plaintiff] could be successfully prosecuted." *Id*. at *9 (quoting *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999)). The relevant question for malicious prosecution is not whether the officer had cause to arrest after the search, but whether there was probable cause to believe a prosecution could succeed. Because the sole evidence—the gun and drugs—was obtained during the allegedly unlawful stop, if a jury found the stop unconstitutional, suppression would follow, and there would be no basis to believe the prosecution could succeed. *Id*. (citing *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003); *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *8 (S.D.N.Y. Mar. 9, 2017)).

Although Judge Geraci granted qualified immunity on the false-arrest claim, citing *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), for the principle that an unlawful search does not vitiate probable cause to arrest upon discovery of contraband, he distinguished this from malicious prosecution. *Id*. at *8–9. *Townes* limits recovery of damages flowing from suppression but does not supply probable cause to prosecute where the prosecution itself rests on suppressed evidence.

This reasoning is directly applicable here. As in *Tillman*, Mr. Johnson's prosecution rests solely on contraband discovered after the initial stop. If the stop is found unlawful, that contraband is inadmissible and irrelevant to the probable-cause-to-prosecute inquiry. Thus, the only material question is the validity of the initial stop. Any later-discovered gun is irrelevant to whether there was probable cause to believe the prosecution could succeed.

8

**B.** ***Penree* v. *City of Utica* (N.D.N.Y. 2016 — Judge D'Agostino)**

In *Penree*, officers illegally entered a home without a warrant or exigent circumstances, tased the plaintiff while he was holding his child, and arrested him. The plaintiff was charged with multiple offenses, including harassment in the second degree, endangering the welfare of a child, and resisting arrest—charges that stemmed directly from the events during and after the unlawful entry. Judge D'Agostino held that because the entry was unlawful, the evidence would be suppressed and there was no probable cause to believe the prosecution could succeed. 2016 WL 915252, at *18–19 (applying *Boyd* where prosecution depended on evidence from allegedly unlawful apartment entry: "if the jury finds that the defendants entered the plaintiff's home without a warrant," the discovered evidence "would be inadmissible" and prosecution could not succeed). The court rejected the argument that the fruits of the illegal entry could supply probable cause and denied qualified immunity. *Id*. The court emphasized that probable cause to arrest does not equal probable cause to prosecute; the latter turns on whether the State's evidence would be admissible. *Id*. Although *Penree* involved a home search rather than a vehicle stop, the principle is identical: where the prosecution depends on suppressed evidence, probable cause is lacking.

**C.** ***Harper* v. *Town of Newburgh* (S.D.N.Y. 2020 — Judge Davison)**

In *Harper*, officers stopped a vehicle, searched it without a warrant, and found marijuana. The plaintiffs alleged that the stop was unsupported by reasonable suspicion and that the subsequent seizure and prosecution were unlawful. Judge Davison denied summary judgment on the malicious-prosecution claim, holding that a jury could find the stop illegal and that the marijuana would therefore be suppressed, leaving no probable cause to believe the prosecution could succeed. 2020 WL 1140858, at *16–17 (denying summary judgment under *Boyd* where

drugs found after disputed vehicle stop). The court underscored that a lack of probable cause generally raises an inference of malice and that *Boyd* governs the probable-cause analysis. *Id*.

The court also denied the officers qualified immunity on the malicious prosecution claim, finding that there were disputes of fact regarding whether there was arguable probable cause to believe the prosecution could succeed. *Id*. at 17.

Like *Harper*, the criminal charges against Mr. Johnson depended exclusively on evidence discovered after a disputed vehicle stop, which is why they were suppressed by Judge Schiano in the criminal prosecution. Thus, under *Boyd*, if the jury finds the stop unlawful, probable cause to prosecute was absent and Laureano is not entitled to qualified immunity.

