**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DEVIN JOHNSON*,*

Plaintiff,

-against-

CITY OF ROCHESTER, et al.,

Defendants.

**21-cv-6683 (EAW)(CDH)**

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S ORDER COURT'S ORDER AT DOCKET 79, TO ADDRESS THE HOLDINGS AT HEADING II. C (DENYING DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF OTHER INCIDENTS, WITHOUT PREJUDICE), II. D (GRANTING DEFENDANTS' MOTION TO PRECLUDE ADMISSION OF JUDGE SCHIANO'S DECISION AND ORDER INTO EVIDENCE, BUT DENYING PRECLUSION OF CROSS EXAMINATION ON THE CONCLUSIONS CONTAINED THEREIN) AND II. E (DENYING DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF THE DARIUS HOWARD CRIMINAL PROCEEDING AND FEDERAL CIVIL RIGHTS LAWSUIT).**

ROTH & ROTH, LLP
Elliot D. Shields
*Attorneys for Plaintiff*
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020
eshields@rothandrothlaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. II

TABLE OF AUTHORITIES ...................................................................................... III

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................... 1

   I.   Judge Schiano's Suppression Ruling Is Admissible and Highly Probative ............... 1

      a.   Haynes v. Acquino "trilogy" demonstrates Judge Schiano's ................................. 1

      b.   The other cases cited by Defendants are distinguishable ........................................ 4

      c.   Judge Schiano's order is admissible for non-hearsay purposes ............................ 7

   II.   Each Piece of Other-Acts Evidence Is Admissible and Responds to Defendants'

Arguments ............................................................................................................... 8

      a.   Napier Videos – Two Pretextual Stops Illustrate Laureano's Modus Operandi ..... 8

      b.   Judicial Finding in Brookins – Fabricated Marijuana Smell ............................... 11

      c.   Judicial Finding in Parsons – Pursuit Based on a "Hunch" ................................. 13

      d.   Judicial Finding in Allen – Coerced Consent and Manufactured Justification ..... 15

      e.   Judicial Finding in Howard – False Testimony About returning Howard's cell

phone ...................................................................................................................... 16

      f.   The Darius Howard Transcripts are admissible under Federal Rule of

Evidence 32, 613, and 801(d)(1)(A) ............................................................. 17

   III.   All of these Materials Are Also Admissible for Impeachment Under Rule 608(b) .. 19

CONCLUSION ........................................................................................................... 20

# **TABLE OF AUTHORITIES**

CASES

*Buari* v. *City of New York*, 530 F. Supp. 3d 356, (S.D.N.Y. 2021) ------------------------------------16
*Carroll* v. *Trump*, 124 F.4th 140, (2d Cir. 2024)-------------------------------------------------------- 9
*Carter* v. *Burch*, 34 F.3d 257 (4th Cir. 1994) ------------------------------------------------------- 5, 6
*Haynes* v. *Acquino*, 692 F. App'x 670, (2d Cir. 2017) ------------------------------------------ passim
*Haynes* v. *Acquino*, 771 F. App'x 75, (2d Cir. 2019)-------------------------------------------- passim
*Haynes* v. *Acquino*, No. 13-cv-6112, 2018 WL 3126725, (W.D.N.Y. June 26, 2018)-------- passim
*In re Mines*, 630 B.R. 107, (Bankr. E.D.N.Y. 2021 ------------------------------------------------ 7, 8
*Nipper* v. *Snipes*, 7 F.3d 415 (4th Cir. 1993) ------------------------------------------------------ 5, 6
*Penree* v. *Watson*, No. 1:14-cv-898, 2017 WL 3437680 (N.D.N.Y. Aug. 10, 2017) --------------- 6
*People* v. *Allen,* Indictment No. 2021-0027A (N.Y. Sup. Ct., Monroe Cnty. Nov. 23, 2021)
    ------------------------------------------------------------------------------------------- passim
*People* v. *Howard,* Indictment No. 2017-0480 (N.Y. Sup. Ct., Monroe Cnty. Sept. 14, 2020)
    ------------------------------------------------------------------------------------------- passim
*People* v. *Parsons,* Indictment No. 2019/0597 (N.Y. Sup. Ct., Monroe Cnty. Dec. 10, 2019)1, 13,
    16, 19
*United States* v. *Brookins,* No. 17-CR-6019, 2018 WL 6629160 (W.D.N.Y. Dec. 19, 2018) 1, 11,
    17 , 20
*United States* v. *Patterson*, 25 F.4th 123 [2d Cir., 2022] ------------------------------------- 10, 11
*United States* v. *Prevezon Holdings* Ltd., 319 F.R.D. 459, (S.D.N.Y. 2017) --------------------- 7, 8
*United States* v. *White,* 692 F.3d 235, (2d Cir. 2012)------------------------------------------------19

