**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DEVIN JOHNSON,

Plaintiff,    21-cv-6683 (EAW)(CDH)

-against-
THE CITY OF ROCHESTER, et al.,

Defendants.

<u>**PLAINTIFF'S PROPOSED AMENDED JURY INSTRUCTIONS**</u>

Request No. 1: Nature Of The Case And Burden Of Proof...................................................... 2

Request No. 2: Types Of Evidence ....................................................................................... 4

Request No. 3: Separate Claims, Separate Consideration ...................................................... 5

Request No. 4: What Is Not Evidence .................................................................................... 6

Request No. 5: Number Of Witnesses .................................................................................... 7

Request No. 6: Witness Credibility ........................................................................................ 8

Request No. 7: Credibility of Police Officers ...................................................................... 10

Request No. 8: Introduction And Overview Of Claims......................................................... 11

Request No. 9: The Traffic Stop, Gun Located in the Car and Judge Schiano's Suppression Ruling .................................................................................................................................. 14

Request No. 10: Probable Cause And The Lawfulness Of The Stop ...................................... 15

Request No. 11: Claim 1 – False Arrest ............................................................................... 17

Request No. 12: Claim 2 – Malicious Prosecution Under State And Federal Law ................ 19

Request No. 13: Claims 3 and 7 – Due Process Violations Under the State and Federal Constitutions Arising From Laureano's Fabrication Of Evidence (Denial Of Fair Trial) ...... 21

Request No. 14: *Respondeat Superior* Liability on New York State Law Claims.................... 24

Request No. 15: Limiting Instruction Regarding Judge Schiano's Suppression Ruling ............ 25

Request No. 16: References To The Gun Found After The Stop .............................................. 26

Request No. 17: Damages Introduction ................................................................................. 27

Request No. 18: Compensatory Damages .............................................................................. 28

Request No. 19: Punitive Damages ....................................................................................... 30

Deleted: Request No. 1: Nature Of The Case And Burden Of Proof→2¶
Request No. 2: Types Of Evidence→4¶
Request No. 3: Separate Claims, Separate Consideration→5¶
Request No. 4: What Is Not Evidence→6¶
Request No. 5: Number Of Witnesses→7¶
Request No. 6: Witness Credibility→8¶
Request No. 7: Credibility of Police Officers→10¶
Request No. 8: Introduction And Overview Of Claims→11¶
Request No. 9: The Traffic Stop, Gun Located in the Car and Judge Schiano's Suppression Ruling→14¶
Request No. 10: Probable Cause And The Lawfulness Of The Stop→15¶
Request No. 11: Claim 1 – False Arrest→17¶
Request No. 12: Claim 2 – Malicious Prosecution Under State And Federal Law→19¶
Request No. 13: Claims 3 and 7 – Due Process Violations Under the State and Federal Constitutions Arising From Laureano's Fabrication Of Evidence (Denial Of Fair Trial)→21¶
Request No. 14: *Respondeat Superior* Liability on New York State Law Claims→24¶
Request No. 15: Limiting Instruction Regarding Judge Schiano's Suppression Ruling→25¶
Request No. 16: References To The Gun Found After The Stop→26¶
Request No. 17: Damages Introduction→27¶
Request No. 18: Compensatory Damages→28¶
Request No. 19: Punitive Damages→30¶
Request No. 1: Nature Of The Case And Burden Of Proof→2¶
Request No. 2: Types Of Evidence→4¶
Request No. 3: Separate Claims, Separate Consideration→5¶
Request No. 4: What Is Not Evidence→6¶
Request No. 5: Number Of Witnesses→7¶
Request No. 6: Witness Credibility→8¶
Request No. 7: Credibility of Police Officers→10¶
Request No. 8: Introduction And Overview Of Claims→11¶
Request No. 9: The Traffic Stop, Contraband and Judge Schiano's Suppression Ruling→14¶
Request No. 10: Probable Cause And The Lawfulness Of The Stop→15¶
Request No. 11: Claim 1 – False Arrest→17¶
Request No. 12: Claim 2 – Malicious Prosecution Under State And Federal Law→19¶
Request No. 13: Claims 3 and 7 – Due Process Violations Under the State and Federal Constitutions Arising From Laureano's Fabrication Of Evidence (Denial Of Fair Trial)→21¶
Request No. 14: *Respondeat Superior* Liability on New York State Law Claims→24¶
Request No. 15: Limiting Instruction Regarding Judge Schiano's Suppression Ruling→25¶
Request No. 16: References To "Contraband" Found After The Stop→26¶
Request No. 17: Damages Introduction→27¶
Request No. 18: Compensatory Damages→28¶
Request No. 19: Punitive Damages→30¶