**D.** ***Delanuez* v. *City of Yonkers* (S.D.N.Y. 2022 — Judge Davison)**

*Delanuez* involved a disputed consent search of an apartment following a traffic arrest. Officers claimed to have obtained consent from the plaintiff's family to search his home, where they found drugs and a gun. The plaintiff argued that the consent was coerced and the search illegal. Judge Davison reiterated the elements of a malicious-prosecution claim and, citing *Thompson* v. *Clark*, noted that a termination without conviction satisfies the favorable-termination element. 2022 WL 16540682, at *8. He cautioned against conflating probable cause to arrest with probable cause to believe the prosecution could succeed and explained that when evidence "would clearly not be admissible," there is no probable cause to believe the prosecution could succeed. *Id*. Because the admissibility of the evidence turned on the disputed consent, the court denied summary judgment and held that malice could be inferred. *Id*.

The *Delanuez* analysis echoes the situation here: the lawfulness of the stop is the only relevant question for the jury, because if the stop was unlawful then the officers lacked probable cause to believe the prosecution could succeed.

### E.  *Belton* v. *Wydra* (D. Conn. 2019 — Judge Dooley)

In *Belton*, officers searched a residence, seized guns and drugs, and prosecuted the occupants. The court surveyed cases applying *Boyd* and distinguished those relying on *Townes*. It held that *Boyd* defines malicious-prosecution probable cause as probable cause to believe the prosecution could succeed and that evidence that "would clearly not be admissible" cannot supply probable cause. 2019 WL 2162718, at *8–10 (noting circuit split but applying *Boyd*). The court rejected arguments that fruits of an illegal search could supply probable cause and allowed the malicious-prosecution claim to proceed. *Id.* *Belton* demonstrates the majority consensus in this Circuit that *Boyd* governs malicious-prosecution claims and that *Townes* does not apply to the probable-cause element.

### F.  Additional Authorities: *Mazyck, Gannon, Vasquez,* and Others

Several other cases reinforce this rule. In *Mazyck v. Johnson*, officers arrested the plaintiff first, then asked if he had a weapon, which he voluntarily handed over. Judge Lopez-Torres granted plaintiff's motion to suppress the gun, finding the arrest was unlawful, and the criminal case was dismissed. In the subsequent § 1983 malicious prosecution suit, Judge Sifton denied defendants' motion for summary judgment, distinguishing *Townes* and applying *Boyd v. City of New York*. The court held that because the officers knew they lacked probable cause to arrest plaintiff, a reasonable jury could find they had no probable cause to believe the prosecution would succeed, given that the firearm would be suppressed. No. 08-CV-548, 2009 WL 2707360, at *4-5 (E.D.N.Y. Aug. 25, 2009). The court emphasized that under *Boyd*, the question is not whether there exists probable cause to prosecute, but whether there is probable cause to believe a prosecution will succeed. *Id.* at *5.

In *Gannon* v. *City of New York*, the court held that where "the legality of the initial seizure is a disputed issue of fact," and drugs were discovered only after that seizure, the *Boyd* framework controls: if the seizure was unlawful, "the drugs would have been suppressed" and there would be no probable cause to prosecute. 917 F. Supp. 2d 241, 244–45 (S.D.N.Y. 2013) (distinguishing *Townes* and noting that *Boyd* "is binding precedent that requires a different result"). The *Gannon* court specifically rejected the argument that post-seizure discoveries can supply probable cause for malicious prosecution when the initial seizure is unlawful, emphasizing that *Townes* did not alter the probable cause standard under *Boyd*. *Id*. Like our case, *Gannon* involved a disputed initial stop leading to drug discovery, and the court's reasoning supports excluding the firearm here to avoid jury confusion on the intertwined probable cause issues.

In *Vasquez v. Reilly*, the court applied *Boyd* to deny a motion to dismiss where drugs were discovered during an allegedly unlawful warrantless home search, holding that "evidence obtained in violation of a plaintiff's Fourth Amendment rights cannot be relied on in arguing that there was probable cause to believe the plaintiff could be successfully prosecuted." No. 15-CV-9528 (KMK), 2017 WL 946306, at *8 (S.D.N.Y. Mar. 9, 2017). The court explained that under *Boyd*, "if the evidence giving rise to the prosecution 'would clearly not be admissible,' then 'there [is] no probable cause to believe [a] prosecution could [have] succeed[ed].'" *Id.* (quoting *Boyd*, 336 F.3d at 77). The court distinguished *Townes*, explaining that it "said nothing about whether illegally obtained evidence could be used to support a defense of probable cause in connection with a malicious prosecution claim" and that "the claim at issue in *Townes* was not even malicious prosecution, it was false arrest." *Id.* at *9. The court concluded that "*Boyd*, decided four years after *Townes*, controls the disposition of this Motion." *Id.*