STATUTES

Federal Rule of Civil Procedure 32(a)(8)------------------------------------------- 16, 18, 19
Federal Rule of Evidence 401----------------------------------------------------------------------- 2
Federal Rule of Evidence 403----------------------------------------------------------------- 2, 3, 6, 8
Federal Rule of Evidence 404(b) ------------------------------------------------------------- passim
Federal Rule of Evidence 404(b)(2)------------------------------------------------------ 17, 18, 19
Federal Rule of Evidence 608(b) ------------------------------------------------------------- passim
Federal Rule of Evidence 613---------------------------------------------------------------- 17, 18, 19
Federal Rule of Evidence 801(d)(1)(A) ------------------------------------------------- 16, 17, 18, 19
Federal Rule of Evidence 803(8) -------------------------------------------------------------- 6, 16, 19

# INTRODUCTION

Defendants' opposition to Plaintiff Devin Johnson's motion in limine (Dkt. 89) misstates the law, ignores, and misinterprets relevant authority—particularly *Haynes* v. *Acquino*—and fails to address a majority of Plaintiff's evidentiary bases. Plaintiff Devin Johnson filed a supplemental motion in limine (Dkt. 84) seeking admission of: (1) Judge Schiano's suppression ruling in the underlying criminal case; (2) videos of Officer Jonathan Laureano's stops of Nishsean Napier; (3) judicial findings from four other cases—*People* v. *Allen,* Indictment No. 2021-0027A (N.Y. Sup. Ct., Monroe Cnty. Nov. 23, 2021), *People* v. *Howard,* Indictment No. 2017-0480 (N.Y. Sup. Ct., Monroe Cnty. Sept. 14, 2020), *People* v. *Parsons,* Indictment No. 2019/0597 (N.Y. Sup. Ct., Monroe Cnty. Dec. 10, 2019), *United States* v. *Brookins,* No. 17-CR-6019, 2018 WL 6629160 (W.D.N.Y. Dec. 19, 2018)—where courts found Laureano's testimony not credible; and (4) certain transcripts from the Darius Howard cases. These materials are offered to prove lack of probable cause, intent, motive, lack of mistake, modus operandi, and malice, and, if necessary, to impeach Laureano. Defendants' responding memorandum (Dkt. 89) contends that the suppression ruling is inadmissible hearsay, that the other-acts evidence is propensity evidence barred by Federal Rule of Evidence 404(b), and that Plaintiff seeks to try unrelated cases. Plaintiff submits Defendant's arguments fail and the Court should grant Plaintiff's underlying motion.

## ARGUMENT

## I. Judge Schiano's Suppression Ruling Is Admissible and Highly Probative

### a. *Haynes v. Acquino* "trilogy" demonstrates Judge Schiano's

At a minimum, the three *Haynes* decisions stand for the proposition that the suppression order here is relevant and must be admitted, and that the only question is whether the probable cause determination should be redacted under Federal Rule of Evidence 403. Plaintiff respectfully

submits that this case is distinguishable and that the probable cause decision here should not be redacted. The critical distinctions are threefold. First, in *Haynes*, the suppression ruling was overturned on appeal by the County Court, whereas Judge Schiano's suppression order remains valid and unappealed. Second, here the jury will have the Blue-Light video to independently assess the probable cause question and evaluate Laureano's credibility alongside Judge Schiano's decision—a safeguard absent in *Haynes*. Third, unlike Haynes where the criminal court made only probable cause findings, Judge Schiano specifically made an explicit credibility determination finding that Laureano's testimony was not credible based on contradictions revealed by the video. This credibility finding is highly probative under Federal Rule of Evidence 608(b) and directly addresses the core issues of Plaintiff's false arrest, malicious prosecution, and fabrication claims. Moreover, Judge Schiano's determination that Laureano provided incredible testimony is corroborated by four other judicial decisions finding Laureano's testimony unreliable, creating a documented pattern of dishonesty that substantially amplifies its probative value.

The starting point is the Second Circuit's 2017 summary order, which vacated a defense verdict and reversed the district court's evidentiary determination for abuse of discretion where it admitted the suppression ruling from Plaintiff's underlying criminal case into evidence—but redacted the probable cause determination. See *Haynes* v. *Acquino*, 692 F. App'x 670, 672–73 (2d Cir. 2017) (summary order). The court held that suppression orders arising from the very arrest at issue are relevant under Federal Rule of Evidence 401 because such an order "has a tendency to make it more probable that the [officers] arrested [the plaintiff] without probable cause", that the error was not harmless, and that the district court's Rule 403 analysis "gave inadequate consideration of the probative value of the City Court's Decision." *Id*.

On remand, the district court excluded the suppression order because it had been reversed by the County Court on appeal and thus had no legal effect. See *Haynes* v. *Acquino*, No. 13-cv-6112, 2018 WL 3126725, at *2-5 (W.D.N.Y. June 26, 2018). The County Court specifically found that the defendant police officers had probable cause to arrest the plaintiff for disorderly conduct. *Id*. at *2. The County Court also held that "absent a specific finding by the [lower] court that the officers' testimony was not credible and that they had not observed a violation level offense, [Plaintiff's] arrest and the items seized incident thereto should have been deemed lawful." *Id*. (quoting the County Court decision).