**Request No. 1: Nature Of The Case And Burden Of Proof**

This is a civil case, and the plaintiff bears the burden of proving the material allegations in his Complaint by a preponderance of the evidence. That means he must prove that it is more likely than not that his version of the facts is true. If, after considering all the testimony and exhibits, you conclude that the evidence on each essential element of plaintiff's claim weighs in his favor—even if only slightly—then he has met his burden. However, if you find that the evidence is equally balanced, or that the evidence does not favor the plaintiff, then you must find for the defendants on that claim. *See* Sand, *Modern Federal Jury Instructions*, Instruction 73-1. I will address the plaintiff's burden of proof in further detail below.

However, the defendants have the burden of proof on their affirmative defenses, including their affirmative defense that there was probable cause for the initial stop of the vehicle and for the arrest of Plaintiff. *Stinson v. City of New York*, No. 10 CIV. 4228 RWS, 2014 WL 4742231, at *8 (S.D.N.Y. Sept. 23, 2014)( "The Second Circuit has held in the past that it generally looks to the law of the state in which an arrest occurred in analyzing § 1983 claims, and has done so since the *Davis* decision and New York law places the burden of raising and proving the affirmative defense of probable cause on defendants in false arrest cases."). An affirmative defense is a legal defense that, if proven, defeats or limits liability even if the plaintiff has proven the elements of his claim. Defendants have the burden to prove any affirmative defense by a preponderance of the evidence. If Defendants fail to prove an affirmative defense by a preponderance of the evidence, you must reject that defense. If the evidence is evenly balanced on an affirmative defense, Defendants have not met their burden. In this case, Defendants contend that the stop and arrest were supported by probable cause. Because probable cause is asserted as an affirmative defense, Defendants bear the burden to prove probable cause by a preponderance of the evidence.

2

Deleted: ¶

Deleted: to demonstrate that

Deleted: See, e.g., *Stinson v. City of New York*, 2014 U.S. Dist. LEXIS 133741, at *20* (S.D.N.Y. 2014) *(*Applying New York law and explaining, "The Defendants bear the burden of raising and proving that they had probable cause to stop the vehicle and probable cause to arrest the plaintiff."*).*

The party with the burden of proof on any given issue must prove every disputed element of his claim by a preponderance of the evidence. If you decide that the plaintiff has not met this standard on an element necessary to his claim, then you must find against him on the specific claim at issue. *See* Sand, *Modern Federal Jury Instructions*, Instruction 73-2. If you find that the defendants failed to establish probable cause for the initial vehicle stop, then you must rule in Plaintiff's favor on the specific claim at issue.

To establish a fact by a preponderance of the evidence means to demonstrate that the fact is more likely true than not true. This phrase refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents. In determining whether a claim has been proved by a preponderance, you may consider the testimony of all witnesses who testified and all exhibits received in evidence, regardless of who called or produced them. *Id.*

If the credible evidence on any issue is evenly divided, so that it is equally probable that one side is correct as the other, then the party with the burden of proof has failed to meet that burden. The reason is that this party must prove more than mere equality of evidence; he must prove that his position is more likely correct than not. If your review of the evidence leads you to find that it very slightly favors the plaintiff, that is sufficient to find that he has met his burden of proving his claim by a preponderance of the evidence. *Id.; see also Nisso-Iwai Co., Ltd. v. M/T Stolt Lion*, 719 F.2d 34, 38 (2d Cir. 1983).

Some of you may have heard of the requirement of proof "beyond a reasonable doubt," which applies in criminal cases. That requirement does not apply in this civil case, and you must put it out of your mind. The only standard that applies here is proof by a preponderance of the evidence. *See* Sand, *Modern Federal Jury Instructions*, Instruction 73-2.

**Request No. 2: Types Of Evidence**

There are two types of evidence that you may consider in reaching your verdict: direct evidence and circumstantial evidence. Direct evidence is testimony about something the witness knows by means of his or her own senses—something he or she has seen, heard, felt, or touched. It may also be an exhibit that shows the existence or condition of a fact at a given time. Circumstantial evidence, on the other hand, is proof of certain facts from which you may infer the existence or nonexistence of another fact. For example, if the courtroom blinds are drawn and several people walk in with dripping umbrellas, you could conclude that it is raining outside— even though you have not directly observed the weather. Circumstantial evidence is of no less value than direct evidence. The law draws no distinction between them; it simply requires that your verdict be based on a preponderance of all the evidence presented. *See* Sand, *Modern Federal Jury Instructions*, Instruction 74-2.