These cases establish a clear principle: when Judge Larimer has already determined that probable cause for arrest and prosecution are "intertwined" and both depend on the lawfulness of the initial stop, *Boyd* controls. The firearm discovered only after the stop cannot retroactively supply probable cause if the stop itself was unlawful.  And the qualified immunity question relates only to whether there was arguable probable cause to believe the prosecution could succeed.

### III.    <u>Application to This Case</u>

Applying the above rules to the facts of this case leads inexorably to the conclusion that the handgun is immaterial. Officer Laureano initiated a traffic stop for an alleged traffic violation— and Judge Schiano held that his testimony regarding probable cause for the stop was directly contradicted by the Blue Light Camera video and thus that Laureano lacked probable cause for the stop, and so he suppressed the gun as a fruit of the unlawful stop.

Judge Larimer denied summary judgment on false arrest and malicious prosecution, holding that probable cause for arrest and prosecution are intertwined and turn solely on the lawfulness of the stop. *Johnson*, 2023 WL 8237560, at *14–15, *22. Under *Weyant* and *Ackerson*, probable cause must be evaluated at the moment the stop was initiated; the gun discovered afterward cannot retroactively justify the seizure.

Under *Boyd*, the prosecution's probable cause depends on whether officers had reason to believe a conviction was likely to succeed; because the evidence of guilt would be suppressed if the stop was unlawful, there was no probable cause to prosecute. *Thompson* v. *Clark* confirms that the dismissal of the charges against Mr. Johnson constitutes favorable termination. 596 U.S. at 44– 45. The absence of probable cause, together with the alleged fabrication of the stop's justification, gives rise to an inference of malice and defeats qualified immunity. *Boyd*, 336 F.3d at 78; *Ricciuti*, 124 F.3d at 131.

13

A. **False arrest**

Judge Larimer specifically held that the false arrest claim must focus solely on whether Officer Laureano had reasonable suspicion for the initial traffic stop, explicitly rejecting any reliance on the post-stop gun discovery. *Johnson v. City of Rochester*, No. 21-CV-6683DGL, 2023 WL 8988342, at *14 (W.D.N.Y. Nov. 28, 2023). Judge Larimer held that "the handgun was discovered as a result of the initial traffic stop, after plaintiff had been arrested" and therefore "the question...is whether the stop itself was justified" *Id*.. The court denied summary judgment on the false arrest claim because genuine issues of material fact existed regarding the initial stop's validity, demonstrating that post-arrest discoveries cannot provide retroactive justification for questionable police conduct. *Id*. at *14-15.

Thus, for the false arrest claim, the only question is whether Officer Laureano had probable cause to initiate the stop. Because the gun was discovered only after the stop, it cannot influence that determination and should be excluded from the false arrest analysis. See *Harper v. Town of Newburgh*, No. 18-Civ-2647, 2020 WL 1140858, at *9 (S.D.N.Y. Mar. 6, 2020) (denying summary judgment on unlawful arrest claim where marijuana discovery occurred after allegedly unlawful vehicle stop); *Penree v. City of Utica*, No. 6:13-cv-01323, 2016 WL 915252, at *11 (N.D.N.Y. Mar. 4, 2016) (denying summary judgment on false arrest claim where evidence was discovered after warrantless home entry); *Sakoc v. Carlson*, No. 5:11-cv-290, 2014 WL 12717389, at *5 (D. Vt. Aug. 26, 2014) (holding post-arrest DRE evaluation "irrelevant to the determination of probable cause because Defendant, the arresting officer, had no knowledge of this evaluation at the time of Plaintiff's arrest"); *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 317-18 (S.D.N.Y. 2001) (holding drug paraphernalia found in arrestee's apartment after arrest "irrelevant to the question of

probable cause to make the arrest" because "[e]vidence of which the arresting officer had no knowledge at the time the challenged arrest occurred is clearly irrelevant")).