The Second Circuit's 2019 summary order held that "the district court did not abuse its discretion in concluding that the potential for unfair prejudice from admitting the state court's ruling substantially outweighed the probative value of the evidence." *Id* at 77. *Haynes* v. *Acquino*, 771 F. App'x 75, 77 (2d Cir. 2019) (summary order). The Circuit gave two reasons: (1) because it was "highly potent and potentially determinative of a key issue on [plaintiff's] false arrest claim at trial"; and (2) because it was "only significant in regard to whether the arresting officers had probable cause." *Id*.

At a minimum, the three *Haynes* decisions stand for the proposition that the suppression order here is relevant and must be admitted, and that the only question is whether the probable cause determination should be redacted under Rule 403. Plaintiff respectfully submits that this case is distinguishable and that the probable cause decision here should not be redacted. Unlike *Haynes*, this case involves a suppression ruling that remains valid and unappealed, containing an explicit credibility finding that directly implicates Officer Laureano's truthfulness—the linchpin of Plaintiff's false arrest, malicious prosecution, and fabrication claims. In *Haynes*, the suppression order had been reversed on appeal, eliminating its legal effect, and the criminal court made no

credibility determinations, only probable cause findings. Here, in contrast, Judge Schiano's order finding no probable cause rests on a specific finding that Laureano's testimony was not credible—a determination highly probative under Rule 608(b). Moreover, Justice Schiano's finding that Laureano provided incredible testimony is corroborated by four other judicial decisions finding Laureano's testimony unreliable, creating a documented pattern of dishonesty that substantially increases its probative value.

Most importantly, the jury will review the same Blue-Light video that Judge Schiano reviewed and will make an independent determination of probable cause. This critical safeguard neutralizes any risk of undue influence from the suppression ruling. The *Haynes* remand court's concern about jurors placing undue weight on a vacated order they could not verify is therefore absent here—the jury can verify Judge Schiano's credibility findings by examining the objective video evidence themselves and reaching their own conclusions about both probable cause and Officer Laureano's truthfulness. These distinctions place this case squarely outside *Haynes*' narrow holding.

### b. *The other cases cited by Defendants are distinguishable*

Defendants' remaining authorities do not undermine the admissibility of Judge Schiano's suppression ruling once the *Haynes* trilogy is properly understood. Each of the cases they invoke involved judicial findings from unrelated proceedings or orders lacking the unique combination of probative features present here—an unappealed, contemporaneous suppression ruling from the same encounter that contains a specific credibility determination and is corroborated by video evidence the jury will see.

Defendants cite *Nipper* v. *Snipes*, 7 F.3d 415 (4th Cir. 1993) to argue that jurors may give undue weight to judicial findings. That argument overlooks critical differences. The order admitted

in *Nipper* involved a different transaction and served to show the defendants' conduct in an unrelated conspiracy. The Fourth Circuit's concern about undue weight stemmed from the fact that the jurors might assume that because a judge in another case found the defendants liable, they must be liable in the present case. By contrast, Judge Schiano's suppression ruling arises from the very stop and arrest at issue in this case; it is not about unrelated conduct. It is therefore directly relevant to probable cause and credibility—two elements the jury must decide. Furthermore, Judge Schiano's order is supported by a specific finding that Officer Laureano's testimony was not credible in light of the Blue-Light video. The jury in our case will review the same video footage and can independently assess both probable cause and Officer Laureano's credibility, which substantially mitigates any risk that jurors will defer blindly to the judge's findings. Thus, whereas *Nipper* involved the danger of importing judicial fact-finding from an unrelated case, here the suppression order is contemporaneous, relevant to the same event, and will be weighed alongside the same objective evidence seen by Judge Schiano.

Defendants similarly cite *Carter* v. *Burch*, 34 F.3d 257 (4th Cir. 1994) to argue that judicial findings are unduly prejudicial, but the case is readily distinguishable. The letter opinion at issue there was a post-conviction habeas ruling that resolved the precise question before the civil jury: whether the defendants withheld exculpatory evidence. It contained no credibility findings and would have supplanted the jury's fact-finding role. In contrast, Judge Schiano's suppression order arises from the same stop and arrest at issue in this case and contains an explicit credibility determination that Officer Laureano's testimony was contradicted by the Blue-Light video. That credibility finding is highly probative under Rule 608(b) because it bears on Laueano's truthfulness—a central issue in Plaintiff's false arrest and malicious prosecution claims. Moreover, the risk that jurors will defer blindly to Judge Schiano's ruling is mitigated here because the jury

will view the same Blue-Light footage and can make its own determination about probable cause and credibility. Thus, while *Carter* cautions against admitting judicial opinions that decide the same issue without additional context, Judge Schiano's suppression order is admissible and distinguishable: it addresses the very stop at issue, contains a credibility finding, and will be presented alongside the underlying video evidence, reducing any risk of undue prejudice.