**Request No. 3: Separate Claims, Separate Consideration**

Although there is one plaintiff (Devin Johnson) and two defendants (City of Rochester and Officer Laureano), Mr. Johnson brings five separate claims. You should evaluate each claim separately according to the instructions I will give you. The fact that you may find for Mr. Johnson on one claim does not necessarily mean you must find for him on another. Similarly, the fact that you may decide against him on one claim does not necessarily require you to decide against him on the others.

**Request No. 4: What Is Not Evidence**

As I have mentioned, statements, questions, or arguments by counsel are not evidence. If both parties stipulate or agree that a certain fact is true, you must accept that stipulation as evidence and regard that fact as conclusively proven.

Any testimony or exhibit that I may have instructed you to disregard or strike from the record is not evidence and should play no part in your deliberations. The rules of evidence exist to ensure that your verdict is based on the most reliable and probative information.

If a lawyer's question includes an assertion of fact, you should not consider that assertion as evidence unless a witness has adopted it as true in his or her answer. Again, only the witness's answers, the exhibits admitted into evidence, or any stipulations between the parties constitute evidence.

Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.

**Request No. 5: Number Of Witnesses**

The weight or importance of evidence is not determined by the number of witnesses on one side or the other. Instead, you should carefully review all the facts and circumstances in evidence when deciding which witnesses you find most credible. It is entirely possible that the testimony of a smaller number of witnesses on one side is more compelling or persuasive than that of a greater number of witnesses on the other side.

The law does not require that either party present every witness who may have been involved in the events at issue. Ultimately, it is for you to decide, from the evidence actually presented at trial, whether the plaintiff has proved his claims by a preponderance of the evidence

Focus on the quality of the evidence and the credibility of each witness, not on how many witnesses each side called.

**Request No. 6: Witness Credibility**

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. It must also be obvious to you that both sides cannot be true, and this is where you play your role as jurors. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party, as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony, and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

*If you find that a particular witness has testified falsely in any one or material part of his or her testimony, you may look with distrust upon the other evidence given by that witness. And if you find any witness testified in a manner that is willfully and intentionally false, you may disregard all evidence given by that witness, or you may accept that part you do believe and disregard that part you believe is false. There is no magic formula to evaluate the truthfulness of witnesses. In your everyday affairs, each of you determines for yourself the reliability of statements*

*made to you by other people, and those same tests that you use in your everyday dealings should*

*be applied in your jury deliberations. You use common sense, and you rely on your human*

*experience.*

Authority: First three paragraphs of the requested charge taken verbatim from Sand, Siffert, Loughlin, Reiss, Allen and Rakoff, Modern Federal Jury Instructions (2012), Volume 4 (Civil), Instruction 76-1 (the third and fifth paragraphs of Sand's charge not included here; italicized portions added.)

**Request No. 7: Credibility of Police Officers**

The testimony of a law enforcement officer is entitled to no special or exclusive sanctity. Rather, the testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating an officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. You should not give either greater or lesser credence to the testimony of a witness merely because he is a law enforcement officer. You should recall his demeanor on the stand, his manner of testifying, and the substance of his testimony, and weigh and balance it just as carefully as you would the testimony of any other witness. People employed by the government, including police officers, do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight.

Authority: Adapted from Avery, Rudovsky & Blum, Police Misconduct: Law and Litigation, 2006) § 12:8.

**Request No. 8: Introduction And Overview Of Claims**

Plaintiff Devin Johnson has brought several causes of action against the City of Rochester and Officer Jonathan Laureano arising from a traffic stop and arrest on August 24, 2019. Some of these claims are brought under state law, and others are brought under federal law (42 U.S.C. § 1983).

First, you should understand that 42 U.S.C. § 1983 provides a private cause of action against any person who, acting under color of state law, deprives another of rights secured by the United States Constitution or federal law. Because § 1983 imposes liability only upon those who actually cause the deprivation of such rights, personal involvement of the defendant in the alleged constitutional violation is a prerequisite to an award of damages. *See Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).

Section 1983 does not require the plaintiff to demonstrate that the defendants acted with the specific intent to violate the plaintiff's federally protected rights. In other words, the plaintiff is not required to prove that the defendants had a conscious intent, objective, or motive to violate his rights. Nor does Section 1983 require the plaintiff to show that the defendants abused governmental power.

In addition, Mr. Johnson asserts parallel or related violations under New York State law. When you consider the state-law causes of action, you will apply New York law. Plaintiff's claims are as follows:

1. **False Arrest under New York law** (First Cause of Action) – Plaintiff alleges that both defendants (Officer Laureano and the City) caused him to be arrested without lawful justification.