### B. **Malicious prosecution.**

The prosecution's success depended entirely on the handgun. Because Judge Schiano found the stop unlawful, the gun was suppressed and the prosecution failed. If the Jury agrees that there was no probable cause for the initial stop, then under *Boyd* and its progeny, there was no probable cause to believe the prosecution could succeed. 336 F.3d at 76–77. Thus, the handgun is completely irrelevant to the analysis of whether Laureano had probable cause to believe the prosecution could succeed.

### C. **Fair-trial/fabrication claim**

Plaintiff also alleges that Laureano fabricated his account of his observations in official police paperwork and testimony, falsely claiming that Plaintiff began to pull his vehicle over before Laureano activated his flashing lights. The gun is irrelevant to this claim because the fabrication relates only to Laureano's false statements regarding the initial stop. Introducing it would risk shifting the jury's focus to the seriousness of the contraband rather than on whether the officer lied about the reason for the initial stop. The Court also denied summary judgment on Plaintiff's § 1983 fair-trial claim premised on fabrication. *Johnson*, 2023 WL 8237560, at *27–28.

### D. **Qualified Immunity**

Because arguable probable cause must be assessed without regard to post-stop discoveries, Officer Laureano cannot argue that the gun provided arguable probable cause for either the stop or the prosecution. *Johnson v. City of Rochester*, No. 21-CV-6683DGL, 2023 WL 8988342, at *14 (W.D.N.Y. Nov. 28, 2023). Like the false arrest and malicious prosecution analyses, the qualified immunity analysis in this case is "intertwined" and depends solely on whether the jury finds that

Laureano had arguable probable cause to initiate the traffic stop. *Id*. at *13-15 (denying qualified immunity on false arrest and malicious prosecution claims due to factual disputes over probable cause for the initial stop). *Tillman* and similar cases deny qualified immunity on malicious prosecution claims on analogous facts, reasoning that reasonable officers would know that where the initial stop and arrest was unlawful, the officer lacked probable cause to believe the prosecution could succeed. *Tillman v. Walsh*, No. 23-CV-6439-FPG, 2025 WL 949073, at *11 (W.D.N.Y. Mar. 27, 2025); *Harper v. Town of Newburgh*, No. 18 Civ. 2647 (PED), 2020 WL 1140858, at *16 (S.D.N.Y. Mar. 6, 2020) ("Karabales is not entitled to qualified immunity on this claim."); *Delanuez v. City of Yonkers*, No. 20 Civ. 4476 (PED), 2022 WL 16540682, at *11 (S.D.N.Y. Oct. 28, 2022) ("Defendants are not entitled to qualified immunity on this claim."); *Penree v. City of Utica*, No. 6:13-cv-01323 (MAD/ATB), 2016 WL 915252, at *30 (N.D.N.Y. Mar. 4, 2016) ("[T]his question of fact ... precludes a legal finding on qualified immunity for the malicious prosecution claim.").

## IV.    Evidence Rules 401, 403, and 404: Relevance and Unfair Prejudice

Federal Rule of Evidence 401 provides that evidence is relevant only if it makes a fact of consequence more or less probable. Because the gun was discovered after the stop and has no bearing on whether the stop was justified or whether the prosecution could succeed, it is not relevant. The firearm has no tendency to prove or disprove the pre-stop probable-cause dispute or malicious-prosecution probable cause in this *Boyd*-intertwined case. Fed. R. Evid. 401, 402. Even if the gun had minimal relevance, Rule 403 requires exclusion when the probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Evidence of firearms carries outsized emotional weight; jurors may assume that possession of a gun implies guilt or justifies the stop, contrary to the law. Courts may exclude firearm evidence

under Rule 403 when its prejudicial effect eclipses its probative value. See *Old Chief v. United States*, 519 U.S. 172, 183–85 (1997) (requiring consideration of less-prejudicial alternatives).