In *Penree* v. *Watson*, No. 1:14-cv-898, 2017 WL 3437680 (N.D.N.Y. Aug. 10, 2017), the defendants moved in limine "that Plaintiffs should be precluded from "even mentioning" Plaintiff Penree's Utica City Court criminal proceeding that dismissed the charges against him." *Id*. at 1. Judge Hurd excluded the order as inadmissible hearsay under Federal Rule of Evidence 803(8), the public records exception. Judge Hurd also found the order was inadmissible under Rule 403, citing *Nipper* for the proposition admission of judicial findings of fact risk being given "undue weight by the jury". *Id*. at 3. Judge Hurd held that the dismissal of the criminal charges in plaintiff's favor was relevant to plaintiff's malicious prosecution claim—but since the defendants had conceded that element, plaintiff did not need to introduce the order. Here, unlike *Penree*, defendants are not conceding the contested element—probable cause. Moreover, here, unlike *Penree*, Judge Schiano's order contains an explicit credibility finding, and will be accompanied by the same video evidence the judge saw. Thus, *Penree* is distinguishable, and the risk of undue prejudice is mitigated by the jury's ability to view the same video Judge Schiano reviewed in making his finding that Laureano lacked probable cause and that his testimony was not credible.

Thus, all of defendants' authorities are readily distinguishable. Under Rule 403, evidence may be excluded only when its potential for unfair prejudice "substantially outweighs" its probative value. Where, as here, the order is directly relevant, corroborated by multiple other judicial findings of Officer Laureano's dishonesty, and subject to verification by the jury through

independent video review, its probative value far exceeds any risk of prejudice. Any remaining concern can be addressed through a tailored limiting instruction rather than outright exclusion. Accordingly, the suppression ruling should be admitted, and defendants' reliance on inapposite authorities provides no basis for excluding it.

### c. *Judge Schiano's order is admissible for non-hearsay purposes*

Judge Schiano's order dismissing the charges for lack of probable cause is admissible for non-hearsay purposes under the Federal Rules of Evidence. Judicial writings may be introduced not to prove the truth of their factual findings but to demonstrate what was decided and the procedural history of the case. This principle is well-established in federal law.

In *United States* v. *Prevezon Holdings Ltd.*, 319 F.R.D. 459, 467 (S.D.N.Y. 2017), the court admitted a criminal case file "for non-hearsay purposes," recognizing that such documents were relevant "as verbal acts with legal significance" and as part of the procedural history of the prior proceedings. Similarly, in *In re Mines*, 630 B.R. 107, 113–14 (Bankr. E.D.N.Y. 2021), the court held that arbitration documents were admissible "not to prove the truth of the matters asserted, but for the non-hearsay purpose of proving that the arbitration proceeding and resulting award implicated factual findings or legal conclusions" relevant to the subsequent case.

Judge Schiano's order serves the same function here. It is admissible to establish:

1.  **Procedural History:** that the underlying criminal case was dismissed for lack of probable cause, an essential element of both the false arrest and malicious prosecution claims.

2.  **Content of the Judicial Finding:** that the order contained a credibility finding, not for the truth of that determination, but because the inclusion of that finding in the ruling is itself relevant evidence supporting the fabrication-of-evidence claim.

As recognized in *Prevezon* and *Mines*, such judicial documents are admissible to show what was decided and why, without implicating hearsay concerns. The order's existence and contents are legally operative facts and part of the procedural record, not out-of-court statements offered for their truth.

## II.  Each Piece of Other-Acts Evidence Is Admissible and Responds to Defendants' Arguments

Defendants argue that all the other-acts evidence Plaintiff seeks to admit is irrelevant "propensity" material, lumping together videos and judicial findings without addressing their distinct factual and legal significance. A careful review shows that each exhibit is admissible under Federal Rule of Evidence 404(b) and 403, and that defendants' case-law citations do not support exclusion.

### a.  *Napier Videos – Two Pretextual Stops Illustrate Laureano's Modus Operandi*

Plaintiff seeks to admit two recordings documenting Officer Laureano's encounters with Nishsean Napier. The first, captured by Napier's cellphone on April 1, 2017, shows Laureano detaining him on his own porch after he parked his mother's car. Laureano's only explanation is that Napier "looked back" at him—an obviously insufficient basis for a stop. When Napier asks whether he is being harassed "because I'm a Black man with dreads," Laureano offers no lawful rationale. The second recording, from Laureano's body-worn camera on March 15, 2018, shows him pulling over Napier near Culver Road, forcibly removing him from the vehicle, handcuffing him, and then releasing him without a ticket. Defendants frame this as a proper *Terry* stop based on a "man with a gun" report, yet the footage shows Laureano had no idea who he was stopping and, once officers learned the report was a hoax, Napier was free to go. When Laureano inevitably claims this was a lawful *Terry* stop, the videos are, at the very least then, admissible for purposes of impeachment. In addition to impeachment, when considered together, these encounters reveal

a pattern: Laureano repeatedly targets the same young Black man within a year, escalates the encounter without probable cause and concocts justifications afterward to placate his misconduct.

Under Federal Rule of Evidence 608(b), evidence of past or other acts is permissible for purposes of impeachment. Furthermore, under the Second Circuit's inclusionary approach to Federal Rule of Evidence 404(b), other acts evidence is admissible to show modus operandi, intent, motive, and absence of mistake. The Napier videos and judicial findings are offered to prove intent, motive, plan, and absence of mistake, not to show character. Federal Rule of Evidence 404(b) expressly allows such non-propensity uses, and the Second Circuit favors admission of relevant prior acts. Defendants' repeated invocation of "propensity" ignores this settled law and Plaintiff's underlying motion.