2. **Malicious Prosecution under New York law** (Second Cause of Action) – Plaintiff alleges that both defendants prosecuted him on criminal charges without probable cause and with malice.

3. **Due Process Violation under the New York State Constitution** (Seventh Cause of Action) – Plaintiff alleges that the City of Rochester violated his due process rights by causing his liberty to be deprived on the basis of false or fabricated evidence.

4. **Malicious Prosecution under 42 U.S.C. § 1983** (Eighth Cause of Action) – Plaintiff alleges that Officer Laureano violated his federal constitutional rights by maliciously prosecuting him, again without probable cause and with malice.

5. **Due Process violations arising from Fabrication of Evidence under 42 U.S.C. § 1983** (Ninth Cause of Action) – Plaintiff alleges that Officer Laureano fabricated evidence or made false statements that deprived him of a fair trial and caused an unconstitutional deprivation of his liberty.

It is your duty to decide whether Mr. Johnson has proven each of these claims by a preponderance of the evidence—meaning it is more likely than not that his allegations are true. I will explain the elements of each claim, the specific legal standards you must apply, and what facts or evidence you should (and should not) consider, so that your verdict is guided by the law and based solely on the evidence presented.

Authority: Schwartz and Pratt, Section 1983 Litigation: Jury Instructions (2008 Supp.), Instruction 3.02.1; Hudson v. New York City, 271 F.3d 62, 68 (2d Cir. 2001); adapted from M. Avery, et al. Police Misconduct: Law and Litigation, Section 12:6, Clark Boardman Callagahn (1996).

---

**Request No. 9: The Traffic Stop, Gun Located in the Car and Judge Schiano's Suppression Ruling**

You have heard that after Officer Laureano stopped Mr. Johnson's vehicle, a gun was found in the car. In the prior state-court criminal case against Mr. Johnson, Justice Charles A. Schiano, Jr. ruled that Officer Laureano's stop of the vehicle was unlawful and therefore suppressed the gun as a fruit of an illegal stop. See *People v. Johnson*, No. 2019-202259, slip op. at 4 (N.Y. Sup. Ct. Oct. 13, 2020); see also *Johnson v. City of Rochester*, No. 21-CV-6683DGL, slip op. at 4–5 (W.D.N.Y. Nov. 28, 2023) (Dkt. #38) (summarizing Justice Schiano's ruling).

Because the stop was found to be unlawful and the gun was suppressed, the charges against Mr. Johnson were dismissed. See *Johnson*, slip op. at 4. In this civil case, you must reach your own determination as to whether the stop was indeed unlawful (no probable cause). The state court's ruling is not automatically binding on you here, but it is evidence you may consider. Regardless, it remains a core principle that what the officer found afterward cannot retroactively justify the stop. *Id.* at 14–15. The stop must stand or fall on the facts known to the officer at the moment he initiated it. Any evidence discovered after the stop (such as the gun) cannot be used to justify the stop—the officer's actions must be judged based on what he knew at the time he activated his emergency lights, not on what he learned afterward.

14

**Request No. 10: Probable Cause And The Lawfulness Of The Stop**

Several of Mr. Johnson's claims hinge on whether Officer Laureano had "probable cause" to stop the vehicle at the time he activated his emergency lights. "Probable cause" to stop (or arrest) exists if, at the moment Officer Laureano activated his lights, the facts and circumstances known to him were sufficient to lead a reasonable officer to believe that Mr. Johnson had committed a traffic violation or crime. It requires more than a mere hunch or suspicion; there must be reasonably trustworthy information pointing to a violation of the law. If such facts existed at the time of the stop, the stop is lawful. If not, the stop is unlawful under the Fourth Amendment. *See Johnson*, slip op. at 14–15 (citing *Savage v. Acquino*, No. 13-CV-6376, 2018 WL 1478254, at *n.6 (W.D.N.Y. Mar. 13, 2018)). You must decide as a question of fact whether the traffic violation Officer Laureano claims to have observed actually occurred.

**Timing Is Key**: You should consider only what Officer Laureano knew at the time he stopped Mr. Johnson, not anything he learned later—like the fact that Mr. Johnson fled after the car was stopped or the subsequent discovery of the gun in the car. *Johnson*, slip op. at 14–15 (citing *Savage*, 2018 WL 1478254, at *n.6). You cannot retroactively justify the stop based on what was found afterward. An officer must have probable cause before stopping a vehicle

**Prior Ruling about Lawfulness**: The state-court judge concluded the stop was made without probable cause, but for this civil trial, you are the fact-finder. *See id.* at 11 (discussing Justice Schiano's suppression decision). If you agree no probable cause existed at the moment of the stop, the stop was unlawful.