In *Dallas v. Goldberg*, the court thoroughly rejected defendants' attempt to admit post-arrest drug paraphernalia evidence under Federal Rule of Evidence 404(b) to show "absence of mistake." The court found that defendants' argument "stands Rule 404(b) on its head" because they sought to use subsequently-discovered evidence to demonstrate that it was likely the plaintiff possessed drugs at the time of arrest, and therefore the arresting officer was not mistaken about that likelihood when making the arrest. 143 F. Supp. 2d 312, 318-19 (S.D.N.Y. 2001). The court emphasized that because probable cause depends on information, facts, and circumstances available to the arresting officer at the time of arrest, evidence discovered after the arrest is simply not admissible on the probable cause question, and defendants could not circumvent this relevance requirement by reframing their purpose as showing absence of mistake. The court further noted that where there is no question of intent—as here, where the officer clearly intended to arrest the plaintiff—evidence cannot be admitted to show absence of mistake under 404(b). Additionally, the court clarified that a false arrest claim is not premised on a generalized notion that an officer "made a mistake," but rather on the absence of legal authority to make the challenged arrest. This analysis demonstrates that the firearm discovered after Officer Laureano's stop must be excluded from both the false arrest and malicious prosecution analyses, as both claims depend entirely on whether Laureano possessed probable cause at the moment he activated his lights to initiate the stop.

Similarly, in *Sakoc v. Carlson*, the District of Vermont excluded post-arrest drug recognition evidence because the arresting officer had no knowledge of it at the time of the arrest. The court emphasized that "subsequently discovered evidence cannot be used to cure an arrest that was made without probable cause," and that evidence unknown to the arresting officer at the time

17

"is clearly irrelevant" to the probable cause determination. 2014 WL 12717389, at *4–5 (D. Vt. Aug. 26, 2014) (quoting *Dallas*, 143 F. Supp. 2d at 317). The court held that post-arrest evidence may bear on damages, but it has no place in deciding liability for false arrest. This underscores that the firearm discovered after Officer Laureano's stop cannot be admitted to retroactively justify the seizure or prosecution.

Rule 404(b) prohibits evidence of other acts to prove a person's character or propensity. Introducing the gun—especially one suppressed as fruit of the poisonous tree—would invite the jury to draw impermissible inferences about Mr. Johnson's character or propensity for violence. Such use is barred. For the same reason, neutral terminology and careful instruction are necessary if any reference is allowed.

If the Court concludes that some reference to the gun is unavoidable, it should require neutral phrasing—for example, "an item was recovered after the stop"—and instruct the jury that they may not consider that item in determining whether Officer Laureano had probable cause to initiate the stop or whether the prosecution could succeed. This approach hews to *Old Chief* and the sanitization cases cited above and preserves the jury's ability to focus on the relevant Fourth Amendment questions. See *Old Chief*, 519 U.S. at 183–85.

## V. Law of the Case

The law-of-the-case doctrine provides that a court's decisions on issues of law or fact should be followed in later stages of the same case unless there is newly discovered evidence, a change in controlling law, or clear error. In *Stoncor Group, Inc. v. Peerless Insurance Co.*, 573 F. Supp. 3d 913 (S.D.N.Y. 2021), the court emphasized that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Id.* at 919 (internal quotation marks omitted).

Judge Larimer's summary-judgment ruling that probable cause to arrest and probable cause to prosecute are intertwined and that the legality of the stop is the dispositive issue is law of the case. *Johnson*, 2023 WL 8237560, at *14–15, *22. No new evidence or change in law undermines that determination. Admitting or emphasizing the gun would contravene that ruling by inviting the jury to consider post-stop evidence as if it could justify the stop or make the prosecution likely to succeed. The law-of-the-case doctrine counsels against revisiting settled determinations and supports exclusion or sanitization of the gun.

This doctrine promotes judicial economy by deciding issues once rather than litigating them repeatedly. In cases analogous to this one, courts in this Circuit and elsewhere have applied the law-of-the-case doctrine to prior summary judgment rulings when deciding motions in limine, ensuring that evidentiary decisions do not undermine earlier merits determinations. For instance, in *Stoncor Group, Inc. v. Peerless Insurance Co*., 573 F. Supp. 3d 913 (S.D.N.Y. 2021), the district court denied a motion in limine seeking to exclude extrinsic evidence on whether an insured's operations were "complete" or "ongoing" at the time of an accident, holding that a prior summary judgment order denying cross-motions on the duty-to-defend issue constituted law of the case. *Id*. at 918–19. The court reasoned that the prior ruling, which identified a "triable issue" on the question of whether operations were complete, necessarily rejected the plaintiff's argument that no extrinsic evidence could be considered, as that would have warranted summary judgment outright. *Id*. The court adhered to this ruling under law of the case, explaining that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Id*. at 919 (internal quotation marks omitted). Here, similarly, Judge Larimer's prior summary judgment ruling that probable cause for arrest and prosecution are intertwined and depend solely on the