In fact, *Carroll* v. *Trump,* 124 F.4th 140, 167-69 (2d Cir. 2024) makes clear that prior acts need not be identical; it is enough that they are "sufficiently similar in material respects" to mark them as the defendant's handiwork *Id.* at 169. In *Carroll*, the concluded "that the Access Hollywood was admissible pursuant to Rule 404(b) as evidence of a pattern, or *modus operandi*, that was relevant to prove that the alleged sexual assault actually occurred (the *actus reus*)." *Id.* at 168. Defendants misread *Carroll* by treating it as limited to sexual-assault cases; they ignore the court's reliance on Federal Rule of Evidence 404(b) to admit the Access-Hollywood tape, and its holding that pattern evidence is admissible to prove motive and intent *Id*.

Like the Access-Hollywood tape, the Napier videos are objective recordings of the defendant's own conduct. They corroborate Johnson's account that Laureano's modus operandi is to initiate traffic stops without cause and fabricate the reason for the stop ex post. *Ismail* v. *Cohen,* 899 F.2d 183 (2d Cir. 1990) and similar civil rights cases likewise admit prior misconduct to show pattern, intent, and absence of mistake. Defendants' argument that the Napier stops are not

"strikingly similar" and that a "signature" device is required misstates the law (Dkt. 89 at 7). The Second Circuit has repeatedly rejected such a rigid standard; as stated above, *Carroll* v. *Trump,* 124 F.4th 140, 167-69 (2d Cir. 2024) makes clear that prior acts need only be "sufficiently similar in material respects." *Id.* at 169. The Napier videos satisfy that test.

Defendants also argue that the March 2018 stop was a lawful *Terry* stop, invoking *United States* v. *Patterson,* 25 F.4th 123 (2d Cir. 2022), and similar cases. However, as the video in the second Napier stop makes clear, Laureano escalated the situation far beyond a mere Terry stop by forcibly removing him from the car, handcuffing and arresting him. After being detained in the back of the police car for some time, Mr. Napier was eventually released without charges. Regardless, Laureano did not even have any lawful basis to conduct a Terry stop—the only information he had was a "Black man" driving a "dark colored sedan" allegedly pointed a gun at a group of middle school student. As the Fourth Department has made clear, the law does not allow the police to stop any young Black man in the general vicinity of an alleged crime based solely on a general description. *People v. Miller*, 191 A.D.3d 111, 117–18, 134 N.Y.S.3d 605, 610 (2020) ("Although the general description of defendant for the most part "matched the description provided by the 911 dispatcher [i.e., he was a young black man of average height in a hooded sweatshirt] … It must be plainly stated—the law does not allow the police to stop and frisk any young black man within a half-mile radius of an armed robbery based solely upon a general description.")

Moreover, *Patterson* and the other decisions cited by Defendants involved detailed descriptions of vehicles and an imminent threat—facts that are absent in the Napier stop. For example, in *Patterson,* Dispatch reports described a recent *menacing with a firearm* involving two Black men in a black or dark gray Camaro (or Challenger) who were *possibly heading to a specific*

*address* (3469 Lexington Avenue) to locate a named individual. Officers knew from experience that Camaros and Challengers looked similar and were rarely seen locally. Within minutes of the radio dispatch, troopers interviewed the victim at the Lexington Avenue address, confirmed no Camaro or Challenger was present, and then—about ten minutes after the initial call—a county officer observed a black Camaro leaving the same ShopRite parking lot where the menacing occurred. Officers could not yet see inside the Camaro to confirm the occupants' race or number, but these cumulative facts, taken together, provided an articulable and particularized basis to suspect that the unseen occupants were the armed assailants described in the report. *United States v. Patterson*, 25 F.4th 123, 136–37 (2d Cir. 2022).

Even if one assumed the stop was lawful, the recording is still probative of Laureano's pattern: when Mr. Napier asked why he was being stopped on the video, Laureano is rude, refuses to inform him why he is being stopped, and aggressively physically removes him from the car. As *Haynes* v. *Aquino* illustrates, suppression rulings and related evidence may be admitted to shed light on intent and credibility even when the underlying stop is disputed. For the same reasons, the Napier videos are admissible under Federal Rule of Evidence 404(b) to demonstrate Laureano's modus operandi, intent, and lack of mistake, and, at minimum, are admissible under Federal Rule of Evidence 608(b) as specific instances of conduct probative of his truthfulness or apparent lack thereof.

### b. *Judicial Finding in Brookins – Fabricated Marijuana Smell*

Defendants argue that Judge Siragusa's order in *United States* v. *Brookins*, Case No. 17-CR-6019 (W.D.N.Y. Sept. 11, 2018), is irrelevant because the traffic stop occurred in a high-crime area and because in the subsequent civil trial, Judge Geraci granted Laureano qualified immunity and dismissed the claims against him on summary judgment. Defendants ignore the key facts

highlighted in Plaintiff's underlying motion: Judge Siragusa found that Laureano's claimed odor of marijuana was so unreliable that the government abandoned that theory of prosecution. The court noted that another officer, Salvatore Amato, searched the car for 20 minutes and never smelled marijuana, directly contradicting Laureano's testimony. The government withdrew its argument on the day Laureano was to testify further, signaling a lack of confidence in his credibility.