**Defendants' burden:** Under New York law, once a plaintiff has shown he was stopped or arrested, the burden shifts to the defendants to prove that the stop or arrest was justified by probable

cause. "The Second Circuit has held in the past that it generally looks to the law of the state in which an arrest occurred in analyzing § 1983 claims, and has done so since the *Davis* decision[5] and New York law places the burden of raising and proving the affirmative defense of probable cause on defendants in false arrest cases." *Stinson v. City of New York*, No. 10 CIV. 4228 RWS, 2014 WL 4742231, at *8 (S.D.N.Y. Sept. 23, 2014)

**Formatted:** Font: Italic, No underline

**Deleted:** "The Defendants bear the burden of raising and proving that they had probable cause to stop the vehicle and probable cause to arrest the plaintiff." (See, e.g., Stinson v. City of New York, 2014 U.S. Dist. LEXIS 133741, at *20 (S.D.N.Y. 2014) (citing New York law).)

**Request No. 11: Claim 1 – False Arrest**

Deleted: ¶ ... [2]

Under New York law, a person who is intentionally confined without lawful justification may bring a claim for false arrest. To succeed on this claim, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. The officer intentionally confined or detained the plaintiff,

2. The plaintiff was aware of that confinement,

3. The plaintiff did not consent to the confinement, and

4. The confinement was not otherwise privileged (that is, it was not justified by probable cause).

*See Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975).

Defendants concede that they intended to confine Mr. Johnson, that he was aware of the confinement, and that he did not consent. The primary question is whether the confinement was privileged—that is, whether the officer had probable cause to arrest or detain Mr. Johnson at the moment he initiated the stop.

Thus, in deciding the false arrest claim, just as with the malicious prosecution claim, the only dispute is whether Officer Laureano had probable cause at the moment he initiated the stop. The Court has already ruled that "[t]he question . . . is whether the stop itself was justified," and that post-stop evidence—such as contraband discovered later—"cannot provide retroactive probable cause" for the initial stop. (*ECF 38 at 14–15* (citing *Savage v. Acquino*, No. 13-CV-6376, 2018 WL 1478254, at *n.6 (W.D.N.Y. Mar. 13, 2018))).

Thus, your analysis of probable cause should be the same as for the malicious prosecution claim:

- If you decide that Laureano lacked a valid basis (i.e., no probable cause) at the moment he initiated the stop, then the confinement was unlawful, and you must find in Mr. Johnson's favor on his false arrest claim.

- If you find that Laureano did have a valid basis for the stop (i.e., probable cause) at the outset, then Mr. Johnson's false arrest claim fails.

In deciding this claim, keep in mind that only the facts known to Officer Laureano at the precise moment he initiated the stop matter. Any evidence discovered afterward—such as contraband in the vehicle—cannot create probable cause retroactively.

**Request No. 12: Claim 2 – Malicious Prosecution Under State And Federal Law**

Under both New York law and 42 U.S.C. § 1983, a plaintiff claiming malicious prosecution must prove four elements:

1. The defendant initiated or continued a criminal proceeding against the plaintiff,

2. The proceeding terminated in the plaintiff's favor,

3. There was no probable cause for the prosecution, and

4. The defendant acted with malice.

*See Boyd v. City of New York*, 336 F.3d 72, 75–76 (2d Cir. 2003); *Johnson v. City of Rochester*, 21-CV-6683DGL, ECF 38, at 14–23 (W.D.N.Y. Nov. 28, 2023).

In this case, you must decide only the first, third and fourth elements. The "criminal proceeding" at issue is the weapons-indictment prosecution—Indictment No. 2020/0070—which terminated in Plaintiff's favor after the firearm was suppressed and the charges were dismissed. Thus, the Second Element is not in dispute.

First, you must decide whether Officer Laureano initiated or continued that prosecution. In deciding that element, you may consider whether Laureano's actions were sufficiently connected to the initiation or continuation of the weapons prosecution, including whether he provided information that was materially false and that substantially furthered the prosecution, such as false statements in paperwork, to the prosecutor or to the grand jury concerning the basis for the stop and seizure.

Second, you must decide whether Officer Laureano had probable cause to initiate the traffic stop of the vehicle Mr. Johnson was driving. In this case, "probable cause to arrest and probable cause to prosecute are 'intertwined'" because both hinge on Laureano's alleged justification for the stop. ECF 38 at 23 (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)). Thus, just

as with the false arrest claim, the only dispute is whether Officer Laureano had probable cause at the moment he initiated the stop, and post-stop evidence—such as the later discovered gun—"cannot provide retroactive probable cause" for the initial stop. ECF 38 at 14–15 (citing *Savage v. Acquino*, No. 13-CV-6376, 2018 WL 1478254, at *n.6 (W.D.N.Y. Mar. 13, 2018)).