stop's lawfulness constitutes law of the case, precluding the introduction of post-stop handgun evidence that would undercut that framing and invite jury confusion.

Likewise, in *Rhee-Karn v. Lask*, 674 F. Supp. 3d 75 (S.D.N.Y. 2023), the court applied law of the case in ruling on motions in limine to preclude the defendant attorney from arguing or presenting evidence that she did not commit malpractice, as a prior summary judgment order had already found liability on that issue. *Id*. at 78–79. The court emphasized that the prior ruling, affirmed on appeal, was binding absent any basis for departure, and judicial estoppel reinforced adherence to it. *Id*. at 79. The court extended this to limit the damages period based on concessions made during prior hearings, rejecting attempts to relitigate settled issues. *Id*. at 79–80. In this case, Judge Larimer's intertwined holding similarly binds the parties, and admitting handgun evidence would impermissibly reopen that determination by shifting focus to post-stop discoveries.

In *Simmons v. Ferrigno*, No. 17-CV-6176-FPG, 2024 WL 1229285 (W.D.N.Y. Mar. 22, 2024), the court extended prior summary judgment holdings to motions in limine, dismissing certain claims outright based on law of the case from earlier rulings. *Id*. at *9–10. The court noted that summary judgment decisions on specific legal and factual issues—such as the existence of probable cause or the propriety of force—governed subsequent evidentiary disputes, precluding relitigation through in limine motions. *Id*. Here, Judge Larimer's factual and legal determination that probable cause turns solely on the stop precludes evidence that would invite the jury to consider the handgun as relevant to that inquiry.

Finally, in *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-cv-260 (KAD), 2023 WL 363043 (D. Conn. Jan. 23, 2023), the court granted a motion in limine to preclude affirmative defenses of legal malpractice and breach of fiduciary duty, holding that a prior summary judgment ruling granting judgment for defendants on those claims constituted law of the case. *Id*. at *3. The

court rejected the plaintiffs' argument that the prior ruling was merely procedural (based on exclusion of untimely expert evidence), emphasizing that the determination of insufficient evidence to support the claims was a merits decision binding on later stages. *Id*. The court stressed that law of the case prevents relitigation of decided issues absent compelling circumstances, and no such circumstances existed. *Id*. at *3–4. Similarly, here, Judge Larimer's merits determination that probable cause is intertwined and depends on the stop's lawfulness binds this Court's evidentiary rulings, supporting exclusion of the handgun to avoid undermining that holding.

These cases—*Stoncor, Rhee-Karn, Simmons,* and *Kalra*—illustrate that prior summary judgment rulings on intertwined legal and factual issues, like probable cause here, constitute law of the case and extend to motions in limine, precluding evidence or arguments that would relitigate settled matters. No compelling reasons justify departure from Judge Larimer's ruling; admitting handgun evidence would risk jury confusion and contravene the doctrine.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court exclude any mention, description, document, image, or testimony referring to the handgun recovered after Officer Laureano's stop. Under *Boyd* and its progeny, probable cause to arrest and to prosecute depend solely on the legality of the initial stop; post-stop contraband is immaterial to that inquiry and unfairly prejudicial. If any reference is permitted, it must be strictly neutral and accompanied by a limiting instruction. Judge Larimer's law-of-the-case determinations and the evidence rules compel this result.

Dated: New York, New York        Respectfully Submitted,
        August 26, 2025           ROTH & ROTH LLP

                         By: _____~//s//~_____

Elliot Dolby Shields, Esq.
*Counsel for Plaintiff*
192 Lexington Ave, Suite 802
New York, New York 10016
Ph: (212) 425-1020

To:   All counsel of record (via ECF)