This finding is not mere "propensity" evidence; it demonstrates a judicial determination that Laureano fabricated a critical justification for a search—the precise conduct at issue in Johnson's case (ex post fabrication for the stop). Critically, when a trial judge evaluates credibility conflicts through live testimony and rejects an officer's account despite corroborating evidence (the marijuana was found), that is not "conflicting testimony"; it is a finding of untruthfulness. Under Federal Rule of Evidence 608(b), such specific instances of untruthful conduct are admissible to impeach credibility, and a trial court's credibility determination supported by a public record satisfies this rule's requirements.

Moreover, the government's strategic withdrawal of the marijuana theory on the eve of Laureano's further testimony is powerful circumstantial evidence that prosecutors themselves lost confidence in his credibility. The prosecutors had access to all discovery and testimony; their decision to abandon this theory reflects their own assessment that Laureano had fabricated the justification. This prosecutorial vote of no confidence reinforces that Siragusa's judicial finding reflects genuine fabrication, not mere conflicting accounts.

The civil summary judgment dismissal does not undermine this conclusion. Criminal credibility findings and civil liability determinations operate under different burdens and standards in separate proceedings. Judge Siragusa's finding stands independent of Judge Geraci's civil

determination. FRE 608(b) does not condition admissibility on whether the witness "lost" the underlying case; it requires only evidence of untruthful conduct, which Siragusa's order provides.

For purposes of FRE 404(b), the probative value of establishing a pattern is substantial: showing that Laureano fabricated a marijuana smell justification in 2018, received judicial notice that such conduct was unacceptable, yet allegedly repeated a similar ex post fabrication in Johnson's case, demonstrates intent, absence of mistake, and a modus operandi. This is not character propensity—it is repeated use of the same false justification strategy. Modus operandi evidence is explicitly permitted under 404(b) and distinguished from impermissible propensity evidence by the Second Circuit and other authorities.

The similarities that matter—the judicial findings that Laureano fabricated ex post justifications—far outweigh contextual differences (neighborhood, vehicle type, investigative pretext). To require "strikingly similar" factual settings would render pattern evidence nearly impossible in police conduct cases.

At minimum, under Federal Rule of Evidence 608(b), Judge Schiano's Brookins findings are admissible to impeach Laureano's credibility. More robustly, under FRE 404(b), it establishes a pattern of fabricating probable cause, demonstrates notice and recklessness, and goes directly toward assessing punitive damages. The probative value of this evidence far outweighs any prejudice, especially when coupled with a limiting instruction.

### c. Judicial Finding in Parsons – Pursuit Based on a "Hunch"

In the *Parsons* case, the criminal court judge held that officers, including Laureano, lacked reasonable suspicion to pursue and detain Racine Parsons; their belief that a gun had been transferred between suspects was a mere "professional hunch," which is insufficient to establish probable cause for the arrest. Laureano admitted under cross-examination that Parsons committed

no crime and was not being charged with anything, yet he pursued him because he "had taken drugs off Mr. Parsons" in the past.

Defendants ignore the key portion of Justice Schiano's ruling highlighted in Plaintiff's underlying motion: that Laureano had "determined before even approaching defendant to detain and search him based on nothing more than speculation that, at some point, Vanhorn may have passed the gun they suspected him [Vanhorn] of carrying to defendant." Justice Schiano granted the suppression motion, finding that "the police did not have the necessary reasonable suspicion of criminal activity to initiate a chase of defendant."

Defendants attempt to minimize this ruling by noting that it does not explicitly call Laureano a liar and completely disregarding the use for such evidence to establish his modus operandi. The key similarity is that Justice Schiano found in *Parsons*, just like he found in *Johnson*, that Laureano had "determined before even approaching defendant to detain and search him" and that he lacked any legal basis to do so. This is sufficiently similar to be admissible under Federal Rule of Evidence 404(b) to establish Laureano's modus operandi.

Defendants' argument that *Parsons* post-dates the Johnson stop and therefore could not have given Laureano notice ignores that subsequent acts are admissible to show a defendants' modus operandi. Defendants completely ignore the discussion of *Ismail* v. *Cohen,* 899 F.2d 183 (2d Cir. 1990) in Plaintiff's underlying motion, where the court rejected the defendants' contention that the district court abused its discretion in admitting similar act evidence of an incident that occurred "soon after that involved in the instant case", establishing that post-incident misconduct can be highly probative of an officer's intent and pattern of behavior. *Id*. at 188-189.

 The Parsons ruling is admissible to show that Laureano engaged in the same unlawful tactics before, during, and after Johnson's stop, establishing a clear pattern of misconduct, which

undermines any claim that his misconduct was isolated or accidental. Patterns of misconduct spanning before and after the incident are highly probative of modus operandi, intent, knowledge, and malice and are therefore admissible under Federal Rule of Evidence 404(b). Such evidence is also routinely admitted in punitive damages analyses. At minimum, the *Parsons* finding may be used to impeach Laureano under Federal Rule of Evidence 608(b).