Lastly, "A lack of probable cause generally creates an inference of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003). Thus, if you determine that there was no probable cause for the initial stop, you may infer malice.

In deciding this claim, keep in mind that only the facts known to Officer Laureano at the precise moment he initiated the stop matter. Any evidence discovered afterward—such as contraband in the vehicle—cannot create probable cause retroactively. You should not consider whether there was probable cause to prosecute any non-weapons charges (such as resisting arrest or other arrest-stage charges), because the only prosecution at issue is the weapons-indictment prosecution, Indictment No. 2020/0070. If you conclude that no probable cause existed at the start, Mr. Johnson prevails on his malicious prosecution claims. If you find that probable cause did exist, then he does not.

20

Deleted: .

Deleted: The Court has already ruled that "[t]he question . . . is whether the stop itself was justified,"

Deleted: that

Deleted: contraband

Deleted: later

Deleted: (

Formatted: Font: Not Italic

Deleted: )

Moved up [1]: "probable cause to arrest and probable cause to prosecute are 'intertwined' here," because both hinge on Laureano's alleged justification for the stop. (*ECF 38 at 23* (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003))). Accordingly, none of the other elements of malicious prosecution are in dispute—the charges were dropped in Mr. Johnson's favor, and if you find no probable cause, the law allows an inference of malice.

Deleted: The Court also recognized that "probable cause to arrest and probable cause to prosecute are 'intertwined' here," because both hinge on Laureano's alleged justification for the stop. (*ECF 38 at 23* (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003))). Accordingly, none of the other elements of malicious prosecution are in dispute—the charges were dropped in Mr. Johnson's favor, and if you find no probable cause, the law allows an inference of malice.

Formatted: Font: Not Bold, Italic

Deleted: Thus, your analysis of probable cause should be the same as for the false arrest claim.

Deleted: If you decide Laureano lacked a valid basis (no probable cause) at the moment he initiated the stop, Mr. Johnson prevails on his malicious prosecution claim. If you find Laureano did have a valid basis for the stop or arrest (i.e., probable cause) at the outset, then Mr. Johnson's malicious prosecution claim fails.

Deleted: ¶ ... [3]

**Request No. 13: Claims 3 and 7 – Due Process Violations Under the State and Federal Constitutions Arising From Laureano's Fabrication Of Evidence (Denial Of Fair Trial)**

Deleted: ¶ ... [4]

Under federal law, a police officer violates a person's constitutional right to a fair trial if the officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors," causing the person to be deprived of liberty. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016); *Johnson v. City of Rochester*, 21-CV-6683DGL, ECF 38, at 27–28 (W.D.N.Y. Nov. 28, 2023).

Plaintiff's State law due process violation mirrors the federal claim, but is also asserted against the City of Rochester, who, as Laureano's employer, is responsible for his violations of Plaintiff's rights under New York State law.

To establish these claims, Mr. Johnson must prove the following elements by a preponderance of the evidence:

1. **Fabrication or Falsification**: The officer fabricated or falsified material information;

2. **Likelihood to Influence**: That false information was likely to influence a jury's decision— or the prosecutor's decision to charge and continue prosecuting;

3. **Forwarded to Prosecutors**: The officer forwarded that false information to prosecutors (or otherwise ensured prosecutors relied on it); and

4. **Deprivation of Liberty**: Mr. Johnson was deprived of his liberty as a result of that fabricated evidence.

*Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)

### 1. Fabrication or Falsification

The key question is whether Officer Laureano intentionally invented or misstated facts about observing a traffic violation that never actually occurred. An honest mistake or trivial inaccuracy will not amount to a constitutional violation; the fabrication must be intentional and material.

### 2. Likely to Influence

False information is considered "likely to influence" if it reasonably could have affected the prosecutor's decision to bring or continue charges, or would have mattered to a jury if the case had proceeded to trial. You do not need to find that the case actually went to a full trial; a fabrication claim can be made even if the charges were dismissed pretrial.

### 3. Forwarded to Prosecutors

Mr. Johnson must show that Laureano communicated or forwarded the alleged false information to the District Attorney's Office or other prosecutors. The Court has already ruled that Laureano's testimony or statements about the stop played a pivotal role in the criminal proceeding. If you conclude Laureano falsely asserted a lawful basis for the stop—and did so knowing it would be used to justify the arrest and charges—this element is met.