### d. Judicial Finding in Allen – Coerced Consent and Manufactured Justification

In *People* v. *Allen*, Judge Bailey Turner found that Laureano entered Destiny Allen's apartment without a warrant and then coerced her into consenting to a search by unhandcuffing her, calling her "doll," and coercing her to sign a form. The court concluded that "Officer Laureano coaxed Defendant Allen to consent to try to justify his initial entry and curious hunch to search the premises," violating her constitutional rights. Defendants contend this ruling is irrelevant because it involved a domestic-dispute investigation and did not include an explicit finding that Laureano lied. But Defendants ignore that the decision is highly probative of Laureano's modus operandi of pre-determining what actions he is going to take and then fabricating a justification for his unlawful actions ex post (there, unlawfully entering the apartment so he could search, and then fabricating "consent" after he unlawfully entered the apartment). The court's determination that Laureano manufactured consent after an illegal entry shows a pattern of repeated deception and disregard for constitutional limits. This evidence demonstrates Laureano's willingness to fabricate justifications for unlawful actions ex post—conduct that aligns closely with the fabrication claim here. Federal Rule of Evidence 404(b) permits such evidence to show modus operandi.

Moreover, the *Allen* ruling is probative on punitive damages. It occurred after the Johnson stop and illustrates that Laureano continued to violate constitutional rights despite prior judicial

rebukes. A pattern of repeated misconduct over several years bears directly on the reprehensibility of Laureano's actions and supports a finding of malice.

> ### e. *Judicial Finding in Howard – False Testimony About returning Howard's cell phone*

Defendants dismiss the *People* v. *Howard* ruling as a Brady violation by the prosecutor and claim it does not involve Laureano's credibility. Nothing could be further from the truth. The Court found that Laureano had provided false testimony twice about having returned Howard's cell phone to him, at a Huntley hearing and at trial. This was not a mere mistake—Howard claims that when he was first approached by Laureano, he began filming the interaction on his cell phone. This false testimony denied Howard access to exculpatory video evidence and led the court to vacate his conviction. The court concluded that the jury's verdict might have been different had the impeachment evidence been available. This is not a mere prosecutorial error; it is a finding that Laureano gave false testimony about handling evidence—exactly the sort of fabrication alleged here.

By falsely testifying that he had returned Howard's cell phone, when he knew that he in fact had turned it into the property clerk, Laureano intentionally suppressed exculpatory evidence, which is the basis for his malicious prosecution and fabrication of evidence claims in his civil suit. Thus, Defendants' claim that Howard's conviction was reversed "solely" based on a Brady violation by the prosecutor is untrue; instead, it was also because Laureano falsely testified that he had returned Howard's cell phone to him. See, e.g., *Buari* v. *City of New York*, 530 F. Supp. 3d 356, 385 (S.D.N.Y. 2021) ("But where, as here, police officers allegedly deceive and mislead subsequent decision-makers with false information, the chain of causation remains intact because the officers are charged with reasonably foreseeing that their actions will influence the subsequent decisions resulting in a deprivation of the plaintiff's liberty.").

Defendants argue that *Howard* lacks "striking similarity" to Johnson's case. Again, the proper inquiry is whether the evidence makes it more probable that Laureano fabricated evidence and lied about his actions, not whether the circumstances match precisely. Laureano's false testimony in *Howard* demonstrates his willingness to misstate facts in official proceedings and is highly relevant to impeaching his credibility in this case. Federal Rule of Evidence 803(8) and p permit such judicial findings, and Federal Rule of Evidence Rule 404(b) allows them to show intent and absence of mistake. Laureano's false testimony in *Howard* is highly probative and admissible for purposes of impeachment.

### f. The Darius Howard Transcripts are admissible under Federal Rule of Evidence 32, 613, and 801(d)(1)(A)

Defendants' claim that Plaintiff seeks to conduct a "mini-trial" is inflammatory rhetoric designed to obscure a simple evidentiary point: Officer Laureano's sworn testimony from the *Howard* proceedings is directly relevant to his credibility and pattern of conduct in this case. The transcripts are admissible under multiple independent grounds. Federal Rule of Civil Procedure 32(a)(8) permits use of deposition testimony from a prior action involving the same subject matter—and at his *Howard* deposition, Officer Laureano was questioned specifically about the Napier stops, the *Brookins*, *Parsons*, and *Allen* incidents, and *this very case*. Federal Rule of Evidence 801(d)(1)(A) permits admission of prior inconsistent statements by a testifying witness, and Federal Rule of Evidence 613 allows prior statements to impeach credibility. These are routine evidentiary uses of prior sworn testimony, not an attempt to "try another case."

Defendants' reliance on this Court's prior order denying Plaintiff's request to depose Officer Laureano (Dkt #54) is misplaced. That order addressed discovery *in this case*—it did not and could not prohibit use of Officer Laureano's deposition testimony from *another case* where he was properly deposed about relevant subject matter. If Defendants' logic were correct, no plaintiff could

ever use an officer's prior testimony from other cases to demonstrate a pattern of misconduct, creating a perverse rule that each constitutional violation must be tried in a vacuum. The *Howard* deposition was not taken to circumvent this Court's discovery rulings; it was properly taken in that litigation and happens to be relevant here because Officer Laureano was asked about his practices, training, and *the Johnson stop itself*.