### 4. Deprivation of Liberty

It is undisputed Mr. Johnson was detained and prosecuted. If you find he was detained on the basis of deliberately falsified evidence, this requirement is satisfied.

### 5. Application to This Case

If you find that Officer Laureano intentionally misstated or fabricated the basis for stopping Mr. Johnson's vehicle (for instance, by falsely claiming he observed a traffic violation), and then passed that misinformation along to prosecutors, then Mr. Johnson prevails on his fabrication-of-evidence (fair trial) claim—even though the charges did not go to a full jury trial. (*ECF 38 at 27–28.*)

If you find that Laureano **deliberately** created false information regarding probable cause and that it **likely influenced** the prosecution, then you must find in Mr. Johnson's favor. However, if you conclude Laureano did not fabricate information or that any minor inaccuracies were not intentional or material—and thus did not influence the prosecution—then Mr. Johnson's fabrication claim fails.

**Request No. 14: *Respondeat Superior* Liability on New York State Law Claims**

Mr. Johnson also seeks to hold Defendant City of Rochester liable for the actions of Defendant Laureano in falsely arresting and maliciously prosecuting him, as well as violating his due process rights through the fabrication of evidence.

Defendant City of Rochester concedes that it is responsible for the acts of Defendant Laureano in connection with Mr. Johnson's arrest and prosecution.

Thus, if you find that Mr. Johnson has proven any of his New York State law claims for false arrest, malicious prosecution, or due process violations due to fabrication of evidence against Defendant Laureano, then you will also have found that he has proven those claims against Defendant City of Rochester.

Authority: Adapted from N.Y. Pattern Jury Instr. – Civil – PJI 2:235 (Vicarious or Derivative Responsibility – Employer-Employee – Scope of Employment).

**Request No. 15: Limiting Instruction Regarding Judge Schiano's Suppression Ruling**

You have heard that in the state criminal case, Justice Schiano suppressed the gun because the stop was found unlawful. *Johnson*, slip op. at 4. This resulted in the charges being dismissed. *Id.* Although that ruling does not automatically decide our civil case, you may consider it as evidence and give it weight in deciding whether probable cause was lacking. *Id.* at 11. Ultimately, your role is to determine—for yourself—whether Officer Laureano had probable cause to stop Mr. Jonson's vehicle.

**Deleted:** contraband

**Request No. 16: References To The Gun Found After The Stop**

You have heard testimony about a gun that was discovered in the car Mr. Johnson was driving after the stop. The state court suppressed that evidence, meaning it was deemed inadmissible in the criminal case and treated as though it was never found. Because of that ruling, you must remember that the gun cannot justify or retroactively create probable cause for the original stop, which must stand or fall on the information available to Officer Laureano at the time he initiated it. You should not let the fact that a gun was eventually discovered color your assessment of whether the stop itself was lawful. In other words, do not assume Mr. Johnson was doing something wrong that night simply because the gun was found later. The legality of the stop does not depend on the nature, seriousness, or illegality of whatever was subsequently recovered. For these reasons, you may not consider the discovery of the gun as proof of Mr. Johnson's guilt or as a legitimate basis for the stop. The central question is whether Laureano had a lawful reason to pull over the vehicle Mr. Johnson was driving at the precise moment he activated his emergency lights.

---

**Deleted:** ¶

**Deleted:** "contraband"

**Deleted:** 's car

**Deleted:** is contraband

**Deleted:** contraband

**Deleted:** illegal

**Deleted:** items were

**Deleted:** contraband

**Deleted:** 's

**Deleted:** vehicle

**Request No. 17: Damages Introduction**

If you decide that Mr. Johnson has proven any of his claims by a preponderance of the evidence, you must then award damages. These instructions on damages do not imply an opinion about whether you should find in Mr. Johnson's favor on liability; rather, they are provided so that you have a framework for considering damages if you do conclude that one or more of the defendants is liable.

Mr. Johnson alleges that, as a result of the arrest and prosecution at issue in this case, he was confined in the Monroe County Jail for approximately fourteen and a half (14½) months before being released. If you find that the arrest, prosecution, or any other challenged conduct was unlawful, and that it led to Mr. Johnson's extended confinement, you must compensate him for that loss of liberty and any related injuries—physical, emotional, or otherwise—that were directly caused by the defendants' misconduct.

You may also consider awarding punitive damages to punish Officer Laureano for his misconduct, which I will more fully explain below.

Authority: Adapted from Sand, Siffert, Loughlin, Reiss, Allen and Rakoff, Modern Federal Jury Instructions (2012), Volume 5 (Civil), Instruction 77-1.