Defendants fundamentally mischaracterize the purpose and relevance of the *Howard* transcripts. Plaintiff does not seek to prove that Officer Laureano violated Mr. Howard's rights and therefore violated Mr. Johnson's rights. Rather, the transcripts demonstrate Officer Laureano's modus operandi through *his own words*: his pattern of manufacturing probable cause for stops of young Black men, his practice of providing post-hoc justifications contradicted by video evidence, and his testimony about the specific practices at issue in this case. These are proper uses under Federal Rule of Evidence 404(b)(2) to show intent, plan, and absence of mistake. Moreover, if Officer Laureano testifies inconsistently with his *Howard* testimony, those prior statements become substantive evidence under Federal Rule of Evidence 801(d)(1)(A), not merely impeachment.

Defendants' argument that the transcripts lack sufficient "similarity" to this case misses the point entirely. The transcripts are not being offered merely as evidence of "other bad acts"—they contain Officer Laureano's direct testimony about his training, practices, standards for probable cause, and *specific testimony about the Johnson incident*. This is not propensity evidence; it is Laureano's own admissions about the conduct at issue in this trial. The cases Defendants cite regarding Rule 32(a)(8)—*Kreitman*, *Coan*, and others—actually support Plaintiff's position, as they demonstrate the routine use of prior deposition testimony where there is substantial overlap

in subject matter. Here, Officer Laureano was deposed about this very case in the *Howard* litigation, making the overlap not merely "substantial" but exact.

For these reasons, Defendants' objections should be disregarded. The *Howard* transcripts are admissible under Rules 32(a)(8), 801(d)(1)(A), 613, and 404(b)(2), and Officer Laureano may be cross-examined about his prior sworn testimony. Defendants' "mini-trial" accusation is an unsupported attempt to prevent the jury from hearing Officer Laureano's own words about the practices and incidents directly at issue in this case.

III.     **All of these Materials Are Also Admissible for Impeachment Under Rule 608(b)**

Ultimately, even if some or all of the above exhibits are excluded as substantive evidence, they remain admissible for impeachment. Rule 608(b) allows cross-examination on specific instances of conduct probative of a witness's character for truthfulness. The Second Circuit's seven-factor test in *United States* v. *White,* 692 F.3d 235, 248 (2d Cir. 2012) asks courts to consider (1) whether the prior act reflects on credibility; (2) remoteness; (3) similarity; (4) whether it is disprovable by extrinsic evidence; (5) the witness's role at trial; (6) the centrality of credibility to the case; and (7) whether the evidence is necessary to avoid a miscarriage of justice. Each factor favors admission here: the judicial findings involve sworn testimony and credibility determinations, they are recent (2017–2021), they involve similar conduct (fabricating probable cause), they are susceptible to extrinsic proof (through certified orders and transcripts), Laureano's credibility is central to the case, and excluding impeachment would risk a miscarriage of justice. Defendants do not engage with these factors and thus fail to rebut Plaintiff's impeachment argument.

**CONCLUSION**

Defendants' opposition to Plaintiff's supplemental motion in limine (Dkt. 89) misstates the law, ignores controlling precedents, and fails to respond to many of Plaintiff's arguments. Suppression rulings finding lack of probable cause are admissible and highly probative under *Haynes* v. *Acquino*, and Judge Schiano's ruling here includes a credibility determination absent in *Haynes*' remand decision.

The Napier videos and prior judicial findings from *Allen, Howard, Parsons,* and *Brookins* are admissible under Federal Rule of Evidence 404(b), and 803(8) and, at minimum, for impeachment under Federal Rule of Evidence 608(b). The Darius Howard transcripts are admissible under Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 613 and 801(d)(1)(A). They all show a deliberate pattern of unconstitutional conduct, rebuff the defense of innocent mistake, and support punitive damages. Plaintiff does not seek to retry the *Allen*, *Howard*, *Parsons,* or *Brookins* cases; rather, we offer those judicial findings to show Laureano's pattern of fabricating probable cause, which is directly relevant to the issues in this case. The cases are recent, involve similar conduct and demonstrate that Laureano continued his unlawful practices despite judicial admonitions. Defendants' brief does not address Plaintiff's authorities and instead recycles general statements about hearsay and propensity, demonstrating a lack of understanding of Plaintiff's argument and intended use of such evidence. For these reasons, Plaintiff respectfully requests that the Court grant his underlying supplemental motion in limine to admit the suppression ruling and other acts evidence.

Dated: New York, New York      Respectfully Submitted,
       October 27, 2025       ROTH & ROTH LLP

By: _____~//s//~_____
Elliot Dolby Shields, Esq.
*Counsel for Plaintiff*
192 Lexington Ave, Suite 802
New York, New York 10016

Ph: (212) 425-1020

To:     All counsel of record (via ECF)