**Request No. 18: Compensatory Damages**

The purpose of the law of damages is to award, as far as possible, sufficient damages to compensate a plaintiff for any injury and any loss proximately caused by the defendants' conduct. These are known as "compensatory damages." Compensatory damages seek to make a plaintiff whole—that is, to compensate him for the damage suffered.

Compensatory damages are not only for expenses that a plaintiff may have borne. A prevailing plaintiff is entitled to compensatory damages for:

- Loss of liberty or the amount of time confined in jail

- Physical injury,

- Pain and suffering,

- Emotional and mental anguish, and

- Shock and discomfort that he or she has suffered because of the defendants' conduct.

The law does not require a plaintiff to prove the amount of his losses with mathematical precision. I cannot give you a yardstick by which to measure the dollar amount of pain or injury.

You heard the plaintiff's testimony and the testimony of the other witnesses. If you award compensatory damages, you will have to determine, based on your common sense and experience, the amount of money that will fairly and reasonably make the plaintiff whole or compensate him for the injuries and pain and suffering that he sustained—and may continue to sustain—as a consequence of any acts that violated his rights.

You are to use your sound discretion in fixing an award of compensatory damages, drawing all reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

In sum, your award of compensatory damages should reasonably compensate the plaintiff for such injury and damage as you find that the plaintiff has sustained or is reasonably likely to sustain in the future.

Authority: Adapted from Sand, Siffert, Loughlin, Reiss, Allen and Rakoff, Modern Federal Jury Instructions (2012), Volume 5 (Civil), Instruction 77-3; Kerman v. City of New York, 374 F.3d 93, 124-31 (2d Cir. 2004)); Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 38-39 (2d Cir. 1985).

**Request No. 19: Punitive Damages**

You have the discretion to award punitive damages to punish Defendant Laureano for extreme or outrageous conduct or to deter or prevent Defendant Laureano and others like him from committing such conduct in the future. You may award punitive damages as a separate award in addition to compensatory damages. You may also award punitive damages on their own, even if you find that the plaintiff did not establish actual compensatory damages.

You may award the plaintiff punitive damages if you find that the acts or omissions of Defendant Laureano were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite toward the injured person. An act or failure to act is wanton if done in reckless or callous disregard of, or indifference to, the rights of the injured person. The plaintiff has the burden of proving, by a preponderance of the evidence, that Defendant Laureano acted maliciously or wantonly with regard to the plaintiff's rights.

If you find by a preponderance of the evidence that Defendant Laureano acted with malicious intent to violate the plaintiff's federal rights, or if you find that Defendant Laureano acted with a callous or reckless disregard of the plaintiff's rights, then you may award punitive damages. An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, you may decide to award punitive damages, or you may decide not to award them.

In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter him and others like him from engaging in similar conduct in the future. Thus, in deciding whether to award punitive damages, consider whether Defendant Laureano's conduct should be punished solely by an award of compensatory damages, or whether the conduct was so extreme

and outrageous that compensatory damages alone are inadequate. You should also consider whether actual damages alone are likely to deter or prevent Defendant Laureano from again engaging in any wrongful acts he may have committed, or whether punitive damages are necessary to provide additional deterrence. Finally, you should consider whether punitive damages are likely to deter or prevent other persons from engaging in wrongful acts similar to those Defendant Laureano may have committed.

If you decide to award punitive damages, these same purposes should guide you in determining the appropriate sum to be awarded. That is, in fixing the amount, you should consider the degree to which Defendant Laureano should be punished for his wrongful conduct and the degree to which an award of one sum or another will deter others from committing similar wrongful acts in the future.

Authority: Adapted from Sand, Siffert, Loughlin, Reiss, Allen and Rakoff, Modern Federal Jury Instructions (2012), Volume 5 (Civil), Instruction 87-92.

Dated: New York, New York                  Respectfully Submitted,
       January 7, 2026                      ROTH & ROTH LLP

                            By: _____~//s//~_____
                                Elliot Dolby Shields, Esq.
                                *Counsel for Plaintiff*
                                192 Lexington Ave, Suite 802
                                New York, New York 10016
                                Ph: (212) 425-1020

To:    All counsel of record (via ECF)

31

| | | |
|---|---|---|
| **Page 4: [1] Deleted** | **Elliot Shields** | **1/7/26 4:56:00 PM** |
| **Page 17: [2] Deleted** | **Elliot Shields** | **1/7/26 8:26:00 PM** |
| **Page 20: [3] Deleted** | **Elliot Shields** | **1/7/26 8:21:00 PM** |
| **Page 21: [4] Deleted** | **Elliot Shields** | **1/7/26 8:21:00 PM